JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Karen Brooks

## DEFENDANTS

UNUM Provident Corporation
and UNUM Life Insurance
Company of America

B-01-052

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Cameron
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE   IN LAND CONDEMNATION CASES USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

United States District Court
Southern District of Texas
FILED

MAR 2 9 2001

Michael N. Milby
Clerk of Court

**(c)** ATTORNEYS (FIRM NAME ADDRESS, AND TELEPHONE NUMBER)

Mark A. Di Carlo
722 Elizabeth St.
Corpus Christi, Texas   78404

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)   AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (US Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl Ret Inc Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Wrongful Denial of Insurance Disability Benefits, fraud, breach
of contract, violation of Article 21.21, Texas Insurance Code
and § 17.46(b).

## VII. REQUESTED IN
COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $
$4.5 million

CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____

DOCKET NUMBER _____

DATE

03/29/01

SIGNATURE OF ATTORNEY OF RECORD

MARK A. DI CARLO

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**CIVIL ACTION**

| | | |
|---|---|---|
| KAREN BROOKS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. **B-01-052** |
| | § | |
| UNUM PROVIDENT CORPORATION | § | |
| AND UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA | § | |

United States District Court
Southern District of Texas
FILED

MAR 2 9 2001

Michael N. Milby
Clerk of Court

## PLAINTIFF'S COMPLAINT

1.      The plaintiff, Karen Brooks, Doctor of Podiatric Medicine, resides in Brownsville, Texas.  The defendants UNUM PROVIDENT CORPORATION and UNUM LIFE INSURANCE COMPANY are corporations located in the State of Delaware who may be served through, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

2.      The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

3.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 139(b) because the defendants corporations are subject to personal jurisdiction in the Southern District of Texas and because a substantial part of the events or omissions of the plaintiff's claim occurred in Texas.

4.      The plaintiff Dr. Brooks was a practicing podiatrist since 1989 in Brownsville, Texas.  The plaintiff Dr. Brooks was concerned that in the event she became disabled she would have no income.  The plaintiff, therefore, purchased a disability insurance policy which would provide for a monthly income in the event she became disabled.  The plaintiff purchased the disability insurance policy approximately in 1994 from

"Commercial Life Insurance Company." A true and correct copy of the insurance policy upon which this lawsuit is based is attached as **Exhibit "A."** A true and correct copy of the monthly benefit amount from "Commercial Life Insurance Company" which is under written by UNUM Life Insurance Company which was issued on May 1, 1996 is attached as **Exhibit "B."** Apparently, UNUM bought the disability insurance policies from Commercial Life Insurance Company and this was a detriment to those persons who held an insurance policy.

5.    The disability insurance policy which the plaintiff purchased states:  "Partial Disability means the inability to perform one or more of the substantial and material duties of the occupation due to injury after a period of total disability for which the insured received benefits."

6.    The disability insurance policy which the plaintiff purchased states:  "Percent loss means loss of monthly income x 100% prior monthly income if the percent is greater than 80%, we will deem it to be 100%."

7.    The plaintiff insurance policy states:  "Residual Disability" means the inability due to injury or sickness to perform:  1) One or more of the substantial and material duties of the occupation; 2) The substantial and material duties of the occupation for as much time as is normally required to perform them.  The insured must be receiving regular medical care from a duly licensed physician. . . .and Total Disability benefits must not be payable under this policy.  Residual Disability will be deemed not to exist if the percent loss is less than 20%.  Residual Disability Benefit means:  Percent loss x Monthly Benefit. . .sickness means a sickness or disease which cause loss or disability while the insurance is in force.

8.     The plaintiff's insurance policy also states on page 3: "Total Disability" means: 1) The inability to perform the substantial and material duties of the occupation due to an injury or sickness; and 2) you receive regular medical care from duly licensed physician...if you are performing the duties of any occupation, you will no longer be considered totally disabled."

9.     The plaintiff was paying for the disability insurance on or around April 1998. The defendant insurance company accepted payments from the plaintiff for the payment of the disability policy.

10.    The plaintiff fell and herniated a disc in her lumbar spine on, or around, May 16, 1998.   The plaintiff notified the insurance company.   The plaintiff submitted an "Individual Disability Claim Form" to defendant UNUM on, or around June 11, 1998.  A copy of the form is attached as **Exhibit "C."**  The form states:  Dr. Brooks last worked on May 15, 1998; Dr. Brooks, slipped backwards getting out of the bath tub; Dr. Brooks disabling condition is pain to lower back and right leg secondary to herniated disc; that Dr. Brooks worked 50 hours prior to the week she became disabled; that Dr. Brooks worked 20 hours for the first two weeks after she became disabled; and 0 hours for the last two weeks.

10.1    Dr. Brooks also stated on the Individual Disability Claim Form that her previous occupational duties was to:  treat patients in the office 35 hours per week which she could no longer do because she could not sit too long; 5 hours of treating patients in a nursing home which she could no longer do because she could not bend; and, 10 hours of treating patients at a hospital which she could no longer perform because she could not stand that long.  Dr. Brooks stated she could not sit, stand, drive or bend without pain after a very short time.  Dr. Brooks briefly described the physical duties of her occupation as:  standing, sitting, and reaching.

11.     Mr. Jon Colson, a "Claims Assistant, Individual Disability Benefits" employed by UNUM wrote a letter to Dr. Brooks dated June 24, 1998.  The letter is attached hereto as **Exhibit "D"** and states in pertinent part:  the UNUM benefit representative thoroughly analysis the claim file;  We will let you know within 7 days if additional information is needed; including medical or financial documentation.

12.     Nancy Olds, or "Disability Benefit Analyst, Individual Disability Benefits" employee for UNUM wrote Dr. Brooks a letter dated June 26, 1998.  A copy of the letter is attached as **Exhibit "E."**  The June 26, 1998 letter states in pertinent part:  The policy provides a maximum benefit of $6,000.00 in the event of total disability; The policy provides for residual disability benefits; That if you are eligible for residual disability benefits you will have to provide financial statements business tax returns or profit and loss statements for 24 months prior to the date of disability; That the claim form was submitted by Dr. Sam J. Allen who indicated she was first disabled on June 1, 1998; That they "noticed" she was seen previously by Dr. John Wells and they will be requesting records from his office "as well as updated records from your other physicians"; The effective date of the policy was May 1, 1996; Enclosed is a copy of a questionnaire which is usually handled over the phone; complete the "Insured Progress  Statement and return it by July 20, 1998 with you and attending physician should sign and complete before it is returned.

13.     Nancy Olds a "Disability Benefit Analyst Individual Disability Benefits" for UNUM wrote a letter to Karen Brooks on August 7, 1998 **Exhibit "F"** which states, in pertinent part:  Dr. Wells indicated you were unable to work on July 1, 1998; That upon review of the Dr. Wells record it is clear you were totally or residually disabled on May 16, 1998; That the eliminated period ended June 14, 1998; That the enclosed $12,000.00 check represents total disability for the period of June 15, 1998 to August 15, 1998; That

the next check would be issued on September 15 assuming you are still disabled as defined in the policy; That a progress statement should be taken to your physician and is enclosed.

14.     Nancy Olds of UNUM, wrote a letter to Karen Brooks on September 16, 1998 **Exhibit "G"** which states:  In preparation of your receiving residual benefits, she has had tax returns reviewed by the financial department; That "statement" from 1997 business tax returns was not enclosed; She was not treating patients in August and was going there to do paperwork; She is totally disabled at this time; If there is change in your condition and you begin seeing patients again let her know; Enclosed is a "Progress Statement to be filled out."

15.     A letter from Nancy Olds of UNUM dated November 2, 1998 **Exhibit "H,"** states her assignments have been changed and her claim will now be handled by Sheldon White.

16.     A letter to Dr. Brooks from Sheldon White "Disability Benefits Specialist Individual Disability Benefits" states that Dr. Brooks should complete the front of the enclosed Progress Statement and her physician should complete the back. See **Exhibit "I."**

17.     Sheldon White of UNUM wrote a letter attached hereto as **Exhibit "J"** to Dr. Brooks dated January 4, 1999 which states:   Health Research Technology Inc. was consulted regarding disability assessments; A physician from HRT may be contacting the attending physician to "review your current treatment plan and discuss recommendations for future diagnostic testing or treatment. . . .in an attempt to offer your maximum options for recovery."

18.    A memorandum dated March 4, 1999 from a "Nancy E. Bogg VCM;" (Note there is no medical abbreviation for "VCM" found in:  Medical Abbreviations, Seventh Ed., Neil M. Davis, 1993) **Exhibit "K,"** states in pertinent part:  Dr. Brooks attending physician stated on December 1998 that she was not able to drive beyond 30 minutes without experiencing increased pain; That she should not be standing greeted than two hours at a time; and should not be sitting greater than 30 minutes; That she noted that aside from specific surgeries she would not be preclude from her material and substantial duties of an office practice with these limitations.

18.1    Nancy E. Bogg states basically that because the average time for surgeries in 1997 was 1.24 minutes and 1 hour and 3 minutes after the date of loss from May 16 to December 31;    "Based on the fact that the insured had been performing surgical procedures one week following her date of loss and surgeries that were in the whole longer as an average for the remainder of 1998 than she had done in any other comparative information above would indicate that the insured was clearly able to work at all material substantial duties of her occupation."

18.2    "Nancy Boggs also states she could not stand longer than 2 hours. . . .2 surgeries in 1997 required the operating room of over 2 hours. . . .a number of surgeries are performed in the operating room in a seated position. . . .the insured was performing more surgery after her date of loss than prior to her date of loss. . . ."


19.    Sheldon White, "Disability Benefits Specialist," wrote a letter to Dr. Brooks on March 29, 1999 attached hereto as **Exhibit "L."**  The letter states in pertinent part:  1) Dr. Brooks completed 26 surgical procedures in 1997 (p.1);  2) Dr. Brooks was the "assistant surgeon" in 1997 for 13 of he 26 surgical procedures; 3) Dr. Brooks performed 22 surgical procedures in 1998 (p.1);  4) Dr. Brooks performed five of the 22 surgical procedures in 1998 as an assistant surgeon (p.1);  5) Dr. Brooks performed 10 of 22 procedures from January 1, 1998 to May 16, 1998 up to the "date of loss" (p.1);  6) Dr.

CUtePDF - www.cutepdf.com

Brooks performed 12 of 22 operations from May 16, 1998 to December 31, 1998 after her date of loss (p.1); 7) Restrictions and limitations indicated she could stand up to two hours (p.1); 8) Claimant's average surgical procedure in 1997 was 84 minutes (p.1); 9) Claimant's average surgical procedure before her disability in 1998 was 75 minutes; 10) Claimant's average procedure time after or post disability was 88 minutes (p.1); 11) Claimant had 2 of 26 surgeries in 1997 which were greater than two hours (p.1); 12) In 1998 4 of 22 procedures were over 2 hours; 13) Two of the 4 surgical procedures lasting over 2 hours in 1998 were previous to her May 16, 1998 accident (p.1); 14) Two of the 4 procedures lasting over 2 hours were after May 16, 1998 (p.1); That she was performing surgical procedures the week following her date of injury and throughout 1998 (p.1); That this was "inconsistent with information you provided us."(p.1, par. 4); That "On October 15, 1998 you met with our field representative at your practice. At that time you stated that it was likely you would need surgery before any consideration of returning to work and that no time frame had been established. . . .that you had attempted to work part-time in late July, 1998, but found that is worsened your condition." (p.2, par.1)

19.1    The letter from UNUM dated March 29, 1999 quotes the disability policy: "Total Disability" means: (1) the inability to perform the substantial and material duties of the occupation due to an Injury or Sickness; and (2) You receive regular medical care from a duly licensed physician other than the Insured. If you are performing the duties of any occupation, You will no longer be considered totally disabled. "Residual Disability" means the inability due to Injury or Sickness to perform: (1) one or more of the substantial and material duties of the occupation; or (2) the substantial and material duties of the occupation for as much time as is normally required to perform them.

19.2    The letter from UNUM dated March 29, 1999 states that on July 5, 1998 and October 5, 1998 the claimant stated "No" she had not performed any of the duties of her profession. (p.2, par.) That from July 5, 1998 to October 5, 1998 Dr. Brooks performed 6

procedures at Brownsville Medical Center.  That on November 9, 1998 Dr. Brooks stated she had performed her regular duties-"I went to work one day"; she performed two surgical procedures. (p.2, par.)

19.3    The letter from UNUM dated March 29, 1999 states that on the "Insured's Progress Statement" allegedly dated January 11, 1999 that Dr. Brooks stated "No" she had not performed any of the duties of her regular occupation but that from November 9, 1998 to January 11, 1999 she had performed three surgical procedures. (p.3, par.)

19.4    The letter from UNUM dated March 29, 1999 states that Dr. Brooks continued to perform surgeries as she did before the accident which is "Inconsistent" with the information she provided to them and they are discontinuing benefits. (p.3, par.3)

19.5    The letter from UNUM dated March 29, 1999 states that Dr. Brooks is not entitled to the $48,000.00 in benefits from June 15, 1998 to February 15, 1999 and she should contact them to repay the benefits. (p.3, par.)

20.    A letter from Dr. Karen Brook's attorney to UNUM's Sheldon White dated April 27, 1999 **Exhibit "M"** states, in pertinent part:  Dr. Brooks purchased a Disability Policy from UNUM on May 1, 1996; The plan stated Dr. Brooks was 100% covered if she was 80% or more disabled; That Dr. Brooks was in "frequent communication with UNUM since the accident and kept the UNUM agents aware of her working schedule"; That Dr. Brook's statement on her progress statement that she has not "performed any of the duties of her regular occupation was true because she has been unable to work more than 20% of the time and earns less than 20% of her normal pay; That the voluminous information provided by Dr. Brook's to UNUM was an attempt "to scrutinize Dr. Brooks in attempts" to find reasons to put pressure on her to settle the claim; That UNUM's investigator Sean Brook's was unprofessional and offensive on March 22, 1999; That UNUM's investigator Sean Brook's stated to Dr. Brook's she could either drop the policy or he would make sure she would have to pay for past benefits; That a corrected

operating schedule for Dr. Brook's in 1998 and 1999 is enclosed; That UNUM's investigator contacted the wrong person at the hospital regarding Dr. Brook's schedule; That UNUM's investigator Sullivan's was basically faulty.  See **Exhibit "M."**

22.     Dr. Brook's wrote a certified letter to UNUM's Sheldon White dated November 12, 1999 stating:  That she is totally disabled; that UNUM should contact her attending physician; that UNUM has 10 days to reinstate benefits.  See **Exhibit "N."**

23.     The plaintiff asserts that the aforementioned documents primarily establish one or more of the following facts:  Dr. Brook's is at least 80% disabled such that she should receive full disability benefits;   No accurate determination was made regarding her residual or partial disability which must be at least 20%;    UNUM's own prior determination that Dr. Brook's was totally disabled establish her partial or residual disability;   UNUM disregarded Dr. Brook's own statements regarding her disability; UNUM switched "Disability Benefits Specialist's" in order to deny the plaintiff disability;  UNUM did not perform a reasonable investigation into whether the claimant was disabled using a reasonable person standard as is implied in contract and instead conducted an abusive and fraudulent investigation; The investigation was fraudulent because it attempted to research the entire case and take or create facts adverse to the claimant;   The investigation was abusive because an agent of UNUM threatened and attempted to blackmail the plaintiff into dropping the insurance if she did not drop the insurance and accept the benefits already paid;  UNUM attempted to maliciously attack the plaintiff by attempting to bring criminal charges against her;  UNUM'S actions are unconscionable, malicious and without decency.

24.  The plaintiff Karen Brook's sues the Defendants individually, collectively and separately for one, or more of the following  causes of action:

24. 1.  Breach of Contract.  The plaintiff is totally disabled under the terms of the contract because she is unable to perform the substantial and material duties of her occupation due to injury or sickness and she is receiving regular medical care from a physician.  Dr. Brooks sues for $6,000.00 per month from February 15, 1999 through the date of the filing of this petition is $150,000.00 plus reasonable and necessary attorney's fees of $150.00 per hour plus costs of court.

24.2.  Breach of Contract because the claimant has residual disability under the terms of the contract because the claimant is at least 20% disabled and should be receiving the percentage of disability times her monthly benefit of $6,000 per month: that is anywhere from $1,200.00 per month to approximately $4,800.00 per month.  The plaintiff sues for from $1,200.00 to $4,800.00 per month x 25 months plus reasonable and necessary attorney's fees of $150.00 per hour plus court costs.

24.3.  The plaintiff sues for violations of the Texas Insurance Code Article 21.21 for unfair settlement practices including: a) misrepresenting material facts; b) failing to attempt in good faith a settlement when the insurer's liability is clear; c) failing to attempt in good faith to settle under the portion of the policy wherein benefits were already paid in order to influence to settle the claim for benefits paid; d) failing to provide promptly to a policy holder a reasonable explanation to the facts for the insurer's denial of the claim; Refusing to pay a claim without conducting a reasonable investigation with respect to the claim; e) making material statements of facts regarding the plaintiff's job duties regarding the plaintiff's disabilities and regarding the policy.

24.4.  The plaintiff alleges violations of 17.46 of the Texas Business and Commerce Code:  causing confusion as to the approval of services; Using deceptive representation in connection with services of insurance; Representing that the insurance policy and characteristics which it did not have; Misrepresenting the authority of an agent to negotiate the final terms of a consumer transaction; Failing to disclose information in concerning services which were known at the time of the transaction because the failure

to disclosure was intended to advise the plaintiff to purchase the insurance.  The plaintiff relied on the facts that UNUM would make a full and fair investigation by paying for services they did not receive or by not purchasing a different policy;  The plaintiff sues under Article 21.2 § 17.46(b) of the Texas Business and Commerce Code for:  (1) The cost of actual damages;  (2) Court Costs;  (3) Necessary and reasonable attorney's fees at $150.00 pre hour;  (4) Three times the amount of actual damages;  (5) Other relief the court deems proper.

24.5.    The plaintiff sues for bad faith and asserts the insurer attempted to insulate itself from bad faith in a manner calculated to contract a pretextual reason for the denial.  State Farm v. Simmons, 963 S.W. 2d 42, (Tex.1998).

24.6    The plaintiff asserts that the defendant 's committed common law fraud, actionable fraud and constructive fraud.      The plaintiff purchased the disability policy that the defendants would make a reasonable  decision and fair decision based upon a fair investigation.  The defendants failed to do so and make a fair and reasonable decision and the plaintiff relied upon them to do so when she purchased the disability policy.  The defendant failed to tell the plaintiff that the decision regarding her disability would be a subjective decision made by their company instead of an objective decision made by one agent  or by a neutral third party or made by her.  The plaintiff as a result was left without disability benefits;  Without a way to pay her bills;  With a threat of civil suit for money that she was paid;  With a threat of criminal action in order to gain advantage in a civil suit.

24.7.    The plaintiff sues under the common law cause of action of constructive fraud in that the defendant had the equitable duty to pay for the disability portions of the policy.  The defendants owed a legal duty to make a fair and intelligible and objective decision on the policy to their insured.

24.8.   The plaintiff sues for constructive fraud breach of the fiduciary relationship between the plaintiff and defendant based on contract and based on a long term contractual relationship.

24.9.   The plaintiff asserts that the fraudulent investigation; the fraud in requesting repayment of benefits which were paid in an attempt to deny the plaintiff even residual disability benefits; the defendants fraudulent assertion of criminal allegations against the plaintiff; establish the plaintiff is entitled to exemplary damages.  The total denial of benefits to a person who has requested payment for disability benefits based upon an objective and verifiable injury and an investigation based upon changed decisions, change of agents; coercion and intimidation; insulting and rude conduct with a plaintiff who is already damaged; and, threats of criminal action; permits the defendant to recover exemplary damages under the Texas Civil Practice and Remedies Code § 41.008 for two times the amount of economic damages plus an amount equal to noneconomic damages up to $750,000.00 or $200,000.00.

24.10.   The plaintiff has suffered some degree of emotional problems as a result of the defendants fraudulent, abusive and lengthy and continual investigation and failure to pay any disability benefits while she was disabled and unable to pay her bills.  The plaintiff sues for medical bills arising from such abuse and exemplary damages.

24.11.   The plaintiff asserts damages to her credit rating and consequent damages as a result of defendants UNUM's failure to produce disability benefits.


25.   The plaintiff prays for one, or more, of the following:

(1) Long Term Disability Benefits ranging from $1,200.00 to $4,800.00 per month;

(2) Residual Disability Benefits ranging from $1,200.00 to $4,800.00 per month;

(3) Attorney's Fees;

(4) Costs of Court;

(5) Three times the amount of actual damages under Article 21.21 of the Texas Insurance Code and § 17.46(b) of the Texas Business and Commerce Code of three times the amount of actual damages;

(6) Other relief the court deems proper under Article 21.21 of the Texas Insurance Code and 17.46 of the Texas Business and Commerce Code;

(7) Two times the amount of actual damages under the Texas Civil Practices and Remedies Code § 41.008 for two times the amount of economic damages plus an amount equal to noneconomic damages up to $750,000.00 of $200,000.00;

(8) Damages for past, present and future medical bills as a result of emotional and/or physical problems incurred.

(9) Damages to her Credit Rating.

(10) All relief the court deems proper and just.

Respectfully submitted,

Mark A. DiCarlo
Attorney At Law
La Solana Building
722 Elizabeth St.
Corpus Christi, Texas  78404
(361) 888-6968
(361) 888-6981 Fax
State Bar No.: 05812510
Southern District I.D. No.  6839

Brooks Complaint.wpdMarch 29, 2001

# EXHIBIT LIST

EXHIBIT A- INSURANCE POLICY - 1994

EXHIBIT B- MONTHLY BENEFIT'S - MAY 1, 1996

EXHIBIT C- "INDIVIDUAL DISABILITY CLAIM FORM" - JUNE 11, 1998

EXHIBIT D- LETTER FROM UNUM'S "CLAIMS ASSISTANT" DATED
          JUNE 24, 1998

EXHIBIT E- LETTER FROM UNUM'S "DISABILITY BENEFIT ANALYST
          INDIVIDUAL DISABILITY BENEFITS" DATED JUNE 6, 1998

EXHIBIT F- LETTER FROM UNUM'S "DISABILITY BENEFIT ANALYST
          INDIVIDUAL DISABILITY BENEFITS" DATED AUGUST 7, 1998

EXHIBIT G- LETTER FROM UNUM'S "DISABILITY BENEFIT ANALYST
          INDIVIDUAL DISABILITY BENEFITS" DATED SEPT. 16, 1998

EXHIBIT H- LETTER FROM UNUM'S "DISABILITY BENEFIT ANALYST
          INDIVIDUAL DISABILITY BENEFITS" DATED NOV.2, 1998
          CHANGING ASSIGNMENTS

EXHIBIT I- LETTER FROM UNUM'S SHELDON WHITE DATED NOV.3, 1998

EXHIBIT J- LETTER FROM UNUM'S SHELDON WHITE DATED JAN. 4, 1998

EXHIBIT K- MEMORANDUM DATED MARCH 4, 1999 FROM UNUM'S BOGG'S
          "VCM"

EXHIBIT L- LETTER FROM UNUM'S SHELDON WHITE DATED MARCH 29,1999

EXHIBIT M- LETTER FROM DR. BROOK'S ATTORNEY PATRICIA HERNANDEZ
          DATED APRIL 27, 1999

EXHIBIT N- DR. BROOKS CERTIFIED LETTER DATED NOV. 12, 1999

EXHIBIT O- EXHIBIT LIST

# EXHIBIT "A"

CVisPDF - www.fastio.com

# Commercial Life Insurance Company

A Stock Company

15 Corporate Place South, P.O. Box 1387, Piscataway, N.J. 08855-1387

### CERTIFICATE OF INSURANCE

#### Disability Income Coverage

Certificate APM _____

Certifies that it has issued Master Policy RXN - 1022 (herein called the Policy) to American Podiatric Medical Association (herein called the Policyholder named in the application) and that the person named in the application (herein called You) is insured under the Master Policy, subject to all the terms and provisions of such Master Policy. For a more detailed description of benefits and reductions, See Schedule Page.

### INSURING CLAUSE
We will pay You the benefits this Certificate describes if You become disabled as a result of a covered Injury or Sickness. We will also pay other benefits for loss due to Injury or Sickness as described in this Certificate.

### PREMIUMS AND TERM OF INSURANCE
This Certificate and attached Riders, if any, are issued in consideration of the statements in the application and the payment of the initial premium. We reserve the right to adjust the premiums for the insurance on any premium due date.

The effective date of Your Certificate is shown on the attached application. Such Certificate will remain in effect until the first Renewal Date. It may be renewed as stated in the Renewal Conditions provision.

### THIRTY DAY RIGHT TO EXAMINE CERTIFICATE
You have thirty days to review this Certificate. If You decide You do not want to keep it, send it back to the agent or to Us within thirty days of receiving it. We will then refund all premiums paid.

### RENEWAL CONDITIONS
You may renew this Certificate on any Renewal Date by paying the Renewal premium. Renewal Premiums are, those in effect for Your attained age at the time of renewal. This Certificate will end if such premiums are not paid when due or within the Grace Period. However, We reserve the right to decline to renew on any of the following grounds only:

A. If You reach Your 70th birthday.
B. If You retire or cease to be Actively Engaged for at least 20 hours per week in the duties of Your Occupation, except by reason of disability covered under the terms described in this Certificate.
C. If You cease to be a member of the organization named in the application. However, if You transfer to a similar organization which sponsors a like disability plan with Us, You will be entitled to coverage under that plan. If You do not so transfer, but continue to be actively engaged on a full time basis in the business or profession named in the application, You shall be entitled to convert to an Individual Guaranteed Renewable To Age 65 Disability Policy without evidence of health. Application for conversion must be made within 31 days after this Certificate ends.
D. If We decline to renew all such certificates of a particular class issued under the above named organization, upon giving at least sixty days written notice of such declination prior to the renewal dates of the certificates.

Signed for the Commercial Life Insurance Company.

_Anthony P. Gautera_
Assistant Secretary

_John B. Jacetura_
President

LH 12589

## ALPHABETICAL INDEX

| | | | | |
|---|---|---|---|---|
| Age Limit | 9 | Non-Disabling Injury Benefit | 7 |
| Assignment, Change of Beneficiary | 9 | Notice of Claim | 8 |
| Claim Forms | 8 | Payment of Claim | 8 |
| Conformity with State Statutes | 9 | Physical Examination | 8 |
| Continuous Periods of Disability | 7 | Proof of Loss | 8 |
| Definitions | 2 | Rehabilitation | 7 |
| Exceptions and Reductions | 7 | Reinstatement | 8 |
| Extension of Benefits | 7 | Renewal Conditions | 1 |
| Grace Period | 8 | Residual Disability Benefits | 5 |
| Legal Actions | 8 | Survivor Insurance Benefit | 7 |
| Maximum Benefit Period | 4 | Time Limit on Certain Defenses | 8 |
| Minimum Benefits for Specific Fractures | | Time of Payment of Claims | 8 |
| and Dislocations | 6 | Waiver of Premium | 7 |

## DEFINITIONS

**Actively Engaged** means working 20 hours or more per week in the duties of Your Occupation.

**Association** means The American Podiatric Medical Association.

**Beneficiary** means the person named in the application. If no person is named in the application or the Beneficiary is not living, then, Beneficiary shall mean the estate.

**Complications of Pregnancy** means: 1) Conditions requiring hospital confinement (when the pregnancy is not terminated), whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy or are caused by pregnancy. Examples are acute nephritis, nephrosis, cardiac decompensation, missed abortion and similar medical and surgical conditions of comparable severity, False labor, occasional spotting, physician prescribed rest during the period of pregnancy, morning sickness, hyperemesis, gravidarum, pre-eclampsia and similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication of pregnancy are not considered Complications. 2) Non-elective caesarean section. 3) Ectopic pregnancy which is terminated. 4) Spontaneous termination of pregnancy which occurs during a gestation in which viable birth is not possible.

**CPI-U** means the Consumer Price Index for All Urban Consumers. It is published by the Bureau of Labor Statistics of the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, We may with the approval of the Commissioner use another national published index that We determine is comparable in scope and purpose to the CPI-U. CPI-U will then mean that index.

**Current Monthly Income** means the Monthly Income from the Occupation during each month of Residual Disability for which claim is made.

**First Index Month** means the calendar month 3 months before the start of a continuous period of Total and/or Residual Disability.

**Index Month** means the calendar month 3 months before the Review Date.

**Injury** means a loss or disability which is a direct result of bodily injury caused by an accident which occurs while the insurance is in force and is independent of all other causes. The loss or disability must commence within 365 days of the accident; otherwise, it will be considered as arising from a Sickness.

**Insured** means a Member or Student Member of the Association

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income caused solely by Residual Disability.

**Member** means a member of the Association who is in full time practice at least 20 hours per week.

**Monthly Benefit** is the amount shown in the application. For disabilities of less than a month, We pay 1/30th of the monthly benefit for each day of disability.

**Monthly Income** means monthly income from salary, wages, bonuses, commissions, fees or other remuneration earned for services performed by the Insured, in the Occupation, after deduction of normal and customary business expenses but before deduction of any income taxes. It does not include dividends, rents, royalties, annuities or other forms of unearned income, or any income the Insured receives not derived directly from the Occupation.

**Occupation** means the occupation described in the application and the occupation in which the Insured is regularly engaged at the time the Insured became disabled. If the occupation is limited to a recognized specialty within the scope of the degree or license, We will deem the specialty to be the Occupation.

**Percent Loss** means

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times 100\%$$

Percent is greater than 80%, We will deem it to be 100%.

2

Prior Monthly Income means the average Monthly Income from the Occupation for the 24 months immediately prior to the period of Total disability. The 24 months will be calculated so as not to include any period of Total or Residual Disability.

Qualifying Period is the continuous period of Total and/or Residual Disability equal to the greater of the Waiting Period and 30 days, which must precede payment of the Residual Disability Benefit.

Residual Disability means the inability due to Injury or Sickness to perform:

    1. one or more of the substantial and material duties of the Occupation; or

    2. the substantial and material duties of the Occupation for as much time as is normally required to perform them.

the Insured must be receiving regular medical care from a duly licensed physician other than the Insured, and Total Disability benefits must not be payable under this Policy. Residual Disability will be deemed not to exist if the Percent Loss is less than 20%.
Residual Disability Benefit means:

Percent Loss x Monthly Benefit

Review Date means each anniversary of the start of a continuous period of Total and/or Residual Disability.

Sickness means a sickness or disease which causes loss or disability commencing while the insurance is in force.

Student Member means a full-time student less than age 50 enrolled in an Accredited School of Podiatric Medicine.

Total Disability means: (1) the inability to perform the substantial and material duties of Your Occupation due to an Injury or Sickness; and (2) You receive regular medical care from a duly licensed physician other than the Insured.  If You are performing the duties of any occupation, You will no longer be considered totally disabled. You will be presumed to be totally disabled after the Waiting Period if Injury or Sickness results in the total and irrecoverable loss of one of the following, which cannot be restored or corrected by medical or surgical treatment:

(1) speech, or hearing in both ears;

(2) the sight of both eyes;

(3) the use of both hands, or both feet, or of one hand and one foot.

Waiting Period for Accident of Sickness means the number of consecutive days at the start of a period of continuous disability for which benefits are not payable.

We, Our, Us means the Commercial Life Insurance Company.

You and Your means the Insured.

3

---

**SCHEDULE**

---

DISABILITY INCOME BENEFITS

We will pay You the Monthly Benefit starting on the first day following the Waiting Period if You are continuously totally disabled.

**Plan I**

**Maximum Benefit Periods**

The Monthly Benefit will continue to be paid as long as You meet the benefit requirements stated above. However, the period of payments will not exceed:

**For Accident:**

1 ) Your lifetime, if disability starts prior to age 50;

2) Your 65th birthday, if disability starts on or after age 50, but prior to age 64;

3) 12 months, if disability starts on or after age 64.

**For Sickness**

1 ) Your lifetime, if disability starts prior to age 50;

2 ) Your 65th birthday, if disability starts on or after age 50, but prior to age 64;

3 ) 12 months, if disability starts on or after age 64.

**Plan II**

**Maximum Benefit Periods**

The Monthly Benefit will continue to be paid as long as You meet the benefit requirements stated above. However, the period of payments will not exceed for accident and Sickness:

1) Your 65th birthday, if disability starts prior to age 64;

2) 12 months, if disability starts on or after age 64, but before age 70.

**Change in Classification or in the Amount of Coverage**
Any change in classification or coverage will take effect on the first day of the policy month which coincides with or follows the day of the change, provided You are actively at work on that day.

If you are not actively at work, the following conditions will apply:
1. If the change involves an increase in coverage the change will not take effect until the first day of the month which coincides with or follows the day You return to active work.
2. If the change involves a decrease in coverage, the change will take effect on the day of the change.

However if coverage changes because of an elective increase in coverage, You will be required to furnish evidence of insurability acceptable to Us. If the evidence is acceptable, We will determine the day the change takes effect.

4

## RESIDUAL DISABILITY BENEFITS

**Benefits**

We will pay You the Residual Disability Benefit starting on the first day after the Qualifying Period if You are residually disabled and Your combined periods of Total and Residual Disability are continuous.

For periods of Residual Disability less than a month, We will pay 1/30th of the Residual Disability Benefit for each day.

The period of payments will not exceed Your 65th birthday. Also, the combined period for which Total and Residual Disability Benefits are payable will not exceed the applicable Maximum Benefit Period for Total Disability.

**Cost of Living Indexing**

For Residual Disability Benefits which accrue on or after each Review Date, We will multiply Your Prior Monthly Income by the Cost of Living Factor (COL Factor) determined on the most recent Review Date. The result will be used in place of Your Prior Monthly Income to figure Your loss of Monthly Income and Percent loss.

The COL Factor will be determined on each Review Date. It is the lesser of:

     1. The CPI-U for the latest Index Month divided by the CPI-U for the First Index Month, or

     2. 1.00 increase by 6% compounded annually from the First to the latest Index Month.

If this would give a value less than 1.00, the COL Factor will be deemed to be 1.00.

**Proof**

We reserve the right to require proof, satisfactory to Us, of Your Current and Prior Monthly Income.

5

# MINIMUM BENEFITS FOR SPECIFIC FRACTURES AND DISLOCATIONS

If You sustain any of the losses, fractures or dislocations listed below as a result of any one Injury, We will pay the benefits for at least the Minimum Payment Period shown.  Such periods will be reduced by the Waiting Period. If more than one loss, fracture or dislocation results from one Injury, the Minimum Payment Period that applies will be the largest of those shown for such losses, fractures or dislocations.

Minimum
Payment
Periods

For Loss by Removal:
    Of One or More Entire Toes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 months
    Of One or More Fingers (at least one entire phalanx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/2 months

For Complete Dislocation of the:
    Hip . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 months
    Knee (except patella) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 1/2 months
    Bone or Bones of Foot (except toes) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 1/2 months
    Ankle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 1/2 months
    Wrist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 1/4 months
    Elbow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 month
    Shoulder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3/4 month
    Bone or Bones of Hand (except fingers) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/2 month
    Collar Bone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/2 month
    One or More Fingers or Toes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/4 month

    *For Complete Fracture of:
    Skull, Both Tables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 1/4 months
    Thigh . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 months
    Arm, Between Elbow & Shoulder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 months
    Pelvis (except coccyx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 months
    Vertebra or Vertebrae (except coccyx and vertebral processes) . . . . . . . . . . . . . . . . . . . . . . 1 1/2 month
    Shoulder Blade . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 1/2 month
    Leg (fibula) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 month
    Leg (tibia) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 months
    Kneecap . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 months
    Collar Bone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 1/2 months
    Wrist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 month
    Ankle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 1/2 month
    Arm, Between Wrist and Elbow (both bones) . . . . . . . . . . . . . . . . . . . . . . . . . . 1 month
    Foot (except toes) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 1/4 months
    Arm, Between Wrist and Elbow (one bone) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3/4 month
    Hand (except fingers) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3/4 month
    Sternum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 month
    Lower Jaw (except alveolar process) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3/4 month
    One or More Ribs, Fingers or Toes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/2 month
    Bones of the Face or Nose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/2 month
    Coccyx or Vertebral Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/4 month
    Avulsion Fracture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/2 month
    Any other bone fracture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/2 month

*Complete fracture shall mean one in which the break is through the entire thickness of the bone and the continuity of the bone is broken.

6

## SURVIVOR INSURANCE BENEFIT

If You die while totally disabled and receiving the Monthly Benefit, We will continue the payments to Your Beneficiary. You must have been continuously disabled for at least 12 months. Such benefit will end on the earliest of: (1) when 3 monthly payments have been made to the Beneficiary; or (2) when the Maximum Benefit Period ends; or (3) when the Beneficiary dies.

## NON-DISABLING INJURY BENEFIT

We will pay the actual expense for medical or surgical treatment required for Injury if no other benefits are payable under the Master Policy. Payments shall not exceed 1/4 of the Monthly Benefit.

## CONTINUOUS PERIODS OF DISABILITY

In no event will You be considered to have more than one disability, Total or Residual, at the same time. Once You receive benefits for an initial continuous period of disability We will deem it as one period no matter what Sickness or Injury causes it to continue.

A continuous period of disability ends when You are no longer totally or residually disabled. However, a later, separate period of disability will be deemed continuous with a prior Period if it:

     a) starts within 3 months after Your return to Your Occupation; and
     b) results in whole or in part, from the same or a related Sickness or Injury.

If periods of disability are deemed continuous, they count as a single period.

If periods of disability are not deemed continuous, then a new, separate period of disability is established. A new Waiting Period must be met in order for benefits to be payable.

## REHABILITATION

We will consider a rehabilitation program for You if You become disabled. The program must be: 1) mutually agreed upon by You and Us; and 2) approved by a governmental agency or private agency competent to approve such programs and recognized by Us. The extent of Our participation will be determined by mutual agreement. Consideration will be given to such items as additional living costs, tuition and books. Monthly Benefits will continue during Your rehabilitation, subject to the terms of the agreement.

## WAIVER OF PREMIUM

If You are totally disabled and remain so for six continuous months, prior to Your 60th birthday, We will waive any premiums which become due for any continuous periods of Total Disability for which You are receiving benefits.

## EXTENSION OF BENEFIT

If Your are Totally Disabled on the date that coverage terminates, Benefits will continue in accordance with the terms of the Master Policy, but only so long as the disability remains continuous and uninterrupted. Benefits will not be extended to cover subsequent related disabilities.

Termination of the Master Policy will not end coverage of a valid claim.

## EXCEPTIONS AND REDUCTIONS

We will not cover any loss or disability caused or contributed to by, or resulting from: 1) suicide, or attempted suicide or intentionally self-inflicted injury; 2) war or any act of war, declared or undeclared; 3) service in the armed forces of any country (in such event the pro rata unearned premium shall be returned to You); 4) traveling in or flying any aircraft operated by or under the direction of any military (land, sea or air) authority or while in any aircraft being used for any test or experimental purpose; 5) pregnancy or any termination of pregnancy except Complications of Pregnancy; 6) any disease or physical impairment which is the subject of a waiver or impairment rider attached to the Member's certificate; 7) participation in the commission or attempted commission of a felony. In addition, no benefits shall be payable for any period of disability during which You are confined in a penal or correctional institution.

You shall not be entitled to benefits for two disabilities at the same time.

# CERTIFICATE PROVISIONS

**Time Limit On Certain Defenses:** (a) If You made a misstatement, except one which was fraudulent, on the application for Your Certificate, We may not use it to void the Certificate or the deny a claim for loss incurred or disability that starts after 2 years from the effective date of the Certificate. (b) No claim for loss incurred or disability that starts after the effective date of the Certificate will be reduced or denied because a Sickness or physical condition not excluded by name or specific description before the date of loss had existed before the effective date of the Certificate.

**Grace Period:** If You do not pay a Renewal Premium when it is due, You still have a 31 Day Grace Period to pay. During the Grace Period the Certificate will stay in force. You will not have a Grace Period if We delivered or mailed to You at least 60 days before the Renewal Date a notice of Our intent not to renew the Certificate. If We mail You the written notice, We will use the last address which is shown in Our records.

**Reinstatement:** If the Renewal Premium is not paid before the Grace Period ends, the Certificate will lapse. Later acceptance of the premium by Us or by an agent authorized to accept payment, without requiring an application for reinstatement, will reinstate the Certificate.
If We or Our agent requires an application for reinstatement and issues a conditional receipt for any premium which may be paid, the Certificate will be reinstated upon: (1) the 45th day after the date of such conditional receipt, unless We have previously notified the Insured in writing of Our disapproval of his or her application; or (2) the date We approve the Insured's application, if earlier.

The reinstatement Certificate will cover only loss that results from an Injury sustained after the date of reinstatement or loss due to Sickness that starts more than 10 days after such date. In all other respects the Insured's rights and Ours will remain the same, subject to any provisions noted on or attached to the reinstated Certificate.

Any premiums We accept for reinstatement will be applied to a period for which premiums have not been paid. No premium will be applied to any period more than 60 days before the date of reinstatement.

**Notice Of Claim:** Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to Us at Our Office in Piscataway, NJ or to Our agent. Notice must include Your name and the Certificate number.

**Claim Forms:** When We receive the notice of claim, We will send forms for filing proof of loss. If these forms are not given within 15 days, You may meet the proof of loss requirement by sending Us a written statement of the nature and extent of the loss within the time limit stated in the Proof of Loss section

**Proof Of Loss:** Written proof of loss for benefits which are payable periodically must be given within 90 days after the termination of the period for which We are liable; in case of claim for any other loss, written proof must be given within 90 days after the date of loss. If it is not reasonably possible to give written proof in the time required, We shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless You lacked legal capacity.

**Time Of Payment Of Claims:** Payments for loss for which We pay periodically will be made each month subject to due written proof of loss. Payment for any other loss will be paid immediately upon receipt of due written proof of loss.

**Payment Of Claim:** Loss of Life benefits are payable in accordance with the Beneficiary designation in effect at the time of payment. If none is then in effect, the benefits will be paid to Your estate. Any accrued benefits unpaid at death may be paid, at Our option, either to Your Beneficiary or estate. All other benefits will be paid to You. If benefits are payable to your estate or to a Beneficiary who cannot execute a valid release, We may pay benefits up to $1,000 to someone related to You or Your Beneficiary by blood or marriage whom We consider to be entitled to the benefit. We will be discharged to the extent of any such payment made in good faith.

**Physical Examination And Autopsy:** We have the right to physically examine You as often as reasonably needed while a claim is pending. We may also require an autopsy in the case of death, where it is not forbidden by law. We will bear all of the costs for this.

**Legal Actions:** No legal action may be brought to recover on a Policy within 60 days after written proof of loss has been given as required by this Certificate. No such action may be brought after 3 years (in Kansas and Tennessee, five years; in South Carolina and Wisconsin, six years) from the time written proof of loss is required to be given.

8

CSMPDF - www.feneis.com

**Assignment, Change Of Beneficiary:** You may change the Beneficiary or assign Your interest in the insurance by giving Us written notice at Our Administrative Office, in Piscataway, NJ. The change or assignment will not be effective until We receive the written notice. The Beneficiary's consent is not required to make the change in the insurance, or to surrender or assign the insurance unless You named a Beneficiary and expressly stated that it could not be changed. We assume no responsibility for the validity of any assignment.

**Conformity With State Statutes:** On the effective date of the Certificate, if any provision conflicts with the laws of the State in which You reside, it shall be deemed amended to conform to law.

**Age Limit:** This Certificate does not cover You after Your 70th birthday. If We accept any premium from You to extend this insurance beyond Your 70th birthday, this insurance will continue through the period for which We accepted such premiums.

9

# EXHIBIT "B"

CERTIFICATE SCHEDULE

| POLICYHOLDER-AMERICAN PODIATRIC MEDICAL ASSOCIATION | POLICY(s) RXN-1022 |
|---|---|

| CERTIFICATE EFFECTIVE DATE 05/01/96 | QUARTERLY PREMIUM DUE DATES JAN 1, APR 1, JULY 1, OCT 1 | CERTIFICATE NO. 0007913 |
|---|---|---|
| REPLACEMENT DATE 11/01/97 | | |

CERTIFICATE HOLDER
DR KAREN BROOKS
4975 LAKEWAY DR
BROWNSVILLE        TX 78520


* * * DISABILTY INCOME PLAN * * *

MONTHLY BENEFIT AMOUNT .............................$6,000.00
ELIMINATION PERIOD ................................. 30 DAYS

MAXIMUM PAYMENT PERIOD

          UNDER 64 ................................. TO AGE 65
          64 - 69 .................................   1 YEAR

COVERAGE TERMINATES ON JANUARY 1 COINCIDING WITH OR NEXT
FOLLOWING ATTAINMENT OF AGE 70.


PLAN ADMINISTERED BY:

KIRKE-VAN ORSDEL, INC.
1776 WEST LAKES PARKWAY
WEST DES MOINES, IOWA  50398
1-800-882-5612
888/949-2762

THIS CERTIFICATE SCHEDULE IS TO BE ATTACHED TO YOUR CERTIFICATE
OF INSURANCE AND, AS OF 11/01/97, REPLACES PREVIOUSLY ISSUED
SCHEDULES, IF ANY.

UNDERWRITTEN BY: UNUM LIFE INSURANCE COMPANY OF AMERICA

# UNUM.

UNUM Life Insurance Company of America

**Individual Disability Claim Form** **Part I**

Send Claim Forms to: UNUM Life Insurance Company of America
Individual Disability Benefits
2211 Congress Street
Portland, ME 04122-0001
1-800-___-____
1-800-___-____ (Fax Free)
1-___-___-____ (Fax)

**Agency**

**Please Print All Entries**

| Insured | Date of Birth | Social Security # | Home Telephone | **Agency** Association |
|---|---|---|---|---|
| Karen E. Brooks | 10-08-59 | 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 | (956) 350-4730 | APMA |

Home Address (Street, City, State, Zip Code)
4975 Lakeway DR.

Address (if other than above)

Name of Employer   Karen E. Brooks, DPM,PA

| Business Address (Please include all offices or businesses you have - names and addresses) | Business Telephone | Fax Number |
|---|---|---|
| 615 Villa Maria Blvd. Brownsville, TX 78520 | 956 9821751 | 956 982-1776 |

Policy Numbers: RXN 1022

Does your employer pay any portion of the premium?

| Yes | What Percentage? | % | No |
| Yes | What Percentage? | % | No |
| Yes | What Percentage? | % | No |
| Yes | What Percentage? | % | No |

Please check any and all benefits that you are eligible to receive.

| | Applied | | Received | Policy No. | Date Applied For | Amount Received Weekly | Monthly | Effective Date |
|---|---|---|---|---|---|---|---|---|
| | Yes | No | Yes | No | | | | | |
| Social Security | | | | | | | | |
| State Disability Insurance | | | | | | | | |
| Retirement or Pension | | | | | | | | |
| Short Term Disability | | | | | | | | |
| Salary Continuation | | | | | | | | |
| Re-employment | | | | | | | | |
| Worker's Compensation | | | | | | | | |
| Association | | | | | | | | |
| Group (LTD) | | | | | | | | |
| Self | | | | | | | | |
| Overhead Expense | | | | | | | | |

Worker's compensation or Group LTD, please advise name, address, and claim number of the carrier.

Health Insurance Company, Po Box 72_
address and policy number Houston,
Professional Benefits

| Last day you worked before the disability (Month, Day, Year) 05/15/98 | Did you work a full day? Yes ☐ No ☐ If no, explain: | Date you were first unable to work, do you expect to? (Month, Day, Year) parttime w/ severe pain |
|---|---|---|

Have you returned to work? Yes ☐ No ☐ Part time (date) ___ Full time (date) ___    If you have not returned to work, do you expect to? Yes ☐ No ☐ Part time (date) 6/15/ Full time (date) ___

Describe your current disabling condition and its cause:
pain to lower back & Rt leg secondary to herniated disc

| When were your first symptoms? 05/16/98 | When did you notice them? after the fall | Date first treated 05/16/98 |
|---|---|---|

Was this condition the result of an accident? Yes ☐ No ☐   Date of Accident 05/16/98   Location of Accident bathtub/4975 Lakeway Dr

How did accident happen? I slipped backward getting out of the bathtub

Name physicians or other practitioners consulted for this condition for other sickness and/or accident:

| John Wells, MD | 844 Central Blvd Suite 360 | 5/16/98 | Anes/Pain M |
| Sam Allem,DC | 805 Old Port Isabel Rd. | 5/20/98 | Chiropracto |

Other physicians or other practitioners consulted in the past (3) years:

| Florinda Duazo, MD | 645 Villa MariaBlvd | 02/98 | annual | IM |
| Jose Marie Govan | 844 Central Blvd STE 370 | 02/98 | annualGyn | OB/GYN |

Hospital confinements in the past (3) years:

# UNUM.

**Part II   Occupational Information**

...fy your occupation, please attach a copy of last year's personal and business federal tax returns, complete with all ...ments and schedules with this claim form. Additional information may also be necessary.

...was your occupation immediately prior to the date you became disabled? **Pediatric Surgeon**
(...u are employed in more than one occupation, please include all occupations.)

...er of hours worked per week prior to the date you became disabled: **50**

...er of hours worked per week since you became disabled: **20 1st 2 weeks**

...cribe of the occupations noted above prior to your disability: **Ø Last 2 weeks**

| ...ption of each activity/duty | # of hours spent each week on this activity/duty | Are you currently able to perform this activity/duty? If no, why not? | |
|---|---|---|---|
| Treating patients in office | 35hrs | ☐ Yes ☑ No | can not sit long |
| Treating patients in nursing home | 5 | ☐ Yes ☑ No | can not bend |
| Treating patients at hospital | 10hrs | ☐ Yes ☑ No | can not stand long |
| | | ☐ Yes ☐ No | |
| | | ☐ Yes ☐ No | |

...be briefly which of these duties you are unable to perform as a result of your sickness or accident and why.

I can not sit, stand, drive or bend well without pain after a very short time.

...cribe briefly your prior work experience and education, chronologically.

See attached CV.

...se those activities which best describe the physical requirements of your occupation, if any.

Standing

Sitting

Reaching

...above statements are true and complete to the best of my knowledge.

**FRAUD NOTICE:** Any person who knowingly files a statement of claim containing any false information is subject to criminal and civil penalties.

**DISCLOSURE AUTHORIZATION**
I authorize any doctor, hospital, pharmacist, clinic, other medical facility, or provider of health care, banking or financial institution, insuror or reinsurer, consumer reporting agency or governmental agency, Medical Information Bureau, employee and other persons or institutions to provide UNUM Life Insurance Company of America and its representatives who are employed to assist in the evaluation of my claim any medical or non-medical information, data or records you may have regarding me, including, but not limited to, my employment, medical history and treatment (including, but not limited to, records pertaining to psychiatric, drug or alcohol use history, my HIV status and test results, and any disability I may ...ve or have had) and income.

_X K. C. Beth_       **6/1/98**
                     Date Signed

**... File A Claim**

1. Complete Parts I and II of this form for all claims. We cannot process your claim without a completed form.
2. Have your Attending Physician complete Part III of the form, unless you are claiming benefits under your Non-Disabling Injury Rider. For Non-Disabling Injury (NDI) claims, include copies of bills you incurred for outpatient treatment.
3. Please read notices dealing with employer-sponsored plans of disability insurance, if applicable.
4. When all sections of this form have been completed, submit the form to the following address:
   UNUM Life Insurance Company of America
   Individual Disability Benefits
   2211 Congress Street
   Portland, Maine 04122-0001
5. If you have any questions concerning this form or your claim, call us at:
   1-800-228-4568 (Toll Free) or 1-207-770-3833
   1-800-274-8210 (Fax)

**... ation on**
**...loyer-Sponsored Plans**    Certain provisions of Federal law apply to employer-sponsored plans. We are required to:

1. Give employees receiving disability benefits under such plans the option of having the insurance company withhold amounts for federal income tax purposes.
2. Withhold F.I.C.A. Tax on any payments made during the first six (6) months of disability. This tax is withheld only on that portion of your benefits that are attributable to employer contributions.
3. Furnish the employer with an annual report indicating the amount of disability benefits paid and the amount of tax withheld (if any) during the year.

... 3  (11/97)

---

# ☼ UNUM.

| | Individual Disability Notice of Claim |
|---|---|

... Life Insurance Company of America

| | Agency |
|---|---|
| | Association |

| | Home Telephone Number | Policy Number(s) |
|---|---|---|
| Karen E. Brooks | (956) 350-4730 | RXN1022 |
| | Social Security Number | Date of Birth |
| 4975 Lakeway Dr | 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 | 10/08/59 |
| ... Disability Began | Nature of Sickness/Injury | Date Notice Received |
| | | |
| ... Office | Broker or Agent's Name | |
| | | |
| ... Agent's Telephone Number | By | Date |

# EXHIBIT "D"

 **U**NUM.

June 24, 1998

JUN 29 1998

Karen E. Brooks  DPM
615 Villa Maria Blvd.
Brownsville, TX   78520

Insured:     Karen E. Brooks
ID #:        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
Policy #:    LAARXN1022
Claim #:     CLA982346

Dear Dr. Brooks:

This letter is to acknowledge receipt of your claim form.  While processing your claim, it is our hope to provide you with the best possible customer service.

Following is a brief explanation of what is involved in the initial processing of a claim. This information is provided to give you an idea of our general time frames and other helpful facts that will enhance your understanding of what you can expect during the next few weeks.  Of course, each claim is different and thus you may experience time frames that are different from what is outlined in this letter.

Once the fully completed claim form is reviewed.  All pertinent information provided by you and your attending physician is input into our computer system.  The input of information is usually completed within two business days from receipt of the completed claim form.  Your file is then assigned to the benefits representative who will be handling your claim.

Once the benefit representative receives the claim file, he/she thoroughly analyzes the information in the file as well as the contract provisions of the disability policy you purchased.  It is our practice that the benefit representative handling the claim will contact you personally within seven business days after their receipt of your file to discuss the claim in detail.  At that time, he/she will let you know what other information or documentation is necessary to completely assess and evaluate the claim file, as well as discuss if, when, and how benefit payments are made.

**U**NUM **L**IFE **I**NSURANCE **C**OMPANY OF **A**MERICA
2211 Congress Street
Portland, Maine 04122

If additional medical or financial documentation is required, the benefit representative handling your claim may request your assistance in obtaining any additional information necessary. Benefit payments cannot be made until all necessary information is received and reviewed.

You will be hearing from a benefit representative soon. In the meantime, should you have any questions concerning your claim, please do not hesitate to call me at 1-800-228-4568 extension 8319.

Sincerely,

Jon Colson
Claims Assistant
Individual Disability Benefits

cc:    Selman & Company
attn:   Evelyn Burrage

# EXHIBIT "E"

CribPDF – www.fastio.com



June 26, 1998

'JUL 0 3 1998

Karen E. Brooks
615 Villa Maria Blvd.
Brownsville, TX  78520


Insured:      Karen E. Brooks
ID #:         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
Policy #:     LAARXN1022
Claim #:      CLA982346

Dear Dr. Brooks:

This letter is being sent to follow-up on the message I left on your answering machine today.  I have received your claim for disability benefits for which you are claiming a date of loss of May 16, 1998.

Your policy provides a maximum benefit of $6000.00 in the event you are totally disabled, as defined in your policy, after you have completed a 30 day elimination period, subject to all other policy provisions.  Your policy also provides benefits in the event you are residually disabled as defined in your policy.  Before benefits can be considered under the residual disability provisions, you must meet the Qualifying period.  The Qualifying period is the continuos period of Total Disability equal to the greater of the Waiting period or 30 days, which must precede payment of the Residual disability benefit.

If it is determined that you are eligible for residual disability benefits, we will need to request certain financial information to calculate your benefits, such as your personal and business tax returns or profit and loss statements  for the 24 months prior to your date of loss.   We would also need your monthly profit and loss statements for the months which you are claiming residual disability.

Your claim form was completed by Dr. Sam J. Allen.  He has indicated that you were first unable to work on June 1, 1998.  Therefore, we will be utilizing that as your date of disability at this time.  However, we have noticed that you were previously seen by Dr. John Wells.  We will be requesting records from his office, as well as updated records from your other physicians.

Our records indicate that your effective date of this policy is May 1, 1996, which is the date the coverage under your association became effective with UNUM.  Please advise if you had insurance coverage with your prior carrier.

UNUM LIFE INSURANCE COMPANY OF AMERICA
2211 Congress Street
Portland, Maine 04122

I am also enclosing a copy of a questionnaire which is usually handled over the phone. Please complete the applicable portions of this form and disregard any questions which have been previously addressed in the Cyrrocumuli Vitae which accompanied your claim.

If you have not yet returned to work, we ask that you and your attending physician complete the enclosed Insured's Progress Statement and return it by July 20, 1998. Please be sure both you and your attending physician sign and complete the form before you return it.

As I indicated on my message to you, I will be out of the office from Monday, June 29th and will return on Monday July 6th. I look forward to hearing from you when I return to the office. My toll free number is 1-800-228-4568, extension 8302. However, if you have any questions or concerns which need immediate attention, please feel free to call our phone center at the above listed phone number. They will be happy to find an appropriate resource to answer any questions you may have.

Sincerely,

Nancy Olds
Disability Benefit Analyst
Individual Disability Benefits

cc:  Selman and Company

# EXHIBIT "F"

CltdPDF - www.fastio.com

 **U**NUM.

August 7, 1998

Karen E. Brooks
4975 Lakeway Drive
Brownsville, TX   78520

Insured:     Karen E. Brooks
ID #:         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
Policy #:    LAARXN1022
Claim #:     CLA982346

Dear Dr. Brooks:

This letter is being sent to follow up on our recent conversation.  I am sorry that you have
experienced a setback in your recovery.

Although Dr. Wells indicated that you were first unable to work on June 1, 1998, upon
our review of Dr. Wells records, it is clear that you were either totally or residually
disabled as of May 16, 1998.  Therefore, your 30 day elimination period began accruing
on May 16, 1998 and ended on June 14, 1998.

Enclosed please find our check in the amount of $12,000.00 which represents total
disability for the period of June 15, 1998 to August 15, 1998.  As your benefits are issued
on an accrued basis, your next check, (assuming you are still disabled as defined in your
policy), will be for the period of August 15th to September 15th.  This check will be
issued on or about September 15th.

As discussed, I am enclosing a progress statement which should be taken to your
physician for completion at your next office visit.  Please be sure that your physician
addresses the setback in your recovery and provides us with his updated treatment
expectations.

Please keep me posted of any changes in your condition.  I hope that you are successful in
obtaining additional information about your treatment options.  If you have any questions

UNUM LIFE INSURANCE COMPANY OF AMERICA
2211 Congress Street
Portland, Maine 04122

or concerns, please feel free to call me at our toll-free number, 1-800-228-4568, extension 3714. I will be happy to provide any assistance I can.

Sincerely,

Nancy Olds
Disability Benefit Analyst
Individual Disability Benefits


cc: Selman and Company

# EXHIBIT "G"

 **UNUM.**

September 16, 1998

Karen E. Brooks
4975 Lakeway Drive
Brownsville, TX  78520

Insured:    Karen E. Brooks
ID #:       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
Policy #:   LAARXN1022
Claim #:    CLA982346

Dear Dr. Brooks:

Thank you for keeping me updated regarding your treatment.  I can understand your
frustration with the change in health insurance carriers and the delay this has caused in
scheduling your surgery.

In preparation for the possibility of you receiving residual disability benefits, I have had
your tax returns reviewed by our financial department.  They have indicated that
"Statement 1" from your 1997 business tax returns was not enclosed with the copy of
your return which was sent to our office.  This schedule breaks down the miscellaneous
expenses.   Please have a copy of that schedule forwarded to this office for our review.

Based on our conversation, you were not treating patients in August, with the exception
of the courtesy visit with a colleague's father.  You have indicated that you are only
going to the office to do paperwork and are available to answer questions.  Therefore, we
will be considering you totally disabled at this time as you are not performing the
substantial and material duties of your occupation.  If there is a change in your condition
and you begin seeing patients again (before your surgery), please let us know so that we
can discuss what additional information will be needed so that we can process your claim
accordingly.

Meanwhile, please complete the front only of the enclosed progress statement and return
it to this office by October 15, 1998.

UNUM LIFE INSURANCE COMPANY OF AMERICA
2211 Congress Street
Portland, Maine 04122

Karen Brooks
September 16, 1998
Page 2

If you have any questions or concerns, please feel free to call me at our toll-free number,
1-800-228-4568, extension 8302.  I will be happy to provide any assistance I can.

Sincerely,

Nancy Olds
Disability Benefit Analyst
Individual Disability Benefits

# EXHIBIT "H"

CutePDF - www.tasius.com



November 2, 1998

Karen E. Brooks
4975 Lakeway Drive
Brownsville, TX  78520

Insured:     Karen E. Brooks
ID #:        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
Policy #:    LAARXN1022
Claim #:     CLA982346

Dear Ms. Brooks:

Due to a change in assignments, I will no longer be handling your claim for Disability Income
Benefits.  As of 10/30/98 your claim will be handled by Sheldon White.

Should you have questions or concerns, please do not hesitate to contact Sheldon White by
calling our toll-free number1-800-228-4568, extension 8293.

It has been a pleasure to be of service to you.

Sincerely,

Nancy Olds
Disability Benefit Specialist
Individual Disability Benefits

UNUM LIFE INSURANCE COMPANY OF AMERICA
2211 Congress Street
Portland, Maine 04122

# EXHIBIT "I"

CVisPDF - www.finebiz.com



November 3, 1998

Karen E. Brooks
4975 Lakeway Drive
Brownsville, TX   78520

Insured:      Karen E. Brooks
ID #:         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
Policy #:     LAARXN1022
Claim #:      CLA982346

Dear Dr. Brooks:

Please complete the front of the enclosed progress statement and ask your attending physician to complete the back of the form, as well as providing us with copies of recent office notes.  Please be sure that both you and your physician sign and date the form before returning it to us in the enclosed self-addressed, stamped envelope.

If you should have any questions or concerns regarding the completion of this form, please do not hesitate to contact me by calling our toll-free number, 1-800-228-4568, extension 8293.

Thank you for your anticipated cooperation.


Sincerely,

Sheldon White
Disability Benefits Specialist
Individual Disability Benefits

UNUM LIFE INSURANCE COMPANY OF AMERICA
2211 Congress Street
Portland, Maine 04122

# EXHIBIT "J"



UNUM.

January 4, 1999

Karen Brooks, DPM
4975 Lakeway Dr.
Brownsville, TX 78520

RE:   **UNUM Policy RXN1022**
      **Claim Number CLA982346**

Dear Dr. Brooks:

As part of our continuing efforts to provide excellent customer service, UNUM
occasionally consults with external resources to utilize their expertise in specialized areas
of disability assessments.  Recently, UNUM consulted with Health Resources and
Technology, Inc. of Boston, Massachusetts.  Health Resources and Technology, Inc, or
HRT, provides access to physicians who are world-renowned for their experience in a
particular illness area.  These experts produce diagnostic and/or treatment advice which
HRT in turn shares with your attending physician in an effort to provide you with an
optimal opportunity to achieve resolution of your disabling condition.

The purpose of this letter is to notify you that HRT, acting on behalf of UNUM, has
reviewed your file and that a physician from HRT may be contacting your attending
physician to review your current treatment plan and discuss recommendations for future
diagnostic testing or treatment.

Please understand that this service is being provided in an attempt to offer you maximum
options for recovery and is not intended to dictate your treatment protocol.  Should you
have any questions or concerns regarding this process, please do not hesitate to contact
me.

Sincerely,

Sheldon White
Disability Benefit Specialist

cc:    John A. Wells, M.D.

UNUM LIFE INSURANCE COMPANY OF AMERICA
2211 Congress Street, Portland, ME 04122
207 770-2211
http://www.unum.com

# EXHIBIT "K"

CutePDF - www.tinytx.com

# MEMORANDUM

**TO:** File/Sheldon White      **FROM:** Nancy E. Bogg, VCM

**RE:** Karen Brooks          **DATE:** March 4, 1999
      Policy #LAARXN1022
      Claim #CLA982346

## REFERRAL:

The request to review the surgical schedules from this podiatrist for both 1997 and 1998 and make comparisons regarding pre and post date of loss activities have been completed. This 39 year-old podiatrist reports a date of loss of 5/16/98 with an L5 disc herniation. Per my memorandum of 2/09/99 it is noted that her AP in correspondence of 12/98 noted that the insured was "not able to drive beyond 30 minutes without experiencing increased pain, that she should not be standing greater than two hours at a time, and should not be sitting greater than 30 minutes". I had noted that aside from specific surgeries, this insured would not be precluded from the material and substantial duties of an office practice given those limitations.

The surgical schedules have been submitted from PMSI for both 1997 and 1998 with the specific dates and the operating room start and end times. All noted that Dr. Brooks was the primary surgeon in these cases.

## ANALYSIS:

The analysis from 1997 and 1998 regarding the surgical procedures notes no specific procedures and procedure codes, however, the dates and the operating room start and end times were. Taking that into consideration, the following charts the surgeries for 1997 and 1998 with the date of 5/16/98 (the insured's claimed DOL) as the dividing point for both 1997 and 1998 for the purposes of my analysis.

1997

| J | F | M | A | M 1-15 | M 16-31 | J | J | A | S | O | N | D | Total |
|---|---|---|---|--------|---------|---|---|---|---|---|---|---|-------|
| 1.15 | - | :50<br>1:20 | 1:35<br>1:00<br>1:30 | 1:15 | - | 1:15<br>1:40<br>:35 | :55<br>1:50<br>:55<br>2:20<br>1:15<br>1:00<br>1:45 | 4:15<br>:50<br>1:10 | 1:30<br>1:45<br>1:10 | - | :55<br>:50 | 1.50 | |
| 1 | - | 2 | 3 | 1 | - | 3 | 7 | 3 | 3 | - | 2 | 1 | 26 |

| 1998 | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2:20<br>:35<br>1:04 | - | 1:55<br>1:05 | 1:15<br>1:25<br>2:35 | 1:40<br>1:05 | 1:35 | - | 1:05 | 1:40<br>1:45 | 1:35<br>1:20<br>:50 | 1:55<br>2:20 | 2:30 | 1.10<br>1:55 | |
| 3 | - | 2 | 3 | 2 | 1 | - | 1 | 2 | 3 | 2 | 1 | 2 | 22 |

EXHIBIT S

CL-496

0028

| | January - May 15, 1997 | May 16 – December 31, 1997 |
|---|---|---|
| Total Procedures | 7 | 19 |
| Average Time/Procedure | 1:15 | 1:28 |
| Total Average/Procedure | 1:24 | |

| | January 1 – May 15, 1998 | May 16 – December 31, 1998 |
|---|---|---|
| Total Procedures | 10 | 12 |
| Average Time/Procedure | 1:30 | 1:38 |
| Total Average/Procedure | 1:30 | |

As noted, the insured completed 26 procedures in 1997 performing 7 from January – May 15, and 19 from May 16 – December 31. In 1998 with her date of loss of 5/16/98, the insured performed a total of 22 surgeries with 10 from January – May 15, and 12 after her date of loss of 5/16. In fact, the insured performed a 1 hour and 35 minute surgery on May 22, 1998, one week following her DOL. It is noted, however, that she did not perform any surgeries in June of 1998 and only performed 1 in July, 1998. This is in contrast to having performed in 1997, 3 in June and 7 in July. It is noted that there were only 2 surgeries in 1997 that lasted over 2 hours that were performed in July and 1 again (a very lengthy procedure, 4 hours 15 minutes) in August. In 1998, however, there were 4 surgeries over 2 hours as follows:  1 in January, 1 in August, 1 in October and 1 in November.

The average times for the surgeries in 1997 was 84 minutes or 1 hour and 24 minutes with the breakdown of 1 hour 15 minutes from January through May 15th, and 1 hour 28 minutes from May 16th through December 31st. In 1998 the average time for a procedure was 90 minutes or 1 hour 30 minutes for the year and 1 hour 30 minutes for the average as well from January through May 15th. 1 hour and 38 minutes was the average time per procedure following her DOL in 1998 from May 16th through December 31st.

## CONCLUSION:

Based on the fact that the insured had been performing surgical procedures one week following her date of loss and surgeries that were on the whole longer as an average for the remainder of 1998 than she had done in any other comparative information above would indicate that the insured was clearly able to work at all material and substantial duties of her occupation. The restrictions and limitations indicated that she could not stand longer than 2 hours. As noted only 2 surgeries in 1997 required the operating room at over 2 hours, and in 1998 with 4 surgeries over 2 hours. and 2 of these followed her date of loss. Since a number of surgeries are performed in the operating room in a seated position it is not known what types of surgeries the insured was performing as this information was not available. It is clear, however, that the insured was performing surgery and performing more surgeries after her date of loss than prior to her DOL in 1998.

# EXHIBIT "L"

CutePDF - www.fastio.com

March 29, 1999


Karen Brooks, DPM
4975 Lakeway Drive
Brownsville, TX 78520

Re:     Policy No.: LAARXN1022
        Claim No.: CLA982346

Dear Dr. Brooks:

As you know, we have been extending benefits to you for your accident claim of May 16,
1998. In the course of continued evaluation of your claim, we request various records,
such as medical, financial and occupational information. Most recently we received the
surgical schedules from the Brownsville Medical Center, Department of Surgery for the
calendar years of 1997 and 1998.

According to their records you completed twenty-six procedures in 1997 of which
thirteen were as an assistant surgeon. In 1998 the records



procedures of which five were as an assistant surgeon. indicate you performed twenty-
follows: Ten procedures were performed between January 1 and May 16, 1998 (your date
of loss) and twelve were performed from May 16, 1998 to December 31, 1998 (after your
date of loss).

Your average surgical procedure time pre-disability was:



84 minutes in 1997

75 minutes in 1998 (pre-disability)
88 minutes in 1998 (post-disability)

March 29, 1999

Karen Brooks, DPM
4975 Lakeway Drive
Brownsville, TX  78520

Re:     Policy No.: LAARXN1022
        Claim No.: CLA982346

Dear Dr. Brooks:

As you know, we have been extending benefits to you for your accident claim of May 16,
1998.  In the course of continued evaluation of your claim, we request various records,
such as medical, financial and occupational information.  Most recently we received the
surgical schedules from the Brownsville Medical Center, Department of Surgery for the
calendar years of 1997 and 1998.

According to their records you completed twenty-six procedures in 1997 of which
thirteen were as an assistant surgeon.  In 1998 the records indicate you performed twenty-
two procedures of which five were as an assistant surgeon.  The breakdown for 1998 is as
follows:  Ten procedures were performed between January 1 and May 16, 1998 (your date
of loss) and twelve were performed from May 16, 1998 to December 31, 1998 (after your
date of loss).

Your average surgical procedure time pre-disability was:

> 84 minutes in 1997
> 75 minutes in 1998 (pre-disability)
> 88 minutes in 1998 (post-disability)

Your restrictions and limitations indicated you could not stand longer than 2 hours.  Only
2 surgeries in 1997 were greater than 2 hours.  In 1998 there were 4 procedures that were
over 2 hours and two of those were after your date of disability.

Based on this information, you were performing surgical procedures the week following
your date of injury and throughout 1998.  This information is inconsistent with
information you have provided to us.



EXHIBIT ___U___

CL-421

March 29, 1999
Karen Brooks, DPM
Page 2

Specifically, on October 15, 1998 you met with our field representative at your practice. At that time you stated that it was likely you would need surgery before any consideration of returning to work and that no time frame had been established. When asked about work on a part time basis, you responded that you had attempted to work part-time in late July, 1998, but found that it worsened your condition.

Policy LAARXN1022 reads in pertinent part;

> **Total Disability** means: (1) the inability to perform the substantial and material duties of the occupation due to an Injury or Sickness; and (2) You receive regular medical care from a duly licensed physician other than the Insured. If You are performing the duties of any occupation, You will no longer be considered totally disabled.

> **Residual Disability** means the inability due to Injury or Sickness to perform:

> 1. one or more of the substantial and material duties of the occupation; or
> 2. the substantial and material duties of the occupation for as much time as is normally required to perform them.

On 6/11/98, you signed a claim form indicating a date of loss of 5/16/98. This was the date you indicated you had fallen backward in the bathtub. You added that you were able to work part-time with severe pain.

Your first Insured's Progress Statement was signed and dated 7/5/98. You responded to Question 3, "Since your last report, have you performed any of the duties of your regular occupation or profession?" with a "No". Your next Insured's Progress Statement was signed and dated 10/5/98. Question 3 was again answered with a "No". From 7/5/98 to 10/5/98 you performed six procedures at Brownsville Medical Center. The next Insured's Progress Statement was signed and dated by you on 11/9/98. Your response to Question 3 was, "Yes, I went to work one day." From 10/5/98 to 11/9/98 you performed two procedures at Brownsville Medical Center.

CL-420

March 29, 1999
Karen Brooks, DPM
Page 3

Your next Insured's Progress Statement was signed and dated 1/11/98, which should have been 1/11/99 as that was the date your attending physician signed and dated the Attending Physician's Statement correctly as 1/11/99. You answered Question 3, again, with a "No". From 11/9/98 to 1/11/99 you performed three procedures at Brownsville Medical Center.

Your most recent Insured's Progress Statement was signed, but not dated. We have concluded that you likely signed it on 2/23/99 as that was the date your attending physician signed and dated the Attending Physician's Progress Statement. You indicated you worked 3 half days on 2/15, 2/17 and 2/18.

According to the information received from the Brownsville Medical Center you have continued to perform surgeries as you did before your accident. This is inconsistent with the information you have provided to us. We are therefore discontinuing further benefits to you.

UNUM Life Insurance Company has made benefit payments to you totaling $48,000.00 under the above-captioned policy for the benefit period from 6/15/98 to 2/15/99 after you satisfied your 30 day waiting period. We anticipate your contact regarding repayment of that amount as you were not entitled to benefits during that time frame.

Please understand that our decision has been based on a complete evaluation of your file as it has developed in your claim. Should there be any additional information which we are not aware of and you feel may have affected our decision, or if you have any questions regarding this decision, please call me at 1-800-228-4568, extension 8293.

Please be assured of our desire and readiness to be of prompt service to you in the future, whenever possible, within the provisions of your policy. If you disagree with our determination or the facts in your file as they have been presented, you may request our Quality Review Section review this decision by sending your request in writing to Quality Review Section, T-291, 2211 Congress Street, Portland, ME, 04122.

Sincerely,

Sheldon E. White
Disability Benefits Specialist

# EXHIBIT "M"

CibPDF - www.fastio.com

# PATRICIA A. HERNANDEZ, J. D.
## ATTORNEY AT LAW

MAY 03 1999

117 East Price Road
Brownsville, Texas 78521

Ph (956) 541-9001
Fax (956) 550-9553

April 27, 1999

*VIA CMRRR Z 559-157-443*

**UNUM LIFE INSURANCE COMPANY OF AMERICA**
Attn: Mr. Sheldon White
2211 Congress Street
Portland, ME 04122

Re:
   Dr. Karen Brooks
   Policy: LAARXN 1022
   Claim No: CLA982346

Dear Mr. White:

   This correspondence is to acknowledge receipt of your correspondence dated March 29, 1999. I have reviewed your correspondence and evaluation of Dr. Brooks regarding her injury. I am Dr. Brooks' corporate counsel and will be representing her regarding this matter. We disagree with your determination of the facts and feel a complete evaluation has not been conducted.

   As you know Dr. Brooks has sought extensive medical treatment and has been unable to preform her duties at work. Her treating physician, Dr. John Wells M.D., has advised that due to the serious nature of her injuries she can not preform substantially nor materially her duties which her occupation require.

   Dr. Brooks purchased a disability income plan from what is now Unum Life Insurance Company of America on May 1, 1996. One of her main purposes for purchase of this plan was so that if she ever became disabled her income would be protected. Under this plan it was represented to Dr. Brooks that she would be fully (100 %) covered if she were ever found to be eighty (80%) percent or more disabled. Dr. Brooks has been in frequent communication with your company and its representatives. Dr. Brooks on many occasions since her accident has informed adjuster Nancy



EXHIBIT ___√___

CL-8

0064

Olds, Mr. Sullivan, and yourself of her working schedule. This has never been information withheld from you or your company.

Dr. Brooks has been requested on several occasions to fill out "progress statements" The question you refer to in your correspondence is as follows:

> "Since your last report, have you preformed any of the duties of your **regular occupation or profession?**"

The answer if clearly "No", Dr. Brooks has indicated to your office over and over that she has not been able to preform her regular occupation or duties. She is unable to work more than twenty (20%) percent of the time and earns less than twenty (20%) percent of her normal pay. The few hours that she is present she is unable to substantially and materially preform fully any one of her duties - she is in constant and continuous pain. Not only is this evidenced by her statements to you, but by a very well respected treating physician Dr. Wells, M.D. who has determined Dr. Brooks disability.

Apparently throughout Dr. Brooks disability much information has been requested which she has cooperated in every possible manner to provide your company. Dr. Brooks has provided her personal and corporate tax returns for 1996 and 1997, her profit/loss statements from January 1998 to August 1998, copies of her employment agreements for the doctor hired to replace Dr. Brooks while she is unable to work, her payroll sheet for her corporation and has even gone to the extent of letting your representatives look at her appointment books for 1997 and 1998. It is apparent that your company has requested each of these items to attempt to scrutinize Dr. Brooks in attempts to find reasons to put pressure on her to settle this claim.

Apparently an investigator by the name of Sean Sullivan was sent to interview Dr. Brooks on March 22, 1999. Mr. Sullivan represented to Dr. Brooks that he worked for Unum Insurance and was investigating at your request. Mr. Sullivan immediately was very adverse with Dr. Brooks in his questioning. Mr. Sullivan indicated to Dr. Brooks that he requested her records from the hospital and was angry he had trouble receiving them and transferred this hostility to Dr. Brooks as if she had something to do with this delay in receiving his requested information.

Mr. Sullivans' treatment of Dr. Brooks was unprofessional and offensive. He accused Dr. Brooks of never informing you or Nancy Olds of her work schedule. It was then that Dr. Brooks was threatened verbally by Mr. Sullivan. He stated Dr. Brooks had one of two (2) choices; to drop her insurance plan with Unum - releasing you of your obligations to her; or (2) he would make sure she would have to pay the company for the past months wherein she has received the benefits for which she contracted with Unum.

Mr. Sullivan called later the same afternoon to speak with Dr. Brooks and was again extremely condescending and rude. He accused Dr. Brooks of lying to you and your representatives due to an operating schedule which he received from the hospital for 1998, which was inaccurate.

CL-86

Mr. Sullivan would not allow Dr. Brooks to finish answering his questions, constantly interrupting and coming to his own conclusions. It was very apparent that Mr. Sullivan was not wanting to hear any explanations from anyone that did not conclude what he perceived as his own conclusions. These tactics of intimidation and harassment are an unacceptable practice by your company toward its claimants.

Dr. Brooks as you are well aware, is disabled and is unable to work and preform her duties substantially and materially other than what she and her doctor have consistently described to you and your representatives. Frankly, the accusations and manner in which this was handled and threatened against my client is completely unprofessional. Legally your company has a duty to my client, she is your customer who has contracted with Unum to take care of her in her direst of needs. Unum has not only a contractoral responsibility to Dr. Brooks but also an obligation to treat its clients with respect. This has emotionally had its toll on Dr. Brooks. She is already having to deal with her physical disability and does not have any obligation to be abused, threatened and harassed by any employee at your company.

Finally to clear the matter on which Mr. Sullivan so heavily relied on and would not allow Dr. Brooks to give any explanation, please find enclosed the corrected operating schedule for Dr. Brooks 1998 and 1999. The one Mr. Sullivan received was inaccurate and Dr. Brooks attempted to explain this, however was verbally attacked by Mr. Sullivan who would not let her give an explanation. The chief nursing officer - is whom investigator Sullivan should have spoken to from the beginning regarding his investigation. Instead he spoke with a man from the statistics department who had no idea of the operating procedures or whether information he provided was updated and accurate. As you are aware it is common practice for resident doctors to operate on patients, this is precisely why they are present in the operating room - to get practice under the supervision of an experience doctor. Mr. Sullivan accused Dr. Brooks of lying and insisted that resident doctors could not preform procedures on patients.

In addition if Mr. Sullivan would have carefully conducted his investigation, instead of in haste, he also would have learned that "OR start" time and "OR stop" time relates to the patient time - not the doctor in and out time. The doctor is not present in the operating room the moment the patient is reported in the room. Common sense would also have told him that a patient might need to be unconscious before the operation begins, which means (a patient has to be prepared before a doctor even begins to set foot in the room and cut) an anesthesiologist would have to first be present after nurses and technicians have the patient in the room checking vitals and so forth. After the anesthesiologist preforms his job and the patient is completely anesthetized then the doctor or in many instances - such as in this case, the resident doctor can come in and begin to preform surgery. The original operating schedule you received reflects what is described above as the OR time "In" and "Out" is the total time by patient. The updated and revised schedule reflects only the doctors in and out time to clarify matters and provides which resident doctors were preforming the operation on each patient under the supervision of Dr. Karen Brooks. The accusations that have been drawn we feel were half hazard and based on partial and misinformation which led to the wrong conclusions. Please review the corrected operating schedule and letter from Brownsville Medical Center.

We are formally requesting that this be reviewed by you and your "Quality Review Section," and we receive a response within (10) ten days.

Yours truly,

Patricia A. Hernandez
Attorney at Law

PAH/scs

Enclosures
1.)   Operating Schedule 1998 and 1999
2.)   Letter from Brownsville Medical Center

cc:   Quality Review Section T - 291
      2211 Congress Street
      Portland, ME 04122

CL-8

# EXHIBIT "N"

r. Karen E. Brooks, DI
4975 Lakeway Dr.
Brownsville, TX 78520

November 12, 1999

Mr. Sheldon E. White                          CMRRR#Z-441-769-179
Disability Benefits Specialist
Unum Life Insurance Company
1 Fountain Square
Chattanooga, TN 37402-1338

RE:    Dr. Karen Brooks, DPM
       ID# 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
       Policy#  LAARXN1022
       Claim#  CLA982346

Dear Mr. Sheldon E. White:

        I am writing in reference to your letter dated March 29, 1999, informing me of
Unum's decision to terminate my disability benefits.  I remain totally disabled
according to the language contained in the policy that your company sold me.

        Why didn't you contact my attending physician who has been providing you
with regular progress reports on my condition for one year prior to making this
unilateral decision?

        This letter shall serve as formal notice that Unum has (10) days from the date
it receives this letter to reinstate my benefits.  If these benefits are not reinstated, and
I have not received outstanding payment within that period of time, I will treat
Unum's conduct as being a complete repudiation of my insurance agreement.  If the
payments are not reinstated within said time period, I shall accept your repudiation
and will accordingly cease paying premiums and seek all available remedies for
Unum's material breach and termination of disability benefits.

        Please contact me immediately to let me know what actions Unum intends to
take with respect to my claim.

Sincerely,

Karen Brooks, DPM

# EXHIBIT "O"

CImPDF - www.fwsio.com

## EXHIBIT LIST

EXHIBIT A- INSURAN(     ICY - 1994

EXHIBIT B- MONTHL\     FIT'S - MAY 1, 1996

EXHIBIT C- "INDIVIDU     ABILITY CLAIM FORM" - JUNE 11, 1998

EXHIBIT D- LETTER F     NUM'S "CLAIMS ASSISTANT" DATED
        JUNE 24, 1

EXHIBIT E- LETTER F     NUM'S "DISABILITY BENEFIT ANALYST
        INDIVIDU     ABILITY BENEFITS" DATED JUNE 6, 1998

EXHIBIT F- LETTER F     NUM'S "DISABILITY BENEFIT ANALYST
        INDIVIDU     ABILITY BENEFITS" DATED AUGUST 7, 1998

EXHIBIT G- LETTER F     NUM'S "DISABILITY BENEFIT ANALYST
        INDIVIDU     ABILITY BENEFITS" DATED SEPT. 16, 1998

EXHIBIT H- LETTER F     NUM'S "DISABILITY BENEFIT ANALYST
        INDIVIDU     ABILITY BENEFITS" DATED NOV.2, 1998
        CHANGIN     MENTS

EXHIBIT I- LETTER FF     UM'S SHELDON WHITE DATED NOV.3, 1998

EXHIBIT J- LETTER FF     UM'S SHELDON WHITE DATED JAN. 4, 1998

EXHIBIT K- MEMORA     DATED MARCH 4, 1999 FROM UNUM'S BOGG'S
        "VCM"

EXHIBIT L- LETTER F     UM'S SHELDON WHITE DATED MARCH 29,1999

EXHIBIT M- LETTER F     R BROOK'S ATTORNEY PATRICIA HERNANDEZ
        DATED A     1999

EXHIBIT N- DR. BROC     IFIED LETTER DATED NOV. 12, 1999

EXHIBIT O- EXHIBIT F

CSMPDF - www.fesisa.com

AO 440 (Rev 10/93) Summons in a Civil Action

# United States District Court

─────────────────── DISTRICT OF ───────────────────

Karen Brooks

## SUMMONS IN A CIVIL CASE

V.

UNUM Provident Corporation
and UNUM Life Insurance
Company of America

CASE NUMBER: **B-01-052**

TO: (Name and address of defendant)

UNUM Life Insurance Company
c/o Its Registered Agent
CT Corporation System
350 N. St. Paul Street
Dallas, Texas  75201

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Mark A. Di Carlo
Attorney At Law
722 Elizabeth Street
Corpus Christi, Texas  78404

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Michael N Milby, Clerk**

CLERK

(BY) DEPUTY CLERK

DATE  3-29-01