3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 0 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| KAREN BROOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. B-01-052 |
| | § | |
| UNUMPROVIDENT CORPORATION | § | |
| and UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' ANSWER AND COUNTERCLAIM

Defendants UnumProvident Corporation ("UnumProvident") and UNUM Life Insurance Company of America ("UNUM Life") (collectively, "Defendants"), subject to and without waiving Defendants' Motion to Collect Costs and for Stay, submit this answer and counterclaim to Plaintiff's Complaint (the "Complaint") and state:

## ANSWER

1.     With respect to the allegations in paragraph 1, admit upon information and belief the allegations in the first sentence; admit that UnumProvident is a Delaware corporation; admit, for purposes of this action only, that UNUM Life has been served with process; and deny the remaining allegations.

2.     Admit the allegations in paragraph 2.

**DEFENDANTS' ANSWER AND COUNTERCLAIM - Page 1**

3.    With respect to the allegations in paragraph 3, admit, for purposes of this action only, that venue is proper in this district and division pursuant to 28 U.S.C. § 1391; and deny the remaining allegations.

4.    With respect to the allegations in paragraph 4, state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences; admit that Commercial Life Insurance Company ("Commercial Life") issued its master policy no. RXN-1022 (the "Policy") to the American Podiatric Medical Association (the "Association") and a Certificate of Insurance (the "Certificate") thereunder to Plaintiff Karen Brooks ("Brooks"); state that the Policy and the Certificate speak for themselves; admit that a sample Certificate of Insurance is attached as Exhibit A to the copy of the Complaint served on Defendants; admit that a copy of the Certificate Schedule applicable to Brooks as of November 1, 1997 is attached as Exhibit B to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

5.    With respect to the allegations in paragraph 5, state that the Policy and the Certificate speak for themselves.

6.    With respect to the allegations in paragraph 6, state that the Policy and the Certificate speak for themselves.

7.    With respect to the allegations in paragraph 7, state that the Policy and the Certificate speak for themselves.

<u>DEFENDANTS' ANSWER AND COUNTERCLAIM</u> - Page 2

8.    With respect to the allegations in paragraph 8, state that the Policy and the Certificate speak for themselves.

9.    With respect to the allegations in paragraph 9, admit that the premiums for the Certificate were paid to and accepted by UNUM Life; and deny the remaining allegations.

10.    With respect to the allegations in paragraph 10, admit that UNUM Life's claim file pertaining to Brooks contains records regarding her medical condition; state that these records speak for themselves; admit that UNUM Life received Brooks' Individual Disability Claim Form and related materials in June 1998; state that these materials speak for themselves; admit that Parts I and II of Brooks' Individual Disability Claim Form are attached as Exhibit C to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

11.    With respect to the allegations in paragraph 10.1, state that Brooks' Individual Disability Claim Form speaks for itself.

12.    With respect to the allegations in paragraph 11, admit that Jon Colson, Claims Assistant, Individual Disability Benefits, sent Brooks a letter dated June 24, 1998; state that this letter speaks for itself; admit that a copy of this letter is attached as Exhibit D to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

13.    With respect to the allegations in paragraph 12, admit that Nancy Olds ("Olds"), Disability Benefit Analyst, Individual Disability Benefits, sent Brooks a letter dated June 26, 1998; state that this letter speaks for itself; state that a copy of this letter is attached as

Exhibit E to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

14.     With respect to the allegations in paragraph 13, admit that Olds sent Brooks a letter dated August 7, 1998; state that this letter speaks for itself; admit that a copy of this letter is attached as Exhibit F to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

15.     With respect to the allegations in paragraph 14, admit that Olds sent Brooks a letter dated September 16, 1998; state that this letter speaks for itself; admit that a copy of this letter is attached as Exhibit G to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

16.     With respect to the allegations in paragraph 15, admit that Olds sent Brooks a letter dated November 2, 1998; state that this letter speaks for itself; admit that a copy of this letter is attached as Exhibit H to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

17.     With respect to the allegations in paragraph 16, admit that Sheldon White ("White"), Disability Benefits Specialist, Individual Disability Benefits, sent Brooks a letter dated November 3, 1998; state that this letter speaks for itself; admit that a copy of this letter is attached as Exhibit I to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

18.     With respect to the allegations in paragraph 17, admit that White sent Brooks a letter dated January 4, 1999; state that this letter speaks for itself; admit that a copy of this

<u>DEFENDANTS' ANSWER AND COUNTERCLAIM</u> - Page 4

letter is attached as Exhibit J to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

19.     With respect to the allegations in paragraph 18, admit that Nancy E. Bogg, VCM ("Bogg") prepared a memorandum dated March 4, 1999 regarding Brooks; state that this memorandum speaks for itself; state that VCM is an abbreviation for "vocational case manager"; state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the contents of Medical Abbreviations; admit that a copy of Bogg's memorandum is attached as Exhibit K to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

20.     With respect to the allegations in paragraph 18.1, state that Bogg's memorandum speaks for itself.

21.     With respect to the allegations in paragraph 18.2, state that Bogg's memorandum speaks for itself.

22.     With respect to the allegations in paragraph 19, admit that White sent Brooks a letter dated March 29, 1999; state that this letter speaks for itself; admit that a copy of this letter is attached as Exhibit L to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

23.     With respect to the allegations in paragraph 19.1, state that White's letter dated March 29, 1999 to Brooks speaks for itself.

24.     With respect to the allegations in paragraph 19.2, state that White's letter dated March 29, 1999 to Brooks speaks for itself.

25.     With respect to the allegations in paragraph 19.3, state that White's letter dated March 29, 1999 to Brooks speaks for itself.

26.     With respect to the allegations in paragraph 19.4, state that White's letter dated March 29, 1999 to Brooks speaks for itself.

27.     With respect to the allegations in paragraph 19.5, state that White's letter dated March 29, 1999 to Brooks speaks for itself.

28.     With respect to the allegations in paragraph 20, admit that Patricia A. Hernandez, J.D., who purported to be Brooks' corporate counsel, sent White a letter dated April 27, 1999; state that this letter speaks for itself; admit that a copy of this letter is attached as Exhibit M to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

29.     With respect to the allegations in paragraph 22 (as there is no paragraph 21 in the copy of the Complaint served on Defendants), admit that Brooks sent White a letter dated November 12, 1999; state that this letter speaks for itself; admit that a copy of this letter is attached as Exhibit N to the copy of the Complaint served on Defendants; state that the items attached to the Complaint speak for themselves; and deny the remaining allegations.

30.     Deny the allegations in paragraph 23.

31.     Deny the allegations in paragraph 24.

32.     Deny the allegations in paragraph 24.1.

33.     Deny the allegations in paragraph 24.2.

34.     Deny the allegations in paragraph 24.3.

35.     Deny the allegations in paragraph 24.4.

36.     Deny the allegations in paragraph 24.5.

37.     Deny the allegations in paragraph 24.6.

38.     Deny the allegations in paragraph 24.7.

39.     Deny the allegations in paragraph 24.8.

40.     Deny the allegations in paragraph 24.9.

41.     Deny the allegations in paragraph 24.10.

42.     Deny the allegations in paragraph 24.11.

43.     Deny the allegations in paragraph 25.

44.     Deny that Brooks is entitled to the relief requested in her prayer or in any other portion of the Complaint.

45.     Deny all allegations not specifically admitted.

## AFFIRMATIVE DEFENSES

46.     State that the Complaint fails to state a claim against UnumProvident upon which relief can be granted.

47.     State that even if Brooks were entitled to accrued benefits through the date of trial, which entitlement is denied, she is not entitled to future unaccrued benefits, as a matter of law, in any event or contingency.

48.     State that Brooks' claims under the Texas Insurance Code and the DTPA are barred by her failure to give Defendants notice at least sixty (60) days before filing suit of her specific complaint and the amount of actual damages and expenses, including any attorneys' fees reasonably incurred in asserting the claim against Defendants.

49.     State that Brooks' claims are barred, in whole or in part, under Tex. Civ. Prac. & Rem. Code § 33.001, as her percentage of responsibility is greater than fifty percent for any damages she seeks to recover.    Any recovery by Brooks must be reduced by a percentage equal to her percentage of responsibility in accordance with Tex. Civ. Prac. & Rem. Code § 33.012.

50.     State that Brooks' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and unclean hands.

51.     State that Brooks' claims are barred, in whole or in part, by her comparative bad faith.

52.     State that Brooks' claims are barred, in whole or in part, by the doctrine of unjust enrichment.

53.     State that Defendants are entitled to offset Brooks' alleged damages, if any, by virtue of the damages that they have sustained as a result of her wrongful acts.

54.     State that Brooks' claims are barred, in whole or in part, by her failure to mitigate her alleged damages, if any.

55.     States that Brooks' claims are barred, in whole or in part, by the Counterclaim set forth below.

DEFENDANTS' ANSWER AND COUNTERCLAIM - Page 8

56.     State that Brooks' claims for exemplary and/or punitive damages are limited by chapter 41 of the Texas Civil Practice and Remedies Code and Tex. Lab. Code § 416.002.

57.     State that Brooks' claims for exemplary, multiple, and/or punitive damages are barred, in whole or in part, because such claims violate Defendants' statutory and constitutional rights to seek disposition of reasonably disputed matters before an impartial tribunal without facing an unreasonable penalty therefor.

58.     State that Brooks' claims for exemplary, multiple, and/or punitive damages are barred, in whole or in part, because such claims violate Defendants' statutory and state and federal constitutional rights under the circumstances presented here.

## COUNTERCLAIM

59.     Brooks is before the Court for all purposes, and no issuance or service of process is required at this time.

60.     Commercial Life issued the Policy to the Association.  As a member of the Association, Brooks was eligible for coverage under the Policy.  Effective May 1, 1996, Brooks obtained the Certificate, which provides in pertinent part:

> **Total Disability** means: (1) the inability to perform the substantial and material duties of Your Occupation due to an Injury or Sickness; and (2) You receive regular medical care from a duly licensed physician other than the Insured.  If You are performing the duties of any occupation, You will no longer be considered totally disabled....

* * *

DEFENDANTS' ANSWER AND COUNTERCLAIM - Page 9

**Residual Disability** means the inability due to Injury or Sickness to perform:

1.   one or more of the substantial and material duties of the Occupation; or

2.   the substantial and material duties of the Occupation for as much time as is normally required to perform them.

the Insured must be receiving regular medical care from a duly licensed physician other than the Insured, and Total Disability benefits must not be payable under this Policy. Residual Disability will be deemed not to exist if the Percent Loss is less than 20%.

61.   On June 17, 1998, UNUM Life received an Individual Disability Claim Form from Brooks, in which she claimed she had become disabled from her occupation as a podiatric surgeon with Karen E. Brooks, DPM, PA due to pain in her lower back and right leg secondary to a herniated disk that resulted from her fall in her bathtub on May 16, 1998. Brooks indicated that she worked 20 hours per week (rather than her pre-disability average of 50 hours per week) in the first two weeks following her fall and no hours during the following two weeks. UNUM Life acknowledged receipt of Brooks' claim, sent her an occupational questionnaire, and requested records from the medical providers that she identified on her initial claim form.

62.   In a telephone conversation on July 20, 1998, Brooks advised UNUM Life that other doctors had been covering for her practice, she had hired an associate who was to start work once he received his license, she had returned to work the previous week for two hours in the morning and two hours in the afternoon, and her doctor had recommended that she stay completely off work because working exacerbated her condition. While its investigation continued, UNUM Life began paying total disability benefits to Brooks and referred the file

to Sean Sullivan ("Sullivan"), one of its field benefit representatives, for a personal visit. In a telephone call on September 11, 1998, Brooks advised UNUM Life that she was still performing selected administrative duties and had last seen a patient (as a courtesy to another physician) two weeks before.

63.     Based upon Brooks' representations as to her work activities, UNUM Life continued to pay total disability benefits to her and requested an update if she began seeing patients again. On October 15, 1998, Sullivan met with Brooks, who informed him that she thought she needed surgery before returning to work; her primary restrictions and limitations were standing, sitting, and leaning forward; she could not work part-time and had suffered a relapse when she tried to return to work in late July; 70% to 75% of her income resulted from her office (rather than her surgical) practice; she was only going into the office twice a week for two hours a day or less performing administrative duties (but no patient care); and she had hired Dr. Middleton but was referring her surgical cases to another physician because Dr. Middleton was not a surgeon. UNUM Life thereafter received a telephone call from Brooks, who reported that she had recently performed a bunionectomy on the mother of one of her nurses but was in tears at the end of the procedure and promised herself not to go into the office again.

64.     In the meantime, UNUM Life received an Insured's Progress Statement from Brooks, in which she admitted, for what appears to be the first time, that she had gone to work one day performing her duties. By memorandum dated February 9, 1999, Bogg, who was one of UNUM Life's vocational case managers, concluded that Brooks' "functional ability to

'

continue in her office practice <u>would not</u> be affected" (emphasis in original) by her condition and recommended that UNUM Life obtain information from Brownsville Medical Center ("BMC") regarding the surgeries performed by Brooks. (UNUM Life had been requesting these records since December 1998, and at least some of the delay resulted from Brooks' request that BMC hold those records until it had obtained her permission to release them.) On February 23, 1999, Brooks informed UNUM Life that she had returned to work part-time, working approximately four hours per day, two-to-four days a week. The next day, however, UNUM Life received an Insured's Progress Statement from Brooks dated February 15, 1999, in which she denied performing any of her occupational duties.

65.     BMC eventually provided UNUM Life with a surgical log revealing that Brooks performed 26 procedures in 1997, 10 procedures in 1998 before her fall, and 12 procedures in 1998 after her fall. UNUM Life forwarded this information to Bogg, who noted in her report that Brooks performed more surgeries in 1998 after her fall than before it and performed two surgeries of over two hours, which exceeded her claimed limitations. UNUM Life thus contacted Sullivan to arrange for a follow-up visit with Brooks to confirm the accuracy of the information from BMC.

66.     On March 22, 1999, Sullivan met with Brooks, who claimed that she was always listed on BMC's records as the lead surgeon, even though she may or may not have performed the procedure in question; asserted that interns or residents actually performed the post-disability cases; and predicted that BMC would deny that interns or residents were performing the surgeries. When Sullivan pointed out that the log did not list any assistants

for some of the procedures, Brooks initially asserted that someone else performed them but then admitted that she might have performed at least one or two of them. Sullivan also pointed out numerous instances during the claim process where Brooks should have but failed to disclose these activities, yet she repeatedly denied making any misrepresentations to UNUM Life. Sullivan advised Brooks that, by virtue of her involvement in surgeries, her claim would be denied and was likely overpaid.

67.    Following his visit with Brooks, Sullivan spoke with several individuals at BMC, and they confirmed that the person listed on the log was the actual surgeon; interns and residents were not allowed to perform surgery and would be listed in the register of operations (of which he obtained copies); and Brooks was the surgeon for the cases in question. Sullivan then confronted Brooks with these findings, but she reiterated that BMC would never admit the involvement of interns and residents.

68.    By letter dated March 29, 1999, UNUM Life advised Brooks that it was closing her claim as a result of the information it had received regarding her continued performance of surgeries and requested her to contact UNUM Life to discuss repayment of the $48,000 in benefits that she had received. Brooks retained counsel, and by letter dated April 27, 1999, Patricia A. Hernandez, a Brownsville attorney, appealed UNUM Life's denial of Brooks' claim. UNUM Life declined to resume the payment of benefits to Brooks. Upon information and belief, Brooks has continued to perform surgeries to this day.

69.    Pursuant to 28 U.S.C. § 2201, Defendants state that there is an actual justiciable controversy between the parties and request the Court to adjudicate the following issues:

**DEFENDANTS' ANSWER AND COUNTERCLAIM** - Page 13

(a)     What were the substantial and material duties of Brooks' occupation as of the date of the onset of her alleged disability?

(b)     Did Brooks submit claims to UNUM Life that were not covered under the Certificate because she was continuing to perform the substantial and material duties of her occupation?

(c)     Did Brooks commit fraud in the submission of her monthly claim forms by failing to advise UNUM Life that she was continuing to perform the substantial and material duties of her occupation?

(d)     Did UNUM Life pay benefits to Brooks under the Certificate to which she was not entitled?

(e)     Is UNUM Life entitled to recover some or all of the benefits that it paid to Brooks?

(f)     Is Brooks presently unable to perform the substantial and material duties of her occupation?

70.     Depending on the Court's adjudication of the above issues, if UNUM Life paid Brooks benefits to which she was not entitled, then UNUM Life sues her to recover the amount of those overpayments.

## PRAYER

71.     Defendants respectfully request the following relief:

a.     That Brooks take nothing on her claims;

b.     That the Court grant the declaratory relief requested above and, if applicable, enter judgment against Brooks in favor of Defendants for their actual damages, attorneys' fees, and court costs; and

c.     That Defendants have all such other and further relief, both general and special, at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,

By:    _Andrew C. Whitaker_
           Andrew C. Whitaker
           State Bar No. 21274600
           S.D. No. 14309
           Attorney-In-Charge

OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271

FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent by certified mail, return receipt requested, to Mr. Mark A. Di Carlo, La Solana Building, 722 Elizabeth Street, Corpus Christi, Texas 78704, on this 19th day of April, 2001.

Andrew C. Whitaker

---

Andrew C. Whitaker

**DEFENDANTS' ANSWER AND COUNTERCLAIM - Page 16**

CM/PDF - www.teslos.com