# COPY



United States District Court
Southern District of Texas
FILED

NOV 1 6 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. B-01-052 |
| | § | |
| UNUMPROVIDENT CORPORATION | § | |
| and UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND (2) MOTION TO COMPEL

Defendants UnumProvident Corporation ("UnumProvident") and UNUM Life Insurance Company of America ("Unum Life") (collectively, "Defendants") file their (1) response to Plaintiff's Motion for Protective Order (the "Motion for Protective Order") and (2) motion to compel against Plaintiff Karen Brooks ("Brooks") and state:

## I. NATURE OF THE ACTION

This is a suit for benefits under a master policy issued to the American Podiatric Medical Association. Less than a year after obtaining coverage, Brooks fell in her bathtub and purportedly sustained injuries preventing her from performing her occupational duties. UNUM Life began paying $6,000 per month in disability benefits to Brooks while it investigated her claim. During its investigation, UNUM Life obtained (among other information) surgical logs from one of the hospitals at which Brooks had privileges indicating

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND (2) MOTION TO COMPEL - Page 1**

that she performed more surgeries in the period after her fall than she had before her fall.

Brooks was unable to offer a satisfactory explanation for the information contained in these

logs, and Unum Life stopped paying benefits to her.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

**A.      Brooks Files the This Action.**

On March 29, 2001, Brooks instituted this action with the filing of Plaintiff's Complaint

(the "Complaint"), in which she asserts claims against Defendants for breach of contract,

violations of the Texas Insurance Code and the DTPA, bad faith, and fraud.  The Complaint

makes no mention whatsoever of the previous dismissal of C.A. No. B-00-029 (the "Original

Action"), which involved the same parties and factual allegations and many of the same

claims, or the Order from the Original Action requiring her to pay Defendants' costs.

**B.      Brooks Refuses to Produce Any Documents to Defendants.**

In connection with her filing of the this action, Brooks received the Order Setting

Conference, which scheduled the initial pretrial and scheduling conference for August 13,

2001 and (among other provisions) stated: "By the [Rule 26(f)] conference, counsel will have

interviewed their clients and read the documents; readily available documents will have been

exchanged at the plan meeting at the latest."  By letter dated August 1, 2001 (Exhibit A),

Defendants' counsel reminded Brooks' counsel of this requirement, requested copies of her

documents, and offered to send copies of Defendants' documents.  The next day, Brooks'

counsel requested copies of Defendants' documents and promised to provide copies of her

documents. By letter dated August 8, 2001 (Exhibit B), Defendants' counsel produced a copy of their documents and reiterated his request for copies of Brooks' documents. By Order entered August 9, 2001, the Court ordered Brooks to pay Defendants' costs from the Original Action, which she eventually paid, and postponed the initial pretrial and scheduling conference, which is currently set for November 19, 2001.

Notwithstanding the above-quoted requirement of the Order Setting Conference and these letters from Defendants' counsel, Brooks failed to produce any documents to Defendants. Accordingly, by letter dated September 4, 2001 (Exhibit C), Defendants' counsel reminded Brooks' counsel of this requirement and reiterated his request for copies of Brooks' documents. Brooks still refused to provide any documents to Defendants. Instead, on September 5, 2001, she served Defendants with Plaintiff's Initial Disclosures (excerpts at Exhibit D), in which she identified as relevant certain documents that were purportedly attached to the Complaint or are in Defendants' possession; she failed, however, to include copies of any such documents with her disclosures. In light of Brooks' complete refusal to produce any documents voluntarily, on October 9, 2001, Defendants served her with Defendants' First Set of Interrogatories and Requests for Production to Plaintiff (the "Discovery Requests") (Exhibit E).

## C.     Brooks Files the Motion for Protective Order.

Brooks did not serve Defendants with any objections or responses to the Discovery Requests within the allotted 30-day time period. Instead, by letter dated November 6, 2001, her counsel threatened to file a motion for protective order unless Defendants withdrew their

requests for production and limited themselves to 30 requests.[1]  Brooks' counsel further

offered to provide documents regarding her claim and the denial of it if Defendants' counsel

would somehow identify the documents in her possession that they did not already have.  By

letter dated November 7, 2001 (Exhibit F), Defendants' counsel detailed the history of his

efforts to obtain copies of Brooks' documents and offered to hold some of Defendants'

requests for production in abeyance temporarily.  Brooks did not accept Defendants' offer;

instead, on November 7, 2001, she filed Plaintiffs' Motion for Protective Order, in which she

seeks an order limiting Defendants to 30 requests for production.

For the reasons set forth below, the Motion for Protective Order is without merit and

should be denied.  Rather, by virtue of Brooks' failure to comply with her discovery

obligations, the Court should enter an order (1) confirming that all of her objections, if any,

to the Discovery Requests have been waived by virtue of her failure to assert such objections

in a timely fashion, (2) requiring her to fully and completely respond to the Discovery

Requests, (3) requiring her to produce all of the documents sought in the Discovery Requests,

including the readily available documents required by the Order Setting Conference, and (4)

awarding Defendants their reasonable expenses, including attorneys' fees, incurred in

responding to the Motion for Protective Order and obtaining Brooks' compliance with her

discovery obligations.

---

[1]A true and correct copy of this letter is attached to the Motion for Protective Order.  Neither this letter nor the Motion for Protective Order address Defendants' interrogatories in any way.

# IV. ARGUMENT

## A.   Standards for the Entry of Protective Orders.

The standards for the entry of protective orders are stringent, requiring a showing by the movant of good cause and a specific need for protection. Landry v. Air Line Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 435 (5th Cir.), cert. denied, 498 U.S. 895 (1990). "Good cause" exists when justice requires the protection of "a party or person from any annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); Landry, 901 F.2d at 435. Broad allegations of harm, unsubstantiated by specific examples, do not suffice. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995); see also In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (noting that "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements'"). Application of these standards demonstrates that the Motion for Protective Order should be denied.

## B.   The Information Sought by Defendants Is Discoverable.

Initially, the Motion for Protective Order should be denied because the information sought by Defendants is discoverable. In this regard, Fed. R. Civ. P. 26 provides:

> (1)   *In General.* Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the

court may order discovery of any matter relevant to the subject matter
involved in the action.  Relevant information need not be admissible at the
trial if the discovery appears reasonably calculated to lead to the discovery of
admissible evidence.  All discovery is subject to the limitations imposed by
Rule 26(b)(2)(i), (ii), and (iii).

Fed. R. Civ. P. 26(b)(1).

Here, Defendants' requests for production clearly satisfy these requirements.  By way
of example, Requests No. 1-6 seek documents regarding Brooks' coverage and claims
thereunder, which are at the core of this case.  Requests No. 7-10 and 34-38 seek documents
regarding Brooks' communications with other insurers, which bear on her medical condition
and the potential applicability of ERISA.  Requests No. 11-12 seek documents regarding
Brooks' medical condition, which is unquestionably at issue in this action.  Requests No. 13-
19 seek copies of Brooks' communications with her experts and the people whom she has
identified as having knowledge of relevant facts, as well as statements from Defendants and
other witnesses.  Requests No. 20-21 seek documents regarding Brooks' alleged damages
(including attorneys' fees).  Requests No. 22-33 seek documents regarding Brooks' financial
condition and expenditures, which are relevant to (among other issues) her work-related
activities and her entitlement to residual disability benefits.  Requests No. 39-42 seek
documents regarding Brooks' communications with various governmental entities, which
concern her medical condition and receipt of disability-type benefits.  Requests No. 43-47 and
50-79 seek documents regarding Brooks' contentions in this action and that she intends to
utilize at trial.  Requests No. 80-87 seek documents regarding Defendants that Brooks has
obtained from third parties.  Finally, Request No. 88 seeks copies of the nonprivileged

documents received from Brooks' counsel in the Original Action. The Court should thus deny

the Motion for Protective Order and order Brooks to respond to the Discovery Requests and

produce all of the documents sought therein. See Fed. R. Civ. P. 26(c) (noting that if a motion

for protective order is denied in whole or in part, the Court "may, on such terms and

conditions as are just, order that any party or other person provide or permit discovery").

Brooks does not (and, in all probability, cannot) cite a single case immunizing her from

responding to all of Defendants' requests for production on the ground that such requests,

taken as a whole, are improper. Cf. Fed. R. Civ. P. 34(b) ("If objection is made to part of an

item or category, the part shall be specified and inspection permitted of the remaining parts.").

If Brooks had objections to some of these requests, she was certainly free to assert them in a

timely fashion under the Federal Rules of Civil Procedure.  In the face of the obvious

relevance of these requests for production, however, Brooks' efforts to avoid producing any

documents are contrary to the Rules and should be rejected.

**C.    The Discovery Requests Are Not Defective or Needlessly Duplicative.**

Moreover, Brooks' assertions that the requests for production are "not described with

particularity" and are "unnecessary [sic] cumulative and/or duplicative" are not well taken.

Importantly, Brooks has to date failed to comply with her obligations under the Order Setting

Conference to provide Defendants with copies of her documents.  If Defendants had received

such documents, they would have then been better equipped to tailor their discovery requests.

Brooks should not be able to use her failure to comply with her obligations to impair

Defendants' efforts to seek relevant information.

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION**
**FOR PROTECTIVE ORDER AND (2) MOTION TO COMPEL - Page 7**

In addition, Brooks' analysis ignores that requests for production are intended to have a broad scope. As Wright and Miller have observed:

> The purpose of Rule 34 is to make relevant and nonprivileged documents and objects in the possession of one party available to the other, thus eliminating strategic surprise and permitting the issues to be simplified and the trial to be expedited. The rule is to be liberally, rather than narrowly, construed.

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2202, at 356-57 (2d ed. 1994) (footnotes omitted). Importantly, Rule 34 "authorizes the broadest sweep of access, inspection, examination, testing, copying, and photography of documents or objects in the possession or control of another party." Id. at 379.

These authorities are also fatal to Brooks' request to limit Defendants to 30 requests for production. Whereas both the Federal Rules of Civil Procedure and the Southern District local rules limit the number of interrogatories that may be served without leave of court, no such limitation exists with respect to requests for production. Compare Fed. R. Civ. P. 33(a) and S.D. Tex. LR 33.1 with Fed. R. Civ. P. 34. Moreover, Brooks' request for this limitation is especially audacious in light of the fact that she (1) has to date failed to produce any documents to Defendants and (2) recently served Defendants with 74 requests for production of her own. If she had complied with her obligations, Defendants likely could have reduced the categories of documents that they now seek.

In the same vein, Brooks' suggestion that Defendants have some of the documents sought in the requests for production does not entitle her to the extraordinary relief that she now seeks. Defendants are absolutely entitled to know which documents Brooks has in her possession, regardless of whether they already have copies of such documents. See Cook v.

Rockwell Int'l Corp., 161 F.R.D. 103, 105 (D. Colo. 1995) ("The fact that the moving party is already in possession of documents it seeks to obtain by inspection, is not necessarily a sufficient reason for denying discovery."); see also 8A Wright & Miller, § 2214 at 435-36 ("The fact that the moving party already knows the facts it seeks to obtain by inspection is not necessarily a sufficient reason for denying discovery . . . .").

**D.     The Discovery Requests Are Not Overly Broad or Unduly Burdensome.**

Similarly, Brooks' complaints of burdensomeness miss the mark.   Brooks (not Defendants) filed this action, and she seeks to recover hundreds of thousands of dollars in damages.  In light of her affirmative requests for relief, Brooks should expect to have to produce documents supporting her allegations and incur the time and expense of doing so. See 8A Wright & Miller, § 2214, at 438-39 ("The mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought does not of itself require denial of the motion.") (Footnotes omitted).

Independent of the foregoing, Brooks has failed to satisfy her burden of providing competent proof of the alleged burden that would be necessary to answer the Discovery Requests. See Fletcher v. Atex, Inc., 156 F.R.D. 45, 54 (S.D.N.Y. 1994) ("If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence.").  By virtue of her failure to provide such proof, Brooks has waived such objection.

**E.    Brooks Has Waived Any Objections to the Discovery Requests.**

Moreover, Brooks has waived all of her objections, if any, to the Discovery Requests by not asserting such objections in a timely fashion. Defendants served the Discovery Requests on Brooks' counsel by certified mail on October 9, 2001, thus giving her until November 12, 2001 (i.e., 33 days after service) to serve her objections and responses. To date, however, Brooks has not served any such objections and has thus waived them. See In re United States, 864 F.2d 1153, 1156 (5th Cir. 1989) (noting that, "as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived").[2] This result is especially appropriate with respect to the interrogatories, which are not addressed at all in the Motion for Protective Order.

**F.    Defendants Are Entitled to Recover Their Attorneys' Fees.**

Finally, Defendants are entitled to recover the attorneys' fees that they incurred both in responding to the Motion for Protective Order and in obtaining Brooks' compliance with her discovery obligations. Fed. R. Civ. P. 37(a)(2)(B) provides that, if a party fails to respond that inspection will be permitted as requested, the discovering party may move for an order compelling inspection in accordance with the request. Here, because Brooks never responded to the Discovery Requests, Defendants are entitled to the relief provided in Fed. R. Civ. P. 37(a). In this regard, Fed. R. Civ. P. 37(a)(4) mandates that the Court shall "require the party

---

[2]Brooks' filing of the Motion for Protective Order did not insulate her from having to assert her objections to the Discovery Requests in a timely fashion. See F.A.A. v. Landy, 705 F.2d 624, 634 (2d Cir.) ("It is clear, however, that it is not the filing of such a motion that stays the deposition, but rather a court order."), cert. denied, 464 U.S. 895 (1983); Pioche Mines Consolidated, Inc. v. Dolman, 333 F.2d 257, 269 (9th Cir. 1964) ("Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear."), cert. denied, 380 U.S. 956 (1965).

... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees ...." In turn, Fed. R. Civ. P. 26(c) provides that Rule 37(a)(4) applies to the award of expenses incurred in relation to a motion for protective order.

## V. CONCLUSION

Brooks' position, distilled to its essence, is that she should <u>never</u> be required to produce <u>any</u> of her documents to Defendants under any set of circumstances. This position is contrary to both the Federal Rules of Civil Procedure and this Court's procedures. Defendants thus respectfully request that the Court enter an order:

1.      Denying the Motion for Protective Order;

2.      Deeming waived all of Brooks' objections, if any, to the Discovery Requests;

3.      Compelling Brooks to deliver her responses to the Discovery Requests to Defendants within five (5) days after the entry of such order;

4.      Compelling Brooks to deliver all of the documents sought in the Discovery Requests to Defendants, including all of the documents that are relevant to this dispute and readily available to her, within five (5) days after the entry of such order;

5.      Awarding Defendants their expenses and reasonable attorneys' fees incurred in defending against the Motion for Protective Order and prosecuting their motion to compel; and

6.      Awarding Defendants all such other and further relief, both general and special, at law and in equity, to which they may show themselves justly entitled.

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION**
**FOR PROTECTIVE ORDER AND (2) MOTION TO COMPEL - Page 11**

Respectfully submitted,

By: _Andrew C Whitaker_

Andrew C. Whitaker
State Bar No. 21274600
S.D. No. 14309
Attorney-In-Charge

OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271

FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

## CERTIFICATE OF CONFERENCE

By letters dated September 4, 2001 and November 7, 2001, copies of which are attached as Exhibits C and F, respectively, Defendants advised Mark Di Carlo, counsel for Brooks, that they would file a motion to compel if Brooks did not produce her readily available documents as required by the Order Setting Conference. Brooks never produced any documents in response to those letters. Additionally, at 12:20 p.m. on November 15, 2001, counsel for Defendants called Mr. Di Carlo to confer regarding the remaining relief requested in the motion to compel. Mr. Di Carlo did not return this call prior to the filing of this motion. Since agreement could not be reached, this motion to compel is presented to the Court for determination. In the event that Brooks agrees to some or all of the relief requested in this motion to compel, Defendants will so advise the Court.

_____
Andrew C. Whitaker

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent by certified mail, return receipt requested, to Mr. Mark A. Di Carlo, La Solana Building, 722 Elizabeth Street, Corpus Christi, Texas 78704, on this 15th day of November, 2001.

_____
Andrew C. Whitaker

# FIGARI DAVENPORT & GRAVES

### A REGISTERED LIMITED LIABILITY PARTNERSHIP
### INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitaker@fdglaw.com

August 1, 2001

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas 78704

Re:     C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and*
        *UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

We are in receipt of your letter dated August 1, 2001. Predictably, your letter is in many respects inaccurate and wrongfully attempts to blame us for problems that are of your making. Even though Ms. Brooks is the plaintiff in this action, we agreed to provide you with an initial draft of the Joint Discovery/Case Management Plan. Although we provided you with our draft on July 23, 2001, which was well in advance of the July 30, 2001 deadline to file the Plan, you did not provide us with any comments whatsoever until July 30, 2001. That same day, you provided me with 11 pages of documents that purported to list Ms. Brooks' anticipated deponents. At no point did we ever offer, whether expressly or impliedly, to input your lengthy listing into the Plan; instead, we indicated that your listing would be attached to the Plan as Exhibit A. Since all we received from you was a facsimile copy of that listing, we sent you a signed original of the Plan so that you could attach either (1) a <u>clean</u> copy of the listing that you had previously sent us by facsimile or (2) a listing that <u>your</u> secretary had entered onto <u>your</u> computer system. Needless to say, in the event that the Court has any concerns about the timeliness of the filing of the Plan, we will blame you.

Additionally, the Order Setting Conference requires: "By the conference, counsel will have interviewed their clients and read the documents; readily available documents will have been exchanged at the plan meeting at the latest." Defendants have previously provided Ms. Brooks (through her predecessor counsel) copies of the documents identified in Defendants' Initial Disclosures in the Original Action. Please advise if you would like another copy of such documents. In the meantime, please provide us with copies of the readily available documents in the possession of you or Ms. Brooks.

Sincerely,

Andrew C. Whitaker

Andrew C. Whitaker

ACW/krp

EXHIBIT A

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitaker@fdaday.com

August 8, 2001

**VIA FEDERAL EXPRESS**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas  78704

Re:    C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and
       UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

Although we have previously produced all of these documents to Ms. Brooks through her
predecessor counsel, enclosed are copies of:

1.     UNUM Life's claim file pertaining to Ms. Brooks (CL001-869);

2.     the underwriting file pertaining to Ms. Brooks (UW001-141); and

3.     the transition rider and schedule sheet for the APMA 65-65 plan (UNUM 0001-
       0011).

Please ensure that I receive by Friday copies of the readily available documents of Ms. Brooks
so that I may review such documents before the initial pretrial conference.

Your letter dated August 2, 2001 is so incorrect and baseless that it does not deserve a
response.

Sincerely,

Andrew C Whitaker

Andrew C. Whitaker

ACW/krp
Enclosures

EXHIBIT  B

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitake@figdav.com

September 4, 2001

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas  78704

Re:   C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

As you are aware, the Order Setting Conference requires: "By the conference, counsel will have interviewed their clients and read the documents; readily available documents will have been exchanged at the plan meeting at the latest."  Defendants have now provided both Ms. Brooks' predecessor counsel and you with copies of the documents identified in Defendants' Initial Disclosures in the Original Action.  By letter dated August 2, 2001, you agreed to provide copies of Ms. Brooks' documents to us.  To date, however, we have not received any documents from you.  Please provide copies of such documents to us as soon as possible.  If we have not received these documents by the close of business on Friday, we will file a motion to compel their production.

Sincerely,

Andrew C. Whitaker

Andrew C. Whitaker

ACW/krp

EXHIBIT___C___

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

KAREN BROOKS                          §
                                      §
VS.                                   §        CIVIL ACTION NO. B-01-052
                                      §
UNUM PROVIDENT CORPORATION            §
AND UNUM LIFE INSURANCE               §
COMPANY OF AMERICA                    §

## PLAINTIFF'S RULE 26(a) INITIAL DISCLOSURE

1.     Name, addresses and telephone numbers of each individual likely to have

discoverable information:

            R.W. Arm Strong
            R.W. Arm Strong & Associates
            2600 Old Alice Road
            Brownsville, Texas 78521-1450
            (956) 546-5556

Armstrong formerly represented Brooks regarding his communications with UNUM Life
on Brooks' behalf.

            Patricia A. Hernandez
            117 East Price Road
            Brownsville, Texas 78521
            (956) 541-9001

Hernandez formerly represented Brooks and may have knowledge regarding her
communications with UNUM Life on Brooks' behalf.

            Sam J. Allen, D.C.
            1st Rio Valley Medical, P.A.
            805 Old Port Isabel Road
            Brownsville, Texas 78521
            (956) 504-2273

Dr. Allen provided chiropractic treatment to Brooks and may have knowledge regarding
her condition and records.


EXHIBIT___D___

Dr. Joseph Caparuso

Dr. Javier Cavazos

2.      A copy of or a description by category and location of all documents, data
compilations and tangible things that are in the possession, custody or control of the party
and that the party may use to support their claims:  Ms. Brooks took out a long term
disability insurance policy contract.  UNUM has the contract in its possession.  Ms.
Brooks became injured and documents were generated by UNUM which established that
she was disabled .  UNUM has those documents in their possession because they
forwarded the documents to Ms. Brooks.  Health care providers are known to UNUM for
injuries on her back and UNUM should have such documents.  The major documents are
attached to the "Plaintiff's Complaint" in **Exhibit A-N**.


3.      A computation of the category of  damages claimed:  Ms. Brooks damages are as
follows:  Breach of Contract.   Dr. Brooks sues for $6,000.00 per month from February
15, 1999 through the date of the trial is $150,000.00 plus reasonable and necessary
attorney's fees of $150.00 per hour plus costs of court and/or 40% of the entire amount
paid.  Claimant is at least 20% disabled and should be receiving the percentage of
disability times her monthly benefits of $6,000.00 per month:  that is anywhere from
$1,200.00 per month to approximately $4,800.00 per month.  The plaintiff sues for
violation of  the Texas Insurance Code Article 21.21.  The plaintiff alleges violations of
17.46 of the Texas Business and Commerce Coded.  The plaintiff sues for:  (1) The costs
of actual damages; (2) Court costs; (3) Necessary and reasonable attorney's fees at
$150.00 per hour; (4) Three times the amount of actual damages;  Exemplary damages
under the Texas Civil Practice and Remedies Code § 41.008 for two times the amount of
economic damages plus an amount equal to noneconomic damages up to $750,000.00 or
$200,000.00; (5) Damages for future medical treatment of $5,000.

## CERTIFICATE OF SERVICE AND
## CERTIFICATE OF CONSULTATION

Counsel faxed a copy of this motion to (214) 939-2090 and will forward a copy

by Certified Mail, Return Receipt Requested to Mr. Andrew C. Whitaker, FIGARI,

DAVENPORT & GRAVES 3400 Bank of America Plaza, 901 Main Street, LB 125,

Dallas, Texas 75202-3796 on this __5th__ th day of ~~August,~~ Sept. 2001.

Respectfully submitted,

Mark A. Di Carlo
722 Elizabeth St.
Corpus Christi, Texas 78404
(361) 888-6968
(361) 888-6981 Fax
State Bar No.: 05812510
Southern District I.D. No. 6839

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. B-01-052 |
| | § | |
| UNUMPROVIDENT CORPORATION | § | |
| and UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF

Defendants UnumProvident Corporation ("UnumProvident") and UNUM Life Insurance Company of America ("UNUM Life") (collectively, "Defendants") request that Plaintiff Karen Brooks ("Brooks") (1) answer under oath, in accordance with Fed. R. Civ. P. 33, the following interrogatories; and (2) respond, in accordance with Fed. R. Civ. P. 34, to the following requests for production, all within thirty (30) days after service. Defendants further request that Brooks thereafter supplement each of her answers and responses to the interrogatories and the requests for production (collectively, the "Discovery Requests") as required by the Federal Rules of Civil Procedure and applicable local rules. Defendants further request that Brooks produce for inspection and copying all of the documents and tangible things responsive to the requests for production at the offices of Figari Davenport &



Graves, L.L.P., 3400 Bank of America Plaza, 901 Main Street, Dallas, Texas 75202, with her

responses to the Discovery Requests or at some other time and place mutually agreed upon

by the parties.

## DEFINITIONS AND INSTRUCTIONS

1.      **Brooks**, **you**, and **your** shall refer to Plaintiff Karen Brooks, and any person(s)

acting on her behalf.

2.      **Unum Life** shall refer to Defendant Unum Life Insurance Company of America

and any person(s) acting on its behalf.

3.      **UnumProvident** shall refer to Defendant UnumProvident Corporation and any

person(s) acting on its behalf.

4.      **Defendants** shall refer to Unum Life and UnumProvident.

5.      The **Policy** shall refer to the master policy no. RXN1022 issued to the American

Podiatric Medical Association.

6.      The **Certificate** shall refer to the Certificate of Insurance issued to Brooks

under the Policy effective May 1, 1996.

7.      The **PA** shall refer to Karen E. Brooks, D.P.M., P.A.

8.      **Minnesota Mutual** shall refer to Minnesota Mutual Life Insurance Company.

9.      **Berkshire** shall refer to Berkshire Life Insurance Company.

10.     **Document** shall refer to any kind of written, recorded, or graphic matter,

however produced or reproduced, of any kind or description, whether sent or received, or

neither, including originals, nonidentical copies (whether different from the originals because

of marginal notes, or other material inserted therein or attached thereto, or otherwise), drafts and both sides thereof, and including, but not limited to: (1) papers; (2) books; (3) letters; (4) correspondence; (5) telegrams; (6) cables; (7) telex messages; (8) memoranda; (9) notes; (10) notations; (11) work papers; (12) transcripts; (13) minutes; (14) reports and recordings of telephone and other conversations or other interviews, or of conferences or other meetings; (15) affidavits; (16) statements; (17) summaries; (18) opinions; (19) reports; (20) studies; (21) analyses; (22) evaluations; (23) contracts; (24) agreements; (25) ledgers; (26) journals; (27) statistical records; (28) desk calendars; (29) appointment books; (30) diaries; (31) lists; (32) tabulations; (33) sound recordings; (34) computer printouts; (35) data processing records; (36) microfilm or microfiche; (37) photographs; (38) maps; (39) charts; (40) accounts; (41) financial statements and reports thereof; (42) e-mails; (43) all records kept by electronic, photographic, or mechanical means; and (44) things similar to any of the foregoing, however denominated.

11. **Concerning** shall mean relating to, referring to, describing, evidencing, or constituting.

12. **Communication** shall mean any document, oral statement, meeting, or conference, formal or informal, at any time or place and under any circumstance whatsoever, whereby information of any nature was stated, written or recorded, or in any manner transmitted, transferred, or received.

13. **Identify** or give the **identity of** means:

a.     In the case of a **person**, to state such person's name and either last known home address and home telephone number or last known business address and business telephone number.

b.     In the case of a **document**, to state the names of the preparer(s) and recipient(s), the date of the document, and a general description of the subject matter of the document.

c.     In the case of **oral communication**, to state the names of the speaker and the listener(s), the date of the communication, and a general description of the subject matter of the communication.

14.     The **Lawsuit** shall mean the litigation, the style and cause number of which is found in the caption of this document.

15.     The **Complaint** shall refer to Plaintiff's Complaint and all amendments and supplements thereto.

16.     The **Answer** shall refer to Defendants' Answer and Counterclaim and all amendments and supplements thereto.

17.     **Broad Construction**.   The terms used herein are to be given their most expansive and inclusive interpretation unless otherwise specifically limited in the request itself.  This includes without limitation the following:

a.     Construing "and" or "or" in the disjunctive or conjunctive as necessary to make the request more inclusive; and

b.    Construing the singular or masculine form of a word to include the plural or feminine and vice versa.

18.    **Specification of Agents**. When identifying or describing any communication or conduct by a corporation or other business entity, identify the natural person or persons who made the communication or committed the act and the capacity in which that person or persons acted or purported to act.

19.    **Work Product or Privilege**. With respect to each document, oral statement, or communication inquired about in a Discovery Request that you claim to be privileged or constitute work product, identify the document, oral statement, or communication to the fullest extent possible, including the date, maker, and recipient, the general subject matter, and the basis of the claim of privilege or work product.

20.    **Answers and Production of Documents**. The Discovery Requests are attached. If the space supplied for your answer or response is insufficient, continue your answer or response on a separate sheet, indicating to which Discovery Request it relates, and attach the sheet to your answers and responses. The documents produced pursuant to the requests for production shall be produced as they are kept in the usual course of business or organized and labeled to correspond with the specific categories of the requests for production.

Respectfully submitted,

By: _____

Andrew C. Whitaker
State Bar No. 21274600
S.D. No. 14309
Attorney-In-Charge

OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271

FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent by certified mail, return receipt requested, to Mr. Mark A. Di Carlo, La Solana Building, 722 Elizabeth Street, Corpus Christi, Texas 78704, on this 9th day of October, 2001.

_____
Andrew C. Whitaker

# INTERROGATORIES

## INTERROGATORY NO. 1:

Identify all persons whom you believe have knowledge of relevant facts and describe the issues upon which you believe they have knowledge. A person has knowledge of relevant facts when he or she has or may have knowledge of any discoverable matter. The information need not be admissible in order to satisfy the requirements of this interrogatory, and personal knowledge is not required.

## ANSWER:

## INTERROGATORY NO. 2:

Identify each person whom you expect to call as an expert witness at the trial of this case, and, as to each expert so identified, state the subject matter on which he is expected to testify, the substance of the facts and opinions to which he is expected to testify, a summary of the grounds for each opinion, the qualifications of the expert, and the terms of your agreement with the expert.

## ANSWER:

## INTERROGATORY NO. 3:

Identify each expert used for consultation who is not expected to testify, but whose work product, opinions, or mental impressions have been reviewed by any of the experts identified in your answer to Interrogatory No. 2.

**ANSWER:**


**INTERROGATORY NO. 4:**

Please state the total amount of benefits you claim are due to you under the Policy and/or the Certificate and describe how you calculated that sum.

**ANSWER:**


**INTERROGATORY NO. 5:**

State the amount, nature, and source of any and all damages that you contend you have suffered or incurred as a result of the actions, conduct, or omissions of Defendants, setting forth each of the elements of any and all monetary damages you claim. In addition, please describe in detail the manner in which you calculated such damages and the basis for such calculation. Finally, identify all persons with knowledge of each of the elements of the damages you claim.

**ANSWER:**


**INTERROGATORY NO. 6:**

If you have any agreement, written or unwritten, with your attorneys of record herein with respect to the payment for services performed by them in connection with this action, identify all documents concerning such an agreement; describe such agreement in detail, including whether it is written or unwritten and all of the terms of such agreement with respect

to the amount and timing of your payments; and state the total amounts of attorneys' fees that you seek to recover from Defendants in the Lawsuit.

**ANSWER:**


**INTERROGATORY NO. 7:**

Identify and describe all of the ailments or conditions that you contend render you totally or residually disabled under the Policy and/or the Certificate, including, but not limited to, the periods of disability, the identity of all diagnosing and/or treating health care provider(s), and their diagnosis, treatment, medications prescribed, prognosis, and the date(s) thereof.

**ANSWER:**


**INTERROGATORY NO. 8:**

Identify all persons, including, but not limited to, Unum Life, Minnesota Mutual, and Berkshire, to whom you have submitted applications for life, health, or disability insurance since January 1, 1994.

**ANSWER:**


**INTERROGATORY NO. 9:**

With respect to each physician, psychiatrist, psychologist, or other medical practitioner who has seen, consulted, or treated you since January 1, 1994 regarding any aspect of your

medical condition, identify the physician, psychiatrist, psychologist, or medical practitioner; state the dates or approximate dates of the consultation or treatment; describe the nature of the consultation or treatment; describe the injury, condition, or sickness treated; state whether you are presently under that person's care; and identify all documents concerning your answer to this interrogatory.

**ANSWER:**


**INTERROGATORY NO. 10:**

Identify every hospital or other medical facility at which you have had privileges at any point in time after January 1, 1997.

**ANSWER:**


**INTERROGATORY NO. 11:**

For each surgery you have been involved in, whether as the surgeon of record or as an assistant, since January 1, 1997, identify the hospital or other medical facility at which the surgery was performed, state the date of the surgery, describe in detail your involvement in the surgery (primary surgeon, assistant, etc.), identify all other doctors and medical students who assisted in the surgery in any way, describe the involvement of all such other doctors and medical students in such surgery, and state the amount of money which you billed the patient and/or his or her insurer for your involvement in such surgery.

**ANSWER:**

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

The Policy.

### RESPONSE:


### REQUEST FOR PRODUCTION NO. 2:

The Certificate.

### RESPONSE:


### REQUEST FOR PRODUCTION NO. 3:

All documents submitted by Brooks in connection with her application for the Policy

and/or the Certificate.

### RESPONSE:


### REQUEST FOR PRODUCTION NO. 4:

All documents or other materials relied upon by Brooks in deciding to apply for the

Policy and/or the Certificate.

### RESPONSE:

## REQUEST FOR PRODUCTION NO. 5:

All documents and correspondence between Brooks or anyone acting on her behalf and Defendants.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 6:

All documents, including, but not limited to, all notices and proof of claim forms sent to Unum Life by Brooks or anyone acting on her behalf, concerning any claim for disability benefits or waiver of premium benefits submitted by Brooks to Unum Life under the Policy and/or the Certificate.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 7:

All documents, including, but not limited to, all notices and proof of claim forms sent by Brooks or anyone acting on her behalf, concerning any claim for disability benefits or waiver of premium benefits submitted by Brooks to any insurer other than Unum Life, including, but not limited to, Minnesota Mutual and Berkshire.

## RESPONSE:

**REQUEST FOR PRODUCTION NO. 8:**

All documents concerning any disability, overhead expense, or life insurance policies or other sources of disability or life insurance benefits in force at any time since January 1, 1994 for Brooks, including, but not limited to, the Policy and the Certificate, and all documents concerning any claims made under those policies.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**

All documents, including, but not limited to, all notices and proof of claim forms sent by Brooks or anyone acting on her behalf, concerning any claim for health insurance benefits submitted since January 1, 1994 by Brooks to any insurer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:**

All documents concerning any applications for life, health, or disability insurance submitted since January 1, 1994 by Brooks to any insurer (including, but not limited to, Unum Life, Minnesota Mutual, or Berkshire) or agent.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**

All documents between Brooks and any physician, psychiatrist, psychologist, or other medical practitioner who saw, consulted, or treated her from January 1, 1994 through the present.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning any medical treatment received by Brooks after January 1, 1994 from any physician, psychiatrist, psychologist, or other medical practitioner, whether for the conditions which she claims disable her or otherwise.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 13:**

All documents between Brooks and any of the persons identified in her answer to Interrogatory No. 1 concerning (1) Unum Life, (2) UnumProvident, (3) the Policy, (4) the Certificate, (5) Brooks' claim for benefits under the Policy and/or the Certificate, (6) the PA, (7) Brooks' occupation, or (8) Brooks' medical condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**

All documents provided to, relied upon by, prepared by, or reviewed by any of the expert witnesses identified in Brooks's answer to Interrogatory No. 2 concerning (1) Unum Life, (2) UnumProvident, (3) the Policy, (4) the Certificate, (5) Brooks' claim for benefits under the Policy and/or the Certificate, (6) the PA, (7) Brooks' occupation, or (8) Brooks' medical condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**

All statements of any person concerning (1) Unum Life, (2) UnumProvident, (3) the Policy, (4) the Certificate, (5) Brooks' claim for benefits under the Policy and/or the Certificate, (6) the PA, (7) Brooks' occupation, or (8) Brooks' medical condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**

All photographs, films, videotapes, audiotapes, or electronic recordings of any type concerning (1) Unum Life, (2) UnumProvident, (3) the Policy, (4) the Certificate, (5) Brooks' claim for benefits under the Policy and/or the Certificate, (6) the PA, (7) Brooks' occupation, or (8) Brooks' medical condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**

All notes of telephone conversations between Brooks and Unum Life concerning (1) Unum Life, (2) UnumProvident, (3) the Policy, (4) the Certificate, (5) Brooks' claim for benefits under the Policy and/or the Certificate, (6) the PA, (7) Brooks' occupation, or (8) Brooks' medical condition.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 18:**

All statements of Unum Life under Fed. R. Civ. P. 26(b)(3).

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 19:**

All statements of UnumProvident under Fed. R. Civ. P. 26(b)(3).

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 20:**

All documents concerning any damages, including, but not limited to, benefits, interest, attorneys' fees, and costs, that Brooks seeks to recover from Defendants in the Lawsuit.

**RESPONSE:**

## REQUEST FOR PRODUCTION NO. 21:

All documents, including, but not limited to, time sheets, invoices, checks, and the attorneys' fees or retainer agreement between Brooks and her attorneys, concerning the attorneys' fees sought to be recovered by Brooks in the Lawsuit.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 22:

All documents concerning any wages, salary, or other income received after January 1, 1994 by Brooks or any company or business entity owned by her, in whole or in part, including, but not limited to, the PA.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 23:

The federal income tax returns (with all schedules, forms, and attachments) and all amendments thereto for the years 1994 through 2001 for any company or business entity owned by Brooks, in whole or in part, including, but not limited to, the PA.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 24:

The federal income tax returns (with all schedules, forms, and attachments) and all amendments thereto for the years 1994 through 2001 for Brooks.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 25:**

      Brooks' W-2s and/or K-1s for the years 1994 through 2001.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 26:**

      Brooks' paychecks since January 1, 1994.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 27:**

      Detailed general ledgers for the PA since January 1, 1994.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 28:**

      All contracts between Brooks and/or the PA, on the one hand, and any other person or entity, on the other hand, concerning the PA's business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:**

All documents, including, but not limited to, income statements, financial statements, work papers, invoices, bills, cancelled checks, and correspondence, concerning any income and expenses of Brooks or any company or business entity owned by her, in whole or in part, including, but not limited to, the PA, since January 1, 1994.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 30:**

All reports of billings or production for the PA since January 1, 1994.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 31:**

Detailed quarterly payroll journals for the PA since January 1, 1994.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 32:**

All documents, including, but not limited to, applications, monthly account statements, and cancelled checks, concerning any bank accounts for Brooks or any company or business entity owned by her, in whole or in part, including, but not limited to, the PA, since January 1, 1994.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:**

All monthly credit card statements and credit card receipts for Brooks or any company or business entity owned by her, in whole or in part, including, but not limited to, the PA, since January 1, 1994.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:**

All documents concerning any employee benefits, including, without limitation, life, health, accident, or disability insurance, pension or profit-sharing plans, and cafeteria benefit plans, provided to Brooks at any point in time after January 1, 1994.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:**

The booklets and summary plan descriptions received by Brooks from any source summarizing the long-term disability benefits for which he was eligible, whether under the Policy and/or the Certificate or otherwise.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:**

All documents concerning any employee benefits, including, but not limited to, life, health, accident, or disability insurance, pension or profit-sharing plans, and cafeteria benefit plans, provided at any point in time after January 1, 1994 to any person by Brooks or any company or business entity owned by her, in whole or in part, including, but not limited to, the PA.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:**

All documents concerning the payment and/or repayment of the premiums for the Policy and/or the Certificate and the source(s) of the funds for those payments.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:**

All documents concerning the method of bookkeeping for the payment of premiums on the Policy and/or the Certificate.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:**

All documents concerning Brooks' application for or receipt of Social Security benefits.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 40:**

All documents concerning Brooks' application for or receipt of workers' compensation benefits.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 41:**

All documents concerning any communications between and among Brooks and any state insurance regulatory body (e.g., the Texas Department of Insurance) regarding Unum Life or UnumProvident.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 42:**

All documents concerning the criminal action against Brooks, which was filed in the 107th District Court of Cameron County and assigned Case No. 01CR424A.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 43:**

All documents which Brooks intends to introduce into evidence at the trial of the Lawsuit.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 44:**

All documents concerning any of the facts, claims, causes of action, allegations, or contentions set out in the Complaint or the Answer.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 45:**

All documents identified in Brooks' answers to the interrogatories and all amendments and supplements thereto.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 46:**

All documents concerning Brooks' answer to Interrogatory No. 11.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 47:**

All documents identified in Brooks' initial disclosures and all amendments and supplements thereto.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:**

The transcripts of all testimony, whether by deposition, at trial, or otherwise, given by Brooks since January 1, 1994.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:**

Any daily journal, diary, or the like insofar as there are entries relating to Brooks' mental or physical condition or occupational duties.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:**

All documents concerning Brooks' allegation in paragraph 4 of the Complaint that "UNUM bought the disability insurance policies from Commercial Life Insurance Company and this was a detriment to those persons who held an insurance policy."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:**

All documents concerning Brooks' allegation in paragraph 9 of the Complaint that "[t]he plaintiff was paying for the disability insurance on or around April 1998."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:**

All documents concerning Brooks' allegation in paragraph 10 of the Complaint that "[t]he plaintiff fell and herniated a disc in her lumbar spine on, or around, May 16, 1998."

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 53:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "Dr. Brook's is at least 80% disabled such that she should receive full disability benefits."

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 54:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "[n]o accurate determination was made regarding her residual or partial disability which must be at least 20%."

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 55:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "UNUM's own prior determination that Dr. Brook's was totally disabled establish her partial or residual disability."

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 56:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "UNUM disregarded Dr. Brook's own statements regarding her disability."

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 57:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "UNUM switched 'Disability Benefits Specialist's' in order to deny the plaintiff disability."

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 58:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "UNUM did not perform a reasonable investigation into whether the claimant was disabled using a reasonable person standard as is implied in contract and instead conducted an abusive and fraudulent investigation."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "[t]he investigation was fraudulent because it attempted to research the entire case and take or create facts adverse to the claimant."

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 60:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "[t]he investigation was abusive because an agent of UNUM threatened and attempted to blackmail the plaintiff into dropping the insurance if she did not drop the insurance and accept the benefits already paid."

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 61:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "UNUM attempted to maliciously attack the plaintiff by attempting to bring criminal charges against her."

**RESPONSE:**

## **REQUEST FOR PRODUCTION NO. 62:**

All documents concerning Brooks' allegation in paragraph 23 of the Complaint that "UNUM's actions are unconscionable, malicious and without decency."

**RESPONSE:**

## **REQUEST FOR PRODUCTION NO. 63:**

All documents concerning Brooks' allegation in paragraph 24.1 of the Complaint that "[t]he plaintiff is totally disabled under the terms of the contract because she is unable to perform the substantial and material duties of her occupation due to injury or sickness and she is receiving regular medical care from a physician."

**RESPONSE:**

## **REQUEST FOR PRODUCTION NO. 64:**

All documents concerning Brooks' allegation in paragraph 24.2 of the Complaint that "the claimant has residual disability under the terms of the contract because the claimant is at least 20% disabled and should be receiving the percentage of disability times her monthly benefit of $6,000 per month; that is anywhere from $1,300.00 per month to approximately $4,800.00 per month."

**RESPONSE:**

## REQUEST FOR PRODUCTION NO. 65:

All documents concerning Brooks' allegation in paragraph 24.3 of the Complaint that "[t]he plaintiff sues for violations of the Texas Insurance Code Article 21.21 for unfair settlement practices including: a) misrepresenting material facts; b) failing to attempt in good faith a settlement when the insurer's liability is clear; c) failing to attempt in good faith to settle under the portion of the policy wherein benefits were already paid in order to influence to settle the claim for benefits paid; d) failing to provide promptly to a policy holder a reasonable explanation to the facts for the insurer's denial of the claim; Refusing to pay a claim without conducting a reasonable investigation with respect to the claim; e) making material statements of facts regarding the plaintiff's job duties regarding the plaintiff's disabilities and regarding the policy."

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 66:

All documents concerning Brooks' allegation in paragraph 24.4 of the Complaint that "[t]he plaintiff alleges violations of 17.46 of the Texas Business and Commerce Code; causing confusion as to the approval of services; Using deceptive representation in connection with services of insurance; Representing that the insurance policy and characteristics which it did not have; Misrepresenting the authority of an agent to negotiate the final terms of a consumer transaction; Failing to disclose information in concerning services which were known at the

time of the transaction because the failure to disclose was intended to advise the plaintiff to purchase the insurance."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 67:**

All documents concerning Brooks' allegation in paragraph 24.4 of the Complaint that "[t]he plaintiff relied on the facts that UNUM would make a full and fair investigation by paying for services they did not receive or by not purchasing a different policy."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 68:**

All documents concerning Brooks' allegation in paragraph 24.6 of the Complaint that "[t]he plaintiff purchased the disability policy that the defendants would make a reasonable decision and fair decision based upon a fair investigation."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 69:**

All documents concerning Brooks' allegation in paragraph 24.6 of the Complaint that "[t]he defendants failed to do so and make a fair and reasonable decision and the plaintiff relied upon them to do so when she purchased the disability policy."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 70:**

All documents concerning Brooks' allegation in paragraph 24.6 of the Complaint that "[t]he defendant failed to tell the plaintiff that the decision regarding her disability would be a subjective decision made by their company instead of an objective decision made by one agent or by a neutral third party or made by her."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 71:**

All documents concerning Brooks' allegation in paragraph 24.6 of the Complaint that "[t]he plaintiff as a result was left without disability benefits; Without a way to pay her bills; With a threat of civil suit for money that she was paid; With a threat of criminal action in order to gain advantage in a civil suit."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 72:**

All documents concerning Brooks' allegation in paragraph 24.7 of the Complaint that "[t]he plaintiff sues under the common law cause of action of constructive fraud in that the defendant had the equitable duty to pay for the disability portions of the policy."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 73:**

All documents concerning Brooks' allegation in paragraph 24.7 of the Complaint that "[t]he defendants owed a legal duty to make a fair and intelligible and objective decision on the policy to their insured."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 74:**

All documents concerning Brooks' allegation in paragraph 24.8 of the Complaint that "[t]he plaintiff sues for constructive fraud breach of the fiduciary relationship between the plaintiff and defendant based on contract and based on a long term contractual relationship."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 75:**

All documents concerning Brooks' allegation in paragraph 24.9 of the Complaint that "[t]he plaintiff asserts that the fraudulent investigation; the fraud in requesting repayment of benefits which were paid in an attempt to deny the plaintiff even residual disability benefits; the defendants fraudulent assertion of criminal allegations against the plaintiff; establish the plaintiff is entitled to exemplary damages."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 76:**

All documents concerning Brooks' allegation in paragraph 24.9 of the Complaint that "[t]he total denial of benefits to a person who has requested payment for disability benefits based upon an objective and verifiable injury and an investigation based upon changed decisions, change of agents; coercion and intimidation; insulting and rude conduct with a plaintiff who is already damages; and, threats of criminal action; permits the defendant to recover exemplary damages under the Texas Civil Practice and Remedies Code § 41.008 for two times the amount of economic damages plus an amount equal to noneconomic damages up to $750,000.00 or $200,000.00."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 77:**

All documents concerning Brooks' allegation in paragraph 24.10 of the Complaint that "[t]he plaintiff has suffered some degree of emotional problems as a result of the defendants fraudulent, abusive and lengthy and continual investigation and failure to pay any disability benefits while she was disabled and unable to pay her bills."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 78:**

All documents concerning Brooks' allegation in paragraph 24.10 of the Complaint that "[t]he plaintiff sues for medical bills arising from such abuse and exemplary damages."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 79:**

All documents concerning Brooks' allegation in paragraph 24.11 of the Complaint that "[t]he plaintiff asserts damages to her credit rating and consequent damages as a result of defendants UNUM's failure to produce disability benefits."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 80:**

All documents, whether in the possession of Brooks or her attorneys, concerning Unum Life from any source.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 81:**

All documents, whether in the possession of Brooks or her attorneys, concerning UnumProvident from any source.

**RESPONSE:**

## REQUEST FOR PRODUCTION NO. 82:

All depositions, whether in the possession of Brooks or her attorneys, taken in any case in which Unum Life is a named party.

## RESPONSE:


## REQUEST FOR PRODUCTION NO. 83:

All depositions, whether in the possession of Brooks or her attorneys, taken in any case in which UnumProvident is a named party.

## RESPONSE:


## REQUEST FOR PRODUCTION NO. 84:

All documents including, but not limited to, reports, interrogatory responses, responses to requests for admissions, responses to requests for production, and articles, which name or mention Unum Life, whether in the possession of Brooks or her attorneys, regardless of whether such documents specifically relate to the claims made by Brooks in the Lawsuit.

## RESPONSE:


## REQUEST FOR PRODUCTION NO. 85:

All documents including, but not limited to, reports, interrogatory responses, responses to requests for admissions, responses to requests for production, and articles, which name or

mention UnumProvident, whether in the possession of Brooks or her attorneys, regardless of whether such documents specifically relate to the claims made by Brooks in the Lawsuit.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 86:**

All documents or communications between Brooks or her attorneys, on the one hand, and any other Unum Life insured or his or her attorney, on the other hand, concerning Unum Life or any claims made against Unum Life.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 87:**

All documents or communications between Brooks or her attorneys, on the one hand, and any other UnumProvident insured or his or her attorney, on the other hand, concerning UnumProvident or any claims made against UnumProvident.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 88:**

All nonprivileged documents provided by Brooks' former counsel to her current counsel.

**RESPONSE:**

# FIGARI DAVENPORT & GRAVES

### A REGISTERED LIMITED LIABILITY PARTNERSHIP
### INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitake@figdav.com

November 7, 2001

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas  78704

Re:    C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and
       UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

In accordance with our conversation, following are copies of:

1.    the Order Setting Conference that you received upon Dr. Brooks' filing of this action, which states that, "[b]y the conference, counsel will have interviewed their clients and read the documents; readily available documents will have been exchanged at the plan meeting at the latest";

2.    my letter to you dated August 1, 2001 reminding you of this requirement and requesting copies of Dr. Brooks' documents;

3.    your letter to me dated August 2, 2001 requesting copies of Defendants' documents and promising to provide copies of Dr. Brooks' documents;

4.    my letter to you dated August 8, 2001 enclosing copies of Defendants' documents and reiterating my request for copies of Dr. Brooks' documents; and

5.    my letter to you dated September 4, 2001 reiterating my request for copies of Dr. Brooks' documents.

These items confirm that Dr. Brooks (1) is required to produce copies of her "readily available documents" without any sort of formal discovery request from Defendants and (2) has failed to comply with this obligation for several months, notwithstanding my letters and your representation that she would do so.  If I have not <u>received</u> such documents by the close of business on Monday, I will file a motion to compel their production and will seek to recover all of the attorneys' fees that I have incurred in obtaining her compliance.

EXHIBIT  F

Mr. Mark A. Di Carlo
November 7, 2001
Page 2

Additionally, you have complained of the breadth of Defendants' discovery requests. As we discussed, Dr. Brooks' failure to comply with her obligations has left Defendants with little choice. As I advised you, Defendants are willing to consider holding some of the requests for production that Dr. Brooks finds objectionable in abeyance temporarily. We are unwilling, however, to comply with your request to re-draft these requests or consent to any effort to further delay Dr. Brooks' production of documents that are now long overdue.

In any event, during our conversation, you were unable to articulate the specific relief that you desire. Before filing some sort of motion with the Court, please extend me the courtesy of sending me a draft of such motion so that we may determine whether Defendants agree with or oppose the relief that you seek.

Please advise if you have any questions.

Sincerely,

Andrew C. Whitaker

ACW/krp
Enclosures