United States District Court
Southern District of Texas
FILED

MAR 0 4 2002

Micheal N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. B-01-052 |
| | § | |
| UNUMPROVIDENT CORPORATION | § | |
| and UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE
TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL
CENTER, DOLLY VINSANT MEMORIAL HOSPITAL,
HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL
MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER
AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**

---

Andrew C. Whitaker
State Bar No. 21274600
S.D. No. 14309
Attorney-In-Charge
OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271
FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

# TABLE OF CONTENTS

<u>Page</u>

I.     NATURE OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.    THE DISPUTED DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.   THE MOTION TO QUASH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

     A.   Standards for Subpoenas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

     B.   Brooks Lacks Standing to Assert Many of Her Objections . . . . . . . . . . . . .  5

     C.   The Documents Sought in the Hospital Subpoenas Are Relevant or
         Reasonably Calculated to Lead to the Discovery of Admissible Evidence .  6

         1.   Brooks' Performance of Surgeries . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

         2.   Brooks' Earnings and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

         3.   Brooks' Privileges and the Recipients'
            Communications with Others Regarding Her . . . . . . . . . . . . . . . . .  10

     D.   The Hospital Subpoenas Are Not Unduly Burdensome . . . . . . . . . . . . . . .  11

     E.   Brooks' Privacy and Privilege Assertions Are Meritless . . . . . . . . . . . . . .  12

     F.   Defendants Are Entitled to Recover
         Their Attorney's Fees from Brooks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

V.     MOTION TO COMPEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

# TABLE OF AUTHORITIES

## CASES

Page

Ceramic Corp. of Am. v. Inka Maritime Corp.,
    163 F.R.D. 584 (C.D. Cal. 1995) ........................................................................ 13, 14

Ginsberg v. Fifth Court of Appeals,
    686 S.W.2d 105 (Tex. 1985) ................................................................................... 13

Hertenstein v. Kimberly Home Health Care, Inc.,
    189 F.R.D. 620 (D. Kan. 1999) ................................................................................ 6

Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2,
    197 F.3d 922 (8th Cir. 1999) .................................................................................. 11

Williams v. City of Dallas,
    178 F.R.D. 103 (N.D. Tex. 1998) ...................................................................... 3, 11

Windsor v. Martindale,
    175 F.R.D. 665 (D. Colo. 1997) .............................................................................. 6

## STATUTES AND RULES

Fed. R. Civ. P. 26(b) ................................................................................... 4, 6, 7

Fed. R. Civ. P. 45 ................................................................... 4, 5, 6, 12, 13, 14

## MISCELLANEOUS

9A Charles A. Wright & Arthur R. Miller,
    Federal Practice and Procedure § 2458 (Supp. 2001) ................................................ 13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. B-01-052 |
| | § | |
| UNUMPROVIDENT CORPORATION | § | |
| and UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE
TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL
CENTER, DOLLY VINSANT MEMORIAL HOSPITAL,
HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL
MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER
AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**

Defendants UnumProvident Corporation ("UnumProvident") and Unum Life Insurance

Company of America ("Unum Life") (collectively, "Defendants") file this (1) response to

Plaintiff's Motion and Notice to Quash Subpoenas Deuces Tecum of: McAllen Medical

Center, Dolly Vinsant Memorial Hospital, Healthsouth-Brownsville Surgicare, HCA Valley

Regional Medical Center, and Brownsville Medical Center (the "Motion to Quash") and (2)

motion to compel compliance with the subpoenas that are the subject of the Motion to Quash

and state:

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH
SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT
MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY
REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND
(2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 1**

# I. **NATURE OF THE ACTION**

This is a suit for benefits under a master policy issued to the American Podiatric

Medical Association.   Less than a year after obtaining a Certificate of Insurance (the

"Certificate") under such master policy, Plaintiff Karen Brooks ("Brooks") fell in her bathtub

and purportedly sustained injuries preventing her from performing her occupational duties as

a podiatrist.  Unum Life began paying $6,000 per month in disability benefits to Brooks while

it investigated her claim.   During its investigation, Unum Life obtained (among other

information) surgical logs from one of the hospitals at which Brooks had privileges indicating

that she performed more surgeries in the period after her fall than she had before her fall.

Brooks was unable to offer a satisfactory explanation for the information contained in these

logs, and Unum Life stopped paying benefits to her.   In Plaintiff's Complaint (the

"Complaint"), Brooks asserts claims against Defendants for (1) breach of contract,

(2) violations of the Texas Insurance Code, (3) violations of the DTPA, (4) bad faith, and

(5) fraud.  Defendants deny all liability to Brooks and have asserted a counterclaim to recover

the $48,000 in benefits that were paid to her.

# II. **THE DISPUTED DISCOVERY**

As part of their discovery efforts in this case, Defendants served subpoenas

(collectively, the "Hospital Subpoenas") on McAllen Medical Center, Dolly Vinsant Memorial

Hospital, Healthsouth-Brownsville Surgicare, HCA Valley Regional Medical Center, and

Brownsville Medical Center (collectively, the "Recipients"), which were all identified by

Brooks in her answer to Interrogatory No. 10 as the hospitals at which she had surgical

privileges.[1]  In the Hospital Subpoenas, Defendants sought copies of surgical logs regarding

the procedures performed by Brooks, documents concerning the compensation paid to her,

non-privileged documents regarding her credentials and privileges, and communications

between the Recipients, on the one hand, and Brooks, her counsel, insurers, and governmental

entities, on the other hand.

## III. THE MOTION TO QUASH[2]

In the Motion to Quash, Brooks continues her ongoing quest to frustrate Defendants'

legitimate discovery efforts at every turn.  According to Brooks, the Hospital Subpoenas

should be quashed in their entirety or, alternatively, modified in numerous respects[3] because

(1) they are not limited to the documents that she believes are relevant, (2) they impose undue

---

[1]True and correct copies of excerpts from Brooks' interrogatory answers are attached as Exhibit A.

[2]Initially, the Motion to Quash should be denied because Brooks failed to confer with Defendants prior to filing it.  The Certificate of Service and Certificate of Consultation to the Motion to Quash is unintelligible as written, and Defendants have no record of receiving a telephone call from Brooks' counsel or a fax copy (whether a draft for conference purposes or in final form) of the Motion to Quash on February 20, 2002.  Defendants advised Brooks' counsel of this error and requested that he file an amended (and accurate) certificate of conference, yet he has to date failed to comply with this request.

[3]As set forth more fully below, the Hospital Subpoenas all seek documents that are relevant and nonprivileged, and the Court should at most modify the Hospital Subpoenas rather than quash them in their entirety.  See Williams v. City of Dallas, 178 F.R.D. 103, 110 (N.D. Tex. 1998) ("Modification of a subpoena is preferable, however, to quashing it.").

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 3**

burden and expense on the Recipients, (3) they seek documents that are subject to the attorney-client privilege or somehow violate her privacy, (4) they improperly attempt to circumvent permissible discovery under Fed. R. Civ. P. 26(b), and (5) Defendants failed to confer with Brooks prior to serving the Hospital Subpoenas to see if she agreed with their issuance.  For the reasons set forth below, the Motion to Quash is without merit and should be denied.

## IV.  ARGUMENT

### A.    Standards for Subpoenas.

Fed. R. Civ. P. 45 governs (among other matters) the use of subpoenas during discovery to obtain records from third parties.  Notwithstanding Brooks' claim to the contrary (Motion to Quash, ¶ 12), nothing in Rule 45 (whether expressly or impliedly) requires a party to obtain advance permission from the opposing party prior to service of a subpoena on a third party; rather, the requesting party need only serve the opposing party with notice pursuant to Rule 5(b) of the commanded production of documents.  See Fed. R. Civ. P. 45(b)(1).  As evidenced by her filing of the Motion to Quash, Brooks received copies of all of the Hospital Subpoenas from Defendants.

Rule 45(c)(2)(B) gives a person commanded to produce documents (but, interestingly, not the opposing party) the right to object to the production of any or all of the designated materials.  Rule 45(c)(3)(A) allows for the quashing or modifying of a subpoena if it (1) fails

DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH
SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT
MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY
REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND
(2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 4

to allow reasonable time for compliance, (2) requires a nonparty to travel more than 100 miles from where he resides, is employed, or regularly transacts business, (3) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (4) subjects a person to undue burden.[4] Id. at 45(c)(3)(A). Here, each of the Recipients received at least 20 days' notice and were requested to produce documents at their respective offices, thus rendering inapplicable the first two elements.

**B.**     **Brooks Lacks Standing to Assert Many of Her Objections.**

Initially, many of Brooks' arguments in the Motion to Quash fail because she lacks standing to assert them. Brooks has filed the Motion to Quash on her own behalf, not on behalf of the Recipients, and the only objections that she may assert are privilege and an applicable privacy interest:

> The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought. A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable. Absent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum.

---

[4] In turn, Rule 45(c)(2)(B) allows for the quashing or modifying of a subpoena if it (1) requires disclosure of trade secrets or other confidential business information, (2) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or (3) requires a nonparty to travel more than 100 miles to attend trial; however, production upon specified conditions may be ordered if the issuing party shows a substantial need for the material that cannot otherwise be met without undue hardship. Fed. R. Civ. P. 45(c)(3)(B). Brooks does not appear to base the Motion to Quash on any of these grounds.

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 5**

Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997) (citations omitted); see also

Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 635 (D. Kan. 1999) ("A

motion to quash or modify a subpoena duces tecum may only be made by the party to whom

the subpoena is directed except where the party seeking to challenge the subpoena has a

personal right or privilege with respect to the subject matter requested in the subpoena."); Fed.

R. Civ. P. 45(c)(2)(B) (providing for the assertion of objections by "a person commanded to

produce and permit inspection and copying"). On this ground alone, all of Brooks' complaints

(such as relevance and undue burden) other than privilege and privacy must be rejected.


**C.    The Documents Sought in the Hospital Subpoenas Are Relevant or
        Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

Assuming (without conceding) that Brooks has standing to object to the Hospital

Subpoenas on relevance grounds, the Motion to Quash should nonetheless be denied because

all of the documents sought by Defendants are relevant or, at a minimum, reasonably

calculated to lead to the discovery of admissible evidence. Rule 26(b)(1) provides in pertinent

part:

> Parties may obtain discovery regarding any matter, not privileged, that is
> relevant to the claim or defense of any party, including the existence,
> description, nature, custody, condition, and location of any books, documents,
> or other tangible things and the identity and location of persons having
> knowledge of any discoverable matter. For good cause, the court may order
> discovery of any matter relevant to the subject matter involved in the action.
> Relevant information need not be admissible at the trial if the discovery appears
> reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Notwithstanding Brooks' claim that the Hospital Subpoenas are "an attempt to circumvent permissible discovery" under Rule 26(b) (Motion to Quash, ¶ 13), a review of these subpoenas confirms that they satisfy the requirements of Rule 26(b)(1), as Brooks' occupational duties, work-related activities, and earnings are at the heart of this action.

1.    <u>Brooks' Performance of Surgeries</u>.  Under the Certificate, the issue of whether Brooks is totally or residually disabled requires a determination of her "occupation" at the onset of her claim:

> **Occupation** means the occupation described in the application and the occupation in which the Insured is regularly engaged at the time the Insured became disabled.  If the occupation is limited to a recognized specialty within the scope of the degree or license, We will deem the specialty to be the Occupation.

***

> **Residual Disability** means the inability due to Injury or Sickness to perform:

> 1.    one or more of the substantial and material duties of the Occupation; or

> 2.    the substantial and material duties of the Occupation for as much time as is normally required to perform them.

> the Insured must be receiving regular medical care from a duly licensed physician other than the Insured, and Total Disability benefits must not be payable under this Policy.  Residual Disability will be deemed not to exist if the Percent Loss is less than 20%.

***

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) <u>MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS</u> - Page 7**

> **Total Disability** means: (1) the inability to perform the substantial and material duties of Your Occupation due to an Injury or Sickness; and (2) You receive regular medical care from a duly licensed physician other than the Insured.  If You are performing the duties of any occupation, You will no longer be considered totally disabled....[5]

As these definitions make clear, Defendants are entitled to discovery regarding both Brooks' pre-accident activities (to determine the occupation in which she was regularly engaged at the time of her accident and the substantial and material duties of such occupation) and her post-accident activities (to determine whether she is unable to perform some or all of such duties).

As part of its discovery efforts on these issues, Defendants served Brooks with Interrogatories No. 10 and 11, which sought information about the hospitals at which she has had privileges and the surgeries that she has performed since January 1, 1997.  In her answers, Brooks identified the Recipients as the facilities at which she had privileges but did not provide the requested detail regarding her involvement in surgeries; instead, she stated that "[l]ogs were requested by you and are in your possession, custody and control."[6]  At the time of Brooks' answers, however, Defendants had a surgical log from only one of the Recipients.[7]  In any event, documents regarding Brooks' performance of surgeries are unquestionably

---

[5]True and correct copies of excerpts from the Certificate are attached as Exhibit B.

[6]Tellingly, the only objection asserted by Brooks to these interrogatories was that "privileges" was not defined and was thus subjective.

[7]In the earlier action between these parties, Karen Brooks v. UnumProvident Corporation and Unum Life Insurance Company of America, C.A. No. B-00-029 (the "Original Action"), Defendants served a deposition on written questions containing comparable document requests on Brownsville Medical Center ("BMC") and obtained copies of redacted surgical logs.  Defendants did not seek surgical logs in the Original Action from any of the other Recipients.

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 8**

relevant, and her efforts to prevent Defendants from obtaining the information necessary to complete her own interrogatory answers should be rejected.

2.  <u>Brooks' Earnings and Expenses</u>.  Moreover, the documents sought in the Hospital Subpoenas regarding the financial affairs of Brooks and her professional association bear on, among other issues, her pre- and post-accident activities and the extent of her entitlement (if any) to residual disability benefits.  That is, Brooks contends that she was residually disabled (Complaint, ¶ 24.2), which requires a comparison under the Certificate of her pre- and post-accident earnings and expenses:

> **Current Monthly Income** means the Monthly Income from the Occupation during each month of Residual Disability for which claim is made.
>
> \* \* \*
>
> **Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income caused solely by Residual Disability.
>
> \* \* \*
>
> **Monthly Income** means monthly income from salary, wages, bonuses, commission, fees or other remuneration earned for services performed by the Insured, in the Occupation, after deduction of normal and customary business expenses but before deduction of any income taxes.  It does not include dividends, rents, royalties, annuities or other forms of unearned income, or any income the Insured receives not derived directly from the Occupation.
>
> \* \* \*
>
> **Percent Loss** means
>
> Loss of Monthly Income
> x 100%

Prior Monthly Income

If the Percent is greater than 80%, We will deem it to be 100%.

**Prior Monthly Income** means the average Monthly Income from the Occupation for the 24 months immediately prior to the period of Total disability. The 24 months will be calculated so as not to include any period of Total or Residual Disability.

The Certificate further provides that Unum Life "reserves the right to require proof, satisfactory to Us, of Your Current and Prior Monthly Income." Brooks' earnings from and expenses with respect to the Recipients are thus directly relevant to her claims.

        3.      <u>Brooks' Privileges and the Recipients' Communications with Others Regarding Her</u>. Finally, the remaining documents sought by Defendants regarding Brooks' privileges and the Recipients' communications with others regarding her are relevant or, at a minimum, reasonably calculated to lead to the discovery of admissible evidence. For the reasons set forth in section IV.C.1. above, the Recipients' communications with Brooks and others may well shed light on the duties of her occupation and her ability to perform such duties. Since they have not yet received any of the requested documents, Defendants do not have any way of knowing what such documents provide; indeed, they could either support Brooks' position (by possibly including her request to terminate her privileges due to her alleged disability) or harm her position (by including post-accident statements from her denying any limitations on her capabilities). Since these documents might lead to the discovery of admissible evidence, Defendants are entitled to their production.

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 10**

**D.**     **The Hospital Subpoenas Are Not Unduly Burdensome.**

Assuming (without conceding) that Brooks has standing to allege such objection, the Motion to Quash should be denied because the Hospital Subpoenas are not unduly burdensome. As the movant, Brooks "must meet the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive." See Williams v. City of Dallas, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (internal quotations omitted). Among the factors that the Court may consider in determining whether there is an undue burden are "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Id. Notwithstanding Brooks' claims to the contrary (Motion to Quash, ¶¶ 2, 5-7, 10-11), a subpoena need not necessarily specify time or other limitations to avoid the undue burden restriction; rather, "if a witness had limited involvement in the matters pertinent to the issues in the suit, merely identifying him by name and subpoenaing all documents that referred to him could be reasonable." Williams, 178 F.R.D. at 110 n.6.

Application of these standards confirms that the Hospital Subpoenas are not unduly burdensome. Initially, this objection fails legally because Brooks does not provide any proof (whether by affidavit or otherwise) of this alleged burden, and her conclusory allegations are not entitled to any weight. See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 926 (8th Cir. 1999) (noting that the movant's "claim of harm must

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 11**

be based on more than stereotypical and conclusory statements"). On this ground alone, Brooks' complaints of undue burden should be rejected. Moreover, Brooks' allegations of undue burden are disproven by the events in the Original Action, as BMC produced redacted surgical logs regarding the procedures that she performed. Finally, to ease any burden on the Recipients, Defendants are willing to pay the costs associated with obtaining copies of the documents that they have requested and make the arrangements (if necessary) for such copying.

E.     **Brooks' Privacy and Privilege Assertions Are Meritless.**

Brooks' privacy and privilege allegations (which are, as set forth above, the only objections that she has standing to make) also miss the mark. Brooks presumably contends that the Hospital Subpoenas should be quashed in their entirety because of the mere possibility that documents exempted from disclosure by the attorney-client privilege or some unspecified privacy interest might exist in the Recipients' files. See Motion to Quash, ¶¶ 2-8. Brooks' analysis ignores, however, that Rule 45(d)(2) expressly provides a mechanism for the assertion of privilege claims:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH
SUBPOENAS DEUCES TECUM OF: McALLEN MEDICAL CENTER, DOLLY VINSANT
MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY
REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND
(2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 12

Fed. R. Civ. P. 45(d)(2). Even though the burden is on Brooks (as the party resisting discovery) to establish the applicability of any alleged privilege,[8] neither she nor any of the Recipients ever provided Defendants with any sort of privilege log. By virtue of her failure to provide the required log, Defendants have a good argument that Brooks has waived any applicable privileges. See Ceramic Corp. of Am. v. Inka Maritime Corp., 163 F.R.D. 584, 587 (C.D. Cal. 1995) ("Failure to comply with Rule 45(d)(2) risks the finding that the privilege has been waived.").

Independent of the foregoing, Brooks' privacy and privilege claims fail because the documents (if any) that she is complaining of are not in all probability exempted from discovery. By definition, the attorney-client privilege only attaches to confidential communications. To the extent that Brooks or her counsel have provided otherwise privileged communications to the Recipients, they have waived any such privilege. Moreover, by instituting this action seeking hundreds of thousands of dollars in damages, Brooks placed her occupational activities, medical condition, and financial affairs squarely at issue. Brooks cannot seek extensive damages from Defendants yet, at the same time, prevent them from conducting the discovery necessary to rebut her allegations. See Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105, 108 (Tex. 1985) ("A plaintiff cannot use one hand to seek

---

[8]See 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2458, at 7 (Supp. 2001) ("Whoever asserts privilege has a burden of proof when information subject to a subpoena is withheld on a claim of privilege.").

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: McALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 13**

affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.").

### F.  Defendants Are Entitled to Recover Their Attorney's Fees from Brooks.

All told, the Motion to Quash is without merit and should be denied.  Brooks' filing of such motion, however, required Defendants' to incur time and expense, including attorney's fees, that they would not have had to incur but for her wrongful conduct.  Defendants are thus entitled to recover their reasonable expenses, including attorney's fees, from Brooks.  See Ceramic Corp. of Am., 163 F.R.D. at 589 (noting that "if a motion to quash is opposed and the moving party loses, the opposing party may seek attorney's fees and expenses unless the court is convinced that the losing party was 'substantially justified' or 'other circumstances' exist making such an award 'unjust'").

## V.  MOTION TO COMPEL

To the extent that they are required to do so, Defendants move pursuant to Fed. R. Civ. P. 45(c)(2)(B) to have the Recipients produce all of the nonprivileged documents sought in the Hospital Subpoenas.

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 14**

# VI. CONCLUSION

Defendants respectfully request that the Motion to Quash be denied in its entirety, the

Recipients be ordered to produce all of the nonprivileged documents sought in the Hospital

Subpoenas, and Defendants be awarded their reasonable expenses, including attorney's fees,

incurred in obtaining this relief.

Respectfully submitted,

By: _Andrew C. Whitaker_

Andrew C. Whitaker
State Bar No. 21274600
S.D. No. 14309
Attorney-In-Charge

OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271

FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

## CERTIFICATE OF CONFERENCE

At 1:35 p.m. on March 1, 2002, counsel for Defendants called Mark Di Carlo, counsel for Brooks, to determine whether he agreed with or opposed Defendants' motion to compel. Mr. Di Carlo did not return this call by the close of business on March 1, 2002. Since agreement could not be reached, the motion to compel is presented to the Court for determination.

_____
Andrew C. Whitaker

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent by certified mail, return receipt requested, to Mr. Mark A. Di Carlo, La Solana Building, 722 Elizabeth Street, Corpus Christi, Texas 78704, on this 1st day of March, 2002.

_____
Andrew C. Whitaker

**DEFENDANTS' (1) RESPONSE TO PLAINTIFF'S MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF: MCALLEN MEDICAL CENTER, DOLLY VINSANT MEMORIAL HOSPITAL, HEALTHSOUTH-BROWNSVILLE SURGICARE, HCA VALLEY REGIONAL MEDICAL CENTER, AND BROWNSVILLE MEDICAL CENTER AND (2) MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS - Page 16**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-01-052 |
| | § | |
| UNUM PROVIDENT CORPORATION | § | |
| AND UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA | § | |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION**

TO: Defendants, UNUMProvident Corporation ("UnumProvident") and UNUM
Life Insurance Company of America ("UNUM Life") by and through their
attorney of records Mr. Andrew C. Whittaker, Figari Davenport & Graves,
L.L.P., 3400 Bank of America Plaza, 901 Main Street, LB 125, Dallas, Texas
75202.

Comes Now Karen Brooks, Plaintiff herein, and subject to the provisions of the Texas Rules

of Civil Procedure, serves her Responses to Defendant's First Set of Interrogatories and

Requests for Production.

Plaintiff's objections to Definitions and Instructions. The plaintiff objects to the four pages of

definitions and instructions. The definitions are lengthy and require the plaintiff to cross

reference lengthy instructions to interrogatories and request imposes a burden on the plaintiff

which is on the defendant.



EXHIBIT A

1

# CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the above and foregoing was this 15th day of November, 2001, forwarded to the following:

**VIA CERTIFIED MAIL, RRR**
**7000 1670 0009 7789 1198**
Mr. Andrew C. Whitaker
FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas  75202

Respectfully submitted,

Mark A. Di Carlo
722 Elizabeth Street
Corpus Christi, TX   78404
(361) 888-6968
(361) 888-6981 (fax)
State Bar No. 05812510
Southern District I.D.No. 6839

any aspect of your medical condition, identify the physician, psychiatrist, psychologist, or medical practitioner; state the dates or approximate dates of the consultation or treatment; describe the nature of the consultation or treatment; describe the injury, condition, or sickness treated; state whether you are presently under that person's care; and identify all documents concerning your answer to this interrogatory.

**ANSWER:**    Objection.    Physician  patient  privilege.  Fed.R.Civ.Pro.26(b).    Objection. Interrogatory is not reasonable calculated to lead to the discovery of admissible evidence in accordance with Fed.R.Civ.Pro.26(b).    Objection.    The pleadings do not put in issue the relevance of Brook's prior medical treatment.   See medical records provided in requests for production.


**INTERROGATORY NO. 10:** Identify every hospital or other medical facility at which you have had privileges at any point in time after January 1, 1997.

**ANSWER:** Objection, "privileges" is not defined and is therefore subjective.

Brownsville Medical Center
P. O. Box 3590
Brownsville, Texas  78520
(210)544-1400

Valley Regional Center
100 A Alton Gloor Blvd.
Brownsville, Texas  78526
(956) 350-7000

Brownsville SurgiCare
1024 Los Ebanos Blvd.
Brownsville, Texas  78520
(956) 548-0101

Dolly Vinsant Hospital
400 E. 77 Sunshine Strip
San Benito, Texas  78586
(956) 399-1313

McAllen Medical Center
301 W. Expressway 83
McAllen, Texas  78503
(956) 632-4000

Medical Center of Plano (was Columbia Hospital)
3901 W. 15th St.
Plano, Texas  75075
(972) 596-6800

Plano Regional Hospital

**INTERROGATORY NO. 11:** For each surgery you have been involved in, whether as the surgeon of record or as an assistant, since January 1, 1997, identify the hospital or other medical facility at which the surgery was performed, state the date of the surgery, describe in detail your involvement in the surgery (primary surgeon, assistant, etc.), identify all other doctors and medical students who assisted in the surgery in any way, describe the involvement of all such other doctors and medical students in such surgery, and state the amount of money which you billed the patient and/or his or her insurer for your involvement in such surgery.

**ANSWER:** Logs were requested by you and are in your possession, custody and control. See responses to request for production.

## ALPHABETICAL INDEX

[Age Limit . . . . . . . . . . . . . . . . . . . . . . . 9
Assignment, Change of Beneficiary . . . . . . . . . . . 9
Claim Forms . . . . . . . . . . . . . . . . . . . . . . 8
Conformity with State Statutes . . . . . . . . . . . . . 9
Continuous Periods of Disability . . . . . . . . . . . . 7
Definitions . . . . . . . . . . . . . . . . . . . . . . 2
Exceptions and Reductions . . . . . . . . . . . . . . . 7
Extension of Benefits . . . . . . . . . . . . . . . . . 7
Grace Period . . . . . . . . . . . . . . . . . . . . . 8
Legal Actions . . . . . . . . . . . . . . . . . . . . . 8
Maximum Benefit Period . . . . . . . . . . . . . . . . . 4
Minimum Benefits for Specific Fractures
and Dislocations . . . . . . . . . . . . . . . . . . . . 6]

[Non-Disabling In. . .  Benefit . . . . . . . . . . . . . 7
Notice of Claim . . . . . . . . . . . . . . . . . . . . 8
Payment of Claim . . . . . . . . . . . . . . . . . . . . 8
Physical Examination . . . . . . . . . . . . . . . . . . 8
Proof of Loss . . . . . . . . . . . . . . . . . . . . . 8
Rehabilitation . . . . . . . . . . . . . . . . . . . . . 7
Reinstatement . . . . . . . . . . . . . . . . . . . . . 8
Renewal Conditions . . . . . . . . . . . . . . . . . . . 1
Residual Disability Benefits . . . . . . . . . . . . . . 5
Survivor Insurance Benefit . . . . . . . . . . . . . . . 7
Time Limit on Certain Defenses . . . . . . . . . . . . . 8
Time of Payment of Claims . . . . . . . . . . . . . . . 8
Waiver of Premium . . . . . . . . . . . . . . . . . . . 7]

## DEFINITIONS

**Actively Engaged** means working 20 hours or more per week in the duties of Your Occupation.

**Association** means The American Podiatric Medical Association.

**Beneficiary** means the person named in the application. If no person is named in the application or the Beneficiary is not living, then, Beneficiary shall mean the estate.

**Complications of Pregnancy** means: 1) Conditions requiring hospital confinement (when the pregnancy is not terminated), whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy or are caused by pregnancy. Examples are acute nephritis, nephrosis, cardiac decompensation, missed abortion and similar medical and surgical conditions of comparable severity. False labor, occasional spotting, physician prescribed rest during the period of pregnancy, morning sickness, hyperemesis, gravidarum, pre-eclampsia and similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication of pregnancy are not considered Complications. 2) Non-elective caesarean section. 3) Ectopic pregnancy which is terminated. 4) Spontaneous termination of pregnancy which occurs during a gestation in which viable birth is not possible.

**CPI-U** means the Consumer Price Index for All Urban Consumers. It is published by the Bureau of Labor Statistics of the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, We may with the approval of the Commissioner use another national published index that We determine is comparable in scope and purpose to the CPI-U. CPI-U will then mean that index.

**Current Monthly Income** means the Monthly Income from the Occupation during each month of Residual Disability for which claim is made.

**First Index Month** means the calendar month 3 months before the start of a continuous period of Total and/or Residual Disability.

**Index Month** means the calendar month 3 months before the Review Date.

**Injury** means a loss or disability which is a direct result of bodily injury caused by an accident which occurs while the insurance is in force and is independent of all other causes. The loss or disability must commence within 365 days of the accident; otherwise, it will be considered as arising from a Sickness.

**Insured** means a Member or Student Member of the Association

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income caused solely by Residual Disability.

**Member** means a member of the Association who is in full time practice at least 20 hours per week.

**Monthly Benefit** is the amount shown in the application. For disabilities of less than a month, We pay 1/30th of the monthly benefit for each day of disability.

**Monthly Income** means monthly income from salary, wages, bonuses, commissions, fees or other remuneration earned for services performed by the Insured, in the Occupation, after deduction of normal and customary business expenses but before deduction of any income taxes. It does not include dividends, rents, royalties, annuities or other forms of unearned income, or any income the Insured receives not derived directly from the Occupation.

**Occupation** means the occupation described in the application and the occupation in which the Insured is regularly engaged at the time the Insured became disabled. If the occupation is limited to a recognized specialty within the scope of the degree or license, We will deem the specialty to be the Occupation.

**Percent Loss** means

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times 100\%$$



EXHIBIT ___B___

If the Percent is greater than 80%, We will deem it to be 100%.

*for* **Monthly Income** means the ... *age* Monthly Income from the Occupation f... *e* 24 months immediately prior to the period *of* Total disability. The 24 months will ... calculated so as not to include any period of ... *al* or Residual Disability.

**Qualifying Period** is the continuous period of Total and/or Residual Disability equal to the greater of the Waiting Period and 30 days, which must precede payment of the Residual Disability Benefit.

**Residual Disability** means the inability due to Injury or Sickness to perform:

1. one or more of the substantial and material duties of the Occupation; or

2. the substantial and material duties of the Occupation for as much time as is normally required to perform them.

the Insured must be receiving regular medical care from a duly licensed physician other than the Insured, and Total Disability benefits must not be payable under this Policy. Residual Disability will be deemed not to exist if the Percent Loss is less than 20%.
**Residual Disability Benefit** means:

Percent Loss x Monthly Benefit

**Review Date** means each anniversary of the start of a continuous period of Total and/or Residual Disability.
**Sickness** means a sickness or disease which causes loss or disability commencing while the insurance is in force.
**Student Member** means a full-time student less than age 50 enrolled in an Accredited School of Podiatric Medicine.
**Total Disability** means: (1) the inability to perform the substantial and material duties of Your Occupation due to an Injury or Sickness; and (2) You receive regular medical care from a duly licensed physician other than the Insured. If You are performing the duties of any occupation, You will no longer be considered totally disabled. You will be presumed to be totally disabled after the Waiting Period if Injury or Sickness results in the total and irrecoverable loss of one of the following, which cannot be restored or corrected by medical or surgical treatment:
(1) speech, or hearing in both ears;
(2) the sight of both eyes;
(3) the use of both hands, or both feet, or of one hand and one foot.
**Waiting Period** for Accident of Sickness means the number of consecutive days at the start of a period of continuous disability for which benefits are not payable.
**We, Our, Us** means the Commercial Life Insurance Company.
**You and Your** means the Insured.

UNUM 0004

# RESIDUAL DISABILITY BENEFITS

Benefits

We will pay You the Residual Disability Benefit starting on the first day after the Qualifying Period if You are residually disabled and Your combined periods of Total and Residual Disability are continuous.

For periods of Residual Disability less than a month, We will pay 1/30th of the Residual Disability Benefit for each day.

The period of payments will not exceed Your 65th birthday. Also, the combined period for which Total and Residual Disability Benefits are payable will not exceed the applicable Maximum Benefit Period for Total Disability.

## Cost of Living Indexing

For Residual Disability Benefits which accrue on or after each Review Date, We will multiply Your Prior Monthly Income by the Cost of Living Factor (COL Factor) determined on the most recent Review Date. The result will be used in place of Your Prior Monthly Income to figure Your loss of Monthly Income and Percent loss.

The COL Factor will be determined on each Review Date. It is the lesser of:

       1. The CPI-U for the latest Index Month divided by the CPI-U for the First Index Month, or

       2. 1.00 increase by 6% compounded annually from the First to the latest Index Month.

If this would give a value less than 1.00, the COL Factor will be deemed to be 1.00.

## Proof

We reserve the right to require proof, satisfactory to Us, of Your Current and Prior Monthly Income.

UNUM 0006

# CERTIFICATE PROVISIONS

**Time Limit On Certain Defenses:** (a) If You made a misstatement, except one which was fraudulent, on the application for Your Certificate, We may not use it to void the Certificate or the deny a claim for loss incurred or disability that starts after 2 years from the effective date of the Certificate. (b) No claim for loss incurred or disability that starts after the effective date of the Certificate will be reduced or denied because a Sickness or physical condition not excluded by name or specific description before the date of loss had existed before the effective date of the Certificate.

**Grace Period:** If You do not pay a Renewal Premium when it is due, You still have a 31 Day Grace Period to pay. During the Grace Period the Certificate will stay in force. You will not have a Grace Period if We delivered or mailed to You at least 60 days before the Renewal Date a notice of Our intent not to renew the Certificate. If We mail You the written notice, We will use the last address which is shown in Our records.

**Reinstatement:** If the Renewal Premium is not paid before the Grace Period ends, the Certificate will lapse. Later acceptance of the premium by Us or by an agent authorized to accept payment, without requiring an application for reinstatement, will reinstate the Certificate.

If We or Our agent requires an application for reinstatement and issues a conditional receipt for any premium which may be paid, the Certificate will be reinstated upon: (1) the 45th day after the date of such conditional receipt, unless We have previously notified the Insured in writing of Our disapproval of his or her application; or (2) the date We approve the Insured's application, if earlier.

The reinstatement Certificate will cover only loss that results from an Injury sustained after the date of reinstatement or loss due to Sickness that starts more than 10 days after such date. In all other respects the Insured's rights and Ours will remain the same, subject to any provisions noted on or attached to the reinstated Certificate.

Any premiums We accept for reinstatement will be applied to a period for which premiums have not been paid. No premium will be applied to any period more than 60 days before the date of reinstatement.

**Notice Of Claim:** Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to Us at Our Office in Piscataway, NJ or to Our agent. Notice must include Your name and the Certificate number.

**Claim Forms:** When We receive the notice of claim, We will send forms for filing proof of loss. If these forms are not given within 15 days, You may meet the proof of loss requirement by sending Us a written statement of the nature and extent of the loss within the time limit stated in the Proof of Loss section.

**Proof Of Loss:** Written proof of loss for benefits which are payable periodically must be given within 90 days after the termination of the period for which We are liable; in case of claim for any other loss, written proof must be given within 90 days after the date of loss. If it is not reasonably possible to give written proof in the time required, We shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless You lacked legal capacity.

**Time Of Payment Of Claims:** Payments for loss for which We pay periodically will be made each month subject to due written proof of loss. Payment for any other loss will be paid immediately upon receipt of due written proof of loss.

**Payment Of Claim:** Loss of Life benefits are payable in accordance with the Beneficiary designation in effect at the time of payment. If none is then in effect, the benefits will be paid to Your estate. Any accrued benefits unpaid at death may be paid, at Our option, either to Your Beneficiary or estate. All other benefits will be paid to You. If benefits are payable to your estate or to a Beneficiary who cannot execute a valid release, We may pay benefits up to $1,000 to someone related to You or Your Beneficiary by blood or marriage whom We consider to be entitled to the benefit. We will be discharged to the extent of any such payment made in good faith.

**Physical Examination And Autopsy:** We have the right to physically examine You as often as reasonably needed while a claim is pending. We may also require an autopsy in the case of death, where it is not forbidden by law. We will bear all of the costs for this.

**Legal Actions:** No legal action may be brought to recover on a Policy within 60 days after written proof of loss has been given as required by this Certificate. No such action may be brought after 3 years (in Kansas and Tennessee, five years; in South Carolina and Wisconsin, six years) from the time written proof of loss is required to be given.

**UNUM 0009**