IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 21 2002

Michael N. Milby
Clerk of Court

KAREN BROOKS,                           §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §        C.A. No. B-01-052
                                        §
UNUMPROVIDENT CORPORATION               §
and UNUM LIFE INSURANCE                 §
COMPANY OF AMERICA,                     §
                                        §
        Defendants.                     §

---

**DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S MOTIONS AND
NOTICES TO QUASH SUBPOENAS DEUCES TECUM OF ATLAS
ADMINISTRATORS, PICA GROUP SERVICES, AMBULATORY SURGERY
CENTER OF BROWNSVILLE, AND PAUL REVERE LIFE INSURANCE**

---

Andrew C. Whitaker
State Bar No. 21274600
S.D. No. 14309
Attorney-In-Charge
OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271
FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

# TABLE OF CONTENTS

Page

I.   NATURE OF THE ACTION .............................................. 2

II.  THE DISPUTED DISCOVERY ........................................... 2

III. THE MOTIONS TO QUASH ............................................ 3

IV.  ARGUMENT ........................................................ 4

     A.   The Motions to Quash Should Be Denied Because
          Brooks Failed to Serve Them on Defendants ........................... 4

     B.   The Motions to Quash Should Be Denied Because They
          Are Now Moot and Brooks Has Waived Her Objections .................. 5

     C.   Standards for Subpoenas ........................................... 5

     D.   Brooks Lacks Standing to Assert Many of Her Objections ................. 6

     E.   The Documents Sought in the Subpoenas Are Relevant or
          Reasonably Calculated to Lead to the Discovery of Admissible Evidence ...... 7

          1.   Brooks' Performance of Surgeries .............................. 8

          2.   Brooks' Earnings and Expenses ................................ 9

          3.   Brooks' Privileges and the Recipients'
               Communications with Others Regarding Her ..................... 10

          4.   The Potential Applicability of ERISA ........................... 11

     F.   Brooks' Privacy and Privilege Assertions Are Meritless ................... 11

     G.   Defendants Are Entitled to Recover
          Their Attorney's Fees from Brooks ................................ 13

V.   CONCLUSION ..................................................... 14

# TABLE OF AUTHORITIES

## CASES

Page

Bellisario v. Lone Star Life Ins.,
  871 F. Supp. 374 (C.D. Cal. 1994) ................................................................. 11

Ceramic Corp. of Am. v. Inka Maritime Corp.,
  163 F.R.D. 584 (C.D. Cal. 1995) ............................................................. 12, 13

Gatewood v. Stone Container Corp.,
  170 F.R.D. 455 (S.D. Iowa 1996) .................................................................... 7

Ginsberg v. Fifth Court of Appeals,
  686 S.W.2d 105 (Tex. 1985) ........................................................................... 13

Hertenstein v. Kimberly Home Health Care, Inc.,
  189 F.R.D. 620 (D. Kan. 1999) ....................................................................... 7

Smith v. Midland Brake, Inc.,
  162 F.R.D. 683 (D. Kan. 1995) ....................................................................... 7

Williams v. City of Dallas,
  178 F.R.D. 103 (N.D. Tex. 1998) .................................................................... 3

Windsor v. Martindale,
  175 F.R.D. 665 (D. Colo. 1997) ...................................................................... 7

## STATUTES AND RULES

Fed. R. Civ. P. 26(b) ................................................................................... 3, 8

Fed. R. Civ. P. 45 ............................................................................... 5, 6, 7, 12

## MISCELLANEOUS

9A Charles A. Wright & Arthur R. Miller,
  Federal Practice and Procedure § 2458 (Supp. 2001) ...................................... 12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

KAREN BROOKS,                            §
                                         §
        Plaintiff,                       §
                                         §
v.                                       §        C.A. No. B-01-052
                                         §
UNUMPROVIDENT CORPORATION                §
and UNUM LIFE INSURANCE                  §
COMPANY OF AMERICA,                      §
                                         §
        Defendants.                      §

## DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S MOTIONS AND NOTICES TO QUASH SUBPOENAS DEUCES TECUM OF ATLAS ADMINISTRATORS, PICA GROUP SERVICES, AMBULATORY SURGERY CENTER OF BROWNSVILLE, AND PAUL REVERE LIFE INSURANCE

Defendants UnumProvident Corporation ("UnumProvident") and Unum Life Insurance

Company of America ("Unum Life") (collectively, "Defendants") file this combined response

to the Motion and Notice to Quash Subpoenas Deuces Tecum of Atlas Administrators and

PICA Group Services (Docket No. 27), the Motion and Notice to Quash Subpoena Deuces

Tecum of Ambulatory Surgery Center of Brownsville (Docket No. 28), and the Motion and

Notice to Quash Subpoena Deuces Tecum of Paul Revere Life Insurance (Docket No. 29)

(collectively, the Motions to Quash") and state:

# I. NATURE OF THE ACTION

This is a suit for benefits under a master policy issued to the American Podiatric Medical Association.  Less than a year after obtaining a Certificate of Insurance (the "Certificate") under such master policy, Plaintiff Karen Brooks ("Brooks") fell in her bathtub and purportedly sustained injuries preventing her from performing her occupational duties as a podiatrist.  Unum Life began paying $6,000 per month in disability benefits to Brooks while it investigated her claim.  During its investigation, Unum Life obtained (among other information) surgical logs from one of the hospitals at which Brooks had privileges indicating that she performed more surgeries in the period after her fall than she had before her fall.  Brooks was unable to offer a satisfactory explanation for the information contained in these logs, and Unum Life stopped paying benefits to her.  In Plaintiff's Complaint (the "Complaint"), Brooks asserts claims against Defendants for (1) breach of contract, (2) violations of the Texas Insurance Code, (3) violations of the DTPA, (4) bad faith, and (5) fraud.  Defendants deny all liability to Brooks and have asserted a counterclaim to recover the $48,000 in benefits that were paid to her.

# II. THE DISPUTED DISCOVERY

As part of their discovery efforts in this case, Defendants served subpoenas (collectively, the "Subpoenas") on Atlas Administrators, PICA Group Services, Ambulatory Surgery Center of Brownsville, and Paul Revere Life Insurance (collectively, the "Recipients").

In the subpoenas directed to Atlas Administrators, PICA Group Services, and Paul Revere Life Insurance, Defendants sought (1) such recipients' application, underwriting, and claim files concerning Brooks, and (2) correspondence concerning Brooks between such recipients, on the one hand, and Brooks, her counsel, her insurers, and governmental entities, on the other hand.  In the subpoena directed to Ambulatory Surgery Center of Brownsville, Defendants sought copies of surgical logs regarding the procedures performed by Brooks, documents concerning the compensation paid to her, nonprivileged documents regarding her credentials and privileges, and communications between such surgery center, on the one hand, and Brooks, her counsel, insurers, and governmental entities, on the other hand.

### III.  **THE MOTIONS TO QUASH**

In the Motions to Quash, Brooks continues her ongoing quest to frustrate Defendants' legitimate discovery efforts at every turn.  According to Brooks, the Subpoenas should be quashed in their entirety or, alternatively, modified in numerous respects[1] because (1) they are not limited to the documents that she believes are relevant, (2) they impose undue burden and expense on the Recipients, (3) they seek documents that are privileged or somehow violate her privacy, (4) they improperly attempt to circumvent permissible discovery under Fed. R. Civ. P. 26(b), and (5) Defendants failed to confer with Brooks prior to serving the Subpoenas to see

---

[1] As set forth more fully below, the Subpoenas seek documents that are relevant and nonprivileged, and the Court should at most modify the Subpoenas rather than quash them in their entirety.  See Williams v. City of Dallas, 178 F.R.D. 103, 110 (N.D. Tex. 1998) ("Modification of a subpoena is preferable, however, to quashing it.").

**DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S MOTIONS AND NOTICES TO QUASH SUBPOENAS DEUCES TECUM OF ATLAS ADMINISTRATORS, PICA GROUP SERVICES, AMBULATORY SURGERY CENTER OF BROWNSVILLE, AND PAUL REVERE LIFE INSURANCE - Page 3**

if she agreed with their issuance. For the reasons set forth below, the Motions to Quash are without merit and should be denied.

## IV. ARGUMENT

**A.    The Motions to Quash Should Be Denied Because**
**Brooks Failed to Serve Them on Defendants.**

Initially, the Motions to Quash should be denied in their entirety because Brooks failed to serve them on Defendants in a timely fashion. By letter dated April 18, 2002, Brooks' counsel provided Defendants with "rough draft[s]" of the Motions to Quash and stated that he would file such documents with the Court in the event that Defendants did not agree with the requested relief. A true and correct copy of this letter from Brooks' counsel (with enclosed rough drafts) is attached hereto as Exhibit A. To date, Defendants have not received copies from Brooks of the Motions to Quash in their final form.[2] The website for the Southern District, however, indicates that Brooks filed the Motions to Quash with the Court on May 1, 2002. By virtue of Brooks' failure to timely serve Defendants with the Motions to Quash as required by the Federal Rules, the Motions to Quash should be denied in their entirety.

---

[2] In preparing this response, Defendants have assumed that the Motions to Quash are similar to the rough drafts that they previously received.

**DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S MOTIONS AND NOTICES TO QUASH SUBPOENAS DEUCES TECUM OF ATLAS ADMINISTRATORS, PICA GROUP SERVICES, AMBULATORY SURGERY CENTER OF BROWNSVILLE, AND PAUL REVERE LIFE INSURANCE - Page 4**

**B.    The Motions to Quash Should Be Denied Because They
Are Now Moot and Brooks Has Waived Her Objections.**

Moreover, the Motions to Quash should be denied because they are moot and Brooks
has waived any objections that she might have had.  In the Subpoenas, Defendants requested
that the Recipients produce the requested documents on April 30, 2002.  In accordance with
the Subpoenas, all of the Recipients produced their respective documents to Defendants in a
timely fashion.  As noted above, however, Brooks did not even file the Motions to Quash until
May 1, 2002, which was <u>after</u> the deadline for the Recipients' compliance.  Since she did not
file the Motions to Quash in time, Brooks has waived any objections that she may have had.
In addition, since the Recipients have already complied with the Subpoenas, the Motions to
Quash should be denied as moot.

**C.    Standards for Subpoenas.**

Independent of the foregoing, the Motions to Quash should be denied because Brooks
is not entitled to any of the relief that she now seeks.  Fed. R. Civ. P. 45 governs (among other
matters) the use of subpoenas during discovery to obtain records from third parties.
Notwithstanding Brooks' claim to the contrary, nothing in Rule 45 (whether expressly or
impliedly) requires a party to obtain advance permission from the opposing party prior to
service of a subpoena on a third party; rather, the requesting party need only serve the opposing
party with notice pursuant to Rule 5(b) of the commanded production of documents.  <u>See</u> Fed.

R. Civ. P. 45(b)(1).  As evidenced by her filing of the Motions to Quash, Brooks received copies of the Subpoenas from Defendants.

Rule 45(c)(2)(B) gives a person commanded to produce documents (but, interestingly, not the opposing party) the right to object to the production of any or all of the designated materials.  Rule 45(c)(3)(A) allows for the quashing or modifying of a subpoena if it (1) fails to allow reasonable time for compliance, (2) requires a nonparty to travel more than 100 miles from where he resides, is employed, or regularly transacts business, (3) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (4) subjects a person to undue burden.[3]  Id. at 45(c)(3)(A).  Here, the Recipients received at least 20 days' notice and were requested to produce documents at their offices, thus rendering inapplicable the first two elements.

## D.    Brooks Lacks Standing to Assert Many of Her Objections.

Moreover, many of Brooks' arguments in the Motions to Quash fail because she lacks standing to assert them.  Brooks has filed the Motions to Quash on her own behalf, not on behalf of the Recipients, and the only objections that she may assert are privilege and an applicable privacy interest:

---

[3]In turn, Rule 45(c)(2)(B) allows for the quashing or modifying of a subpoena if it (1) requires disclosure of trade secrets or other confidential business information, (2) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or (3) requires a nonparty to travel more than 100 miles to attend trial; however, production upon specified conditions may be ordered if the issuing party shows a substantial need for the material that cannot otherwise be met without undue hardship. Fed. R. Civ. P. 45(c)(3)(B). Brooks does not appear to base the Motions to Quash on any of these grounds.

DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S MOTIONS AND NOTICES TO QUASH SUBPOENAS DEUCES TECUM OF ATLAS ADMINISTRATORS, PICA GROUP SERVICES, AMBULATORY SURGERY CENTER OF BROWNSVILLE, AND PAUL REVERE LIFE INSURANCE - Page 6

The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought. A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable. Absent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum.

Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997) (citations omitted); see also

Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 635 (D. Kan. 1999) ("A

motion to quash or modify a subpoena duces tecum may only be made by the party to whom

the subpoena is directed except where the party seeking to challenge the subpoena has a

personal right or privilege with respect to the subject matter requested in the subpoena."); Fed.

R. Civ. P. 45(c)(2)(B) (providing for the assertion of objections by "a person commanded to

produce and permit inspection and copying").[4] On this ground alone, all of Brooks' complaints

(such as relevance and undue burden) other than privilege and privacy must be rejected.

E.    **The Documents Sought in the Subpoenas Are Relevant or Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

Assuming (without conceding) that Brooks has standing to object to the Subpoenas on

relevance grounds, the Motions to Quash should nonetheless be denied because all of the

documents sought by Defendants are relevant or, at a minimum, reasonably calculated to lead

to the discovery of admissible evidence. Rule 26(b)(1) provides in pertinent part:

---

[4]Other courts have reached the same conclusion. See Smith v. Midland Brake, Inc., 162 F.R.D. 683, 685 (D. Kan. 1995) (noting that a motion to quash a subpoena duces tecum may only be made by the party to whom a subpoena is directed unless a personal right or privilege is at issue); see also Gatewood v. Stone Container Corp., 170 F.R.D. 455, 460 (S.D. Iowa 1996) (overruling the defendant's objections to a subpoena that did not involve a personal right or privilege).

DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S MOTIONS AND NOTICES TO QUASH SUBPOENAS DEUCES TECUM OF ATLAS ADMINISTRATORS, PICA GROUP SERVICES, AMBULATORY SURGERY CENTER OF BROWNSVILLE, AND PAUL REVERE LIFE INSURANCE - Page 7

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Notwithstanding Brooks' assertion that the Subpoenas are "an attempt to circumvent permissible discovery" under Rule 26(b), a review of them confirms that they satisfy the requirements of Rule 26(b)(1).

    1.    <u>Brooks' Performance of Surgeries</u>. Under the Certificate, the issue of whether Brooks is totally or residually disabled requires a determination of her "occupation" at the onset of her claim and inquiry into her work-related activities:

> **Occupation** means the occupation described in the application and the occupation in which the Insured is regularly engaged at the time the Insured became disabled. If the occupation is limited to a recognized specialty within the scope of the degree or license, We will deem the specialty to be the Occupation.

> ***

> **Residual Disability** means the inability due to Injury or Sickness to perform:

>     1.    one or more of the substantial and material duties of the Occupation; or

>     2.    the substantial and material duties of the Occupation for as much time as is normally required to perform them.

> the Insured must be receiving regular medical care from a duly licensed physician other than the Insured, and Total Disability benefits must not be

payable under this Policy.  Residual Disability will be deemed not to exist if the
Percent Loss is less than 20%.

***

**Total Disability** means: (1) the inability to perform the substantial and material
duties of Your Occupation due to an Injury or Sickness; and (2) You receive
regular medical care from a duly licensed physician other than the Insured.  If
You are performing the duties of any occupation, You will no longer be
considered totally disabled....[5]

As these definitions make clear, Defendants are entitled to discovery regarding both Brooks'

pre-accident activities (to determine the occupation in which she was regularly engaged at the

time of her accident and the substantial and material duties of such occupation) and her post-

accident activities (to determine whether she is unable to perform some or all of such duties).

Documents regarding Brooks' performance of surgeries are thus unquestionably relevant.

2.    <u>Brooks' Earnings and Expenses</u>.   Moreover, the documents sought in the

Subpoenas regarding the financial affairs of Brooks and her professional association bear on,

among other issues, her pre- and post-accident activities and the extent of her entitlement (if

any) to residual disability benefits.  That is, Brooks contends that she was residually disabled

(Complaint, ¶ 24.2), which requires a comparison under the Certificate of her pre- and post-

accident earnings and expenses:

**Current Monthly Income** means the Monthly Income from the Occupation
during each month of Residual Disability for which claim is made.

*  *  *

---

[5]True and correct copies of excerpts from the Certificate are attached as Exhibit B.

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income caused solely by Residual Disability.

*  *  *

**Monthly Income** means monthly income from salary, wages, bonuses, commission, fees or other remuneration earned for services performed by the Insured, in the Occupation, after deduction of normal and customary business expenses but before deduction of any income taxes. It does not include dividends, rents, royalties, annuities or other forms of unearned income, or any income the Insured receives not derived directly from the Occupation.

*  *  *

**Percent Loss** means

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times 100\%$$

If the Percent is greater than 80%, We will deem it to be 100%.

**Prior Monthly Income** means the average Monthly Income from the Occupation for the 24 months immediately prior to the period of Total disability. The 24 months will be calculated so as not to include any period of Total or Residual Disability.

The Certificate further provides that Unum Life "reserves the right to require proof, satisfactory to Us, of Your Current and Prior Monthly Income." Brooks' earnings from and expenses with respect to the Recipients are thus directly relevant to her claims.

3.    Brooks' Privileges and the Recipients' Communications with Others Regarding Her. In addition, the documents sought by Defendants regarding Brooks' privileges and the Recipients' communications with others regarding her are relevant or, at a minimum, reasonably calculated to lead to the discovery of admissible evidence. By way of example, the

Recipients' communications with Brooks and others may well shed light on the duties of her occupation and her ability to perform such duties.

       4.    <u>The Potential Applicability of ERISA</u>.  Finally, the documents sought by Defendants regarding Brooks' other insurance coverage are relevant to, among other issues, the potential applicability of ERISA.  That is, an employer can create an ERISA plan by the purchase of different types of insurance from different insurers covering different types of employees.  <u>See</u> <u>Bellisario v. Lone Star Life Ins.</u>, 871 F. Supp. 374, 377-79 (C.D. Cal. 1994). The requested documents are also relevant to Brooks' motivation (or lack thereof) to resume the performance of her occupational duties--if she was receiving more money in disability payments than she made while working, Brooks had reduced incentive to return to work. Moreover, as set forth above, Brooks' physical and psychiatric condition are at issue in this action, and the requested documents will likely contain information regarding her medical condition and the treatment that she has received.

**F.**    <u>**Brooks' Privacy and Privilege Assertions Are Meritless.**</u>

       Brooks' privacy and privilege allegations (which are, as set forth above, the only objections that she has standing to make) also miss the mark.  Brooks presumably contends that the Subpoenas should be quashed in its entirety because of the mere possibility that documents exempted from disclosure by the attorney-client privilege or some unspecified privacy interest

might exist in the Recipients' files.  Brooks' analysis ignores, however, that Rule 45(d)(2) expressly provides a mechanism for the assertion of privilege claims:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Fed. R. Civ. P. 45(d)(2).  Even though the burden is on Brooks (as the party resisting discovery) to establish the applicability of any alleged privilege,[6] neither she nor the Recipients ever provided Defendants with any sort of privilege log.  By virtue of her failure to provide the required log, the Court should find that Brooks has waived any applicable privileges.  <u>See</u> <u>Ceramic Corp. of Am. v. Inka Maritime Corp.</u>, 163 F.R.D. 584, 587 (C.D. Cal. 1995) ("Failure to comply with Rule 45(d)(2) risks the finding that the privilege has been waived.").

Independent of the foregoing, Brooks' privacy and privilege claims fail because the documents (if any) that she is complaining of are not in all probability exempted from discovery.  By definition, the attorney-client privilege only attaches to confidential communications.  To the extent that Brooks or her counsel have provided otherwise privileged communications to the Recipients, she has waived any such privilege.  Moreover, by instituting this action seeking hundreds of thousands of dollars in damages, Brooks placed her other occupational duties and activities, earnings, and insurance coverage squarely at issue.  Brooks

---

[6]<u>See</u> 9A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2458, at 7 (Supp. 2001) ("Whoever asserts privilege has a burden of proof when information subject to a subpoena is withheld on a claim of privilege.").

**DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S MOTIONS AND NOTICES TO QUASH SUBPOENAS DEUCES TECUM OF ATLAS ADMINISTRATORS, PICA GROUP SERVICES, AMBULATORY SURGERY CENTER OF BROWNSVILLE, AND PAUL REVERE LIFE INSURANCE - Page 12**

cannot seek extensive damages from Defendants yet, at the same time, prevent them from conducting the discovery necessary to rebut her allegations. See Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105, 108 (Tex. 1985) ("A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.").

## G.    Defendants Are Entitled to Recover Their Attorney's Fees from Brooks.

All told, the Motions to Quash are without merit and should be denied. Brooks' filing of such motions, however, required Defendants to incur time and expense, including attorney's fees, that they would not have had to incur but for her wrongful conduct. Defendants are thus entitled to recover their reasonable expenses, including attorney's fees, from Brooks. See Ceramic Corp. of Am., 163 F.R.D. at 589 (noting that "if a motion to quash is opposed and the moving party loses, the opposing party may seek attorney's fees and expenses unless the court is convinced that the losing party was 'substantially justified' or 'other circumstances' exist making such an award 'unjust'").

## V. <u>CONCLUSION</u>

Defendants respectfully request that the Motions to Quash be denied in their entirety and that Defendants be awarded their reasonable expenses, including attorney's fees, incurred in obtaining this relief.

Respectfully submitted,

By: _Andrew C Whitaker_
Andrew C. Whitaker
State Bar No. 21274600
S.D. No. 14309
Attorney-In-Charge

OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271

FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent by certified mail, return receipt requested, to Mr. Mark A. Di Carlo, La Solana Building, 722 Elizabeth Street, Corpus Christi, Texas 78704, on this 20th day of May, 2002.

_Andrew C Whitaker_

Andrew C. Whitaker

# Fax Cover Sheet

**Mark A. Di Carlo
Attorney At Law
722 Elizabeth St.
Corpus Christi, TX. 78404
(361) 888-6968
(361) 888-6981 (Fax)**

| | |
|---|---|
| Send to: Mr. Andrew Whitaker | From: Mark Di Carlo |
| Fax Number: (214) 939-2090 | Date: April 18, 2002 |
| Subject: Brooks v. UNUMProvident, et al | Cause No.: B-01-052 |
| | |

Original will follow VIA:
❑ Regular Mail
❑ Overnight Delivery
❑ Hand Delivery
❑ CMRRR

Total pages, including cover: 15

Comments:

**\*\*CONFIDENTIALITY NOTE\*\*** the documents accompanying this transmission contain information from the Law Office of Mark A. Di Carlo which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are not the intended recipient, you are hereby notified that nay disclosure, copying or distribution of this document, or the taking of any action in reliance on the contents of this telecopied information, is strictly prohibited and the documents should be returned to this office immediately. In regard, if you have received this telecopy in error please notify us by telephone immediately so that we can arrange for the return of the documents to us at no cost to you.



# Mark A. Di Carlo

### Attorney at Law
La Solana Building
722 Elizabeth St.
Corpus Christi, Texas 78404
(361) 888-6968
FAX (361) 888-6981


April 18, 2002


**VIA TELEFAX (214) 939-2090**
Mr. Andrew C. Whitaker
FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas  75202-3796

> Re:   *C.A. No. B-01-052; Karen Brooks v. UnumProvident Corporation and*
>       *UNUM Life Insurance Company of America*

Dear Mr. Whitaker:

Enclosed is a rough draft of my objections to your latest flurry of subpoenas duces tecum's, without your attached subpoena's:  Atlas Administrators, Paul Revere Life Insurance Company, Ambulatory Surgery Center and PICA Group Services.

In the event I do not hear from you regarding making your requests more specific by 12:00 on 04/19/02 I will file the objections with the courts.

Sincerely,

Mark A. Di Carlo

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-01-052 |
| | § | |
| UNUM PROVIDENT CORPORATION | § | |
| AND UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA | § | |

MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF:
ATLAS ADMINISTRATORS AND PICA GROUP SERVICES

1.      The plaintiff moves to Quash and/or modify the subpoenas of Atlas
Administrators and PICA Group Services pursuant to Federal Rule of Civil Procedure
45(c)(3)(A).

2.      The subpoena request the documents referred to in Exhibit A for Atlas
Administrators and PICA Group Services.

3.      The subpoena does not properly designate documents in accordance with Federal
Rule of Civil Procedure 45(a)(1)(C).  The subpoena in paragraphs 1, 2, 3, and 4 merely
requests all documents.

4.      The documents requested are not relevant to this case.

5.      As further evidence of the bad faith of the defendants in requesting these
documents the plaintiff calls the courts attention to the fact that the subpoena is the same

for: the records for PICA Group Services and Atlas.

6.    No attempts nor conferences were made with plaintiff to determine whether or not these documents were agreed upon. The plaintiff asserts these subpoenas constitute a pattern of bad faith against the plaintiff both in terms of discovery and omissions. The plaintiff calls to the attention that the defendant has already had the professional plaintiff who was never arrested in her life with a felony and that the felony was dismissed. The defendant is engaged in an obvious pattern of attempting to destroy this plaintiff's life merely because she paid for an insurance policy and became disabled.

7.    The requested generic documents are an attempt to circumvent permissible discovery under Federal Rule of Civil Procedure 26(b).

8.    The motion should be granted for the following reasons:

    1)    Attorney Client Privilege;

    2)    Physician Patient Privilege;

    3)    Right to privacy under U.S. Constitution and/or Texas Constitution;

    4)    The documents request are not relevant to the suit and are not calculated to lead to discoverable information;

    5)    The request is a pattern of abuse attempting to embarrass and intimidate the plaintiff which began with a false grand jury indictment.

    The documents requested are an attempt to permissible discovery under Federal Rule of Civil Procedure 26(b).

9.    **PRAYER**, the plaintiff prays for the following:

1)    The two subpoena's shall be quashed;

2)    The subpoena's be modified to specify relevant issues regarding this lawsuit such as whether or not the claimant is disabled under the terms of the policy from her occupation as a podiatrist;

3)    The subpoena's be modified to reasonably specify the books and documents requested;

4)    The subpoena's be reasonably modified to specify dates for one or two years preceding the date of disability to the present;

5)    That any documents regarding any communication between Brooks and her attorney be protected and eliminated in the request for the subpoena's;

6)    The subpoenas' be limited to Discovery documents permissible under Federal Rule of Civil Procedure 26(b).

7)    All requested documents be reasonably specified such other and further relief to which the plaintiff may be entitled.

## CERTIFICATE OF SERVICE AND
## CERTIFICATE OF CONSULTATION

Plaintiff's counsel served this motion by certified mail on Andrew Whitaker on

April ____, 2002.  By via telefax plaintiff's counsel notified Mr. Andrew Whitaker on

April ____, 2002 of the filing of this motion.

Respectfully submitted,

Mark A. DiCarlo
722 Elizabeth St.
Corpus Christi, Texas 78404
(361) 888-6968
(361) 888-6981 Fax
State Bar No.: 05812510
Southern District I.D. No. 6839

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

KAREN BROOKS                          §
                                      §
VS.                                   §          CIVIL ACTION NO. B-01-052
                                      §
UNUM PROVIDENT CORPORATION            §
AND UNUM LIFE INSURANCE               §
COMPANY OF AMERICA                    §

MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF:
AMBULATORY SURGERY CENTER OF BROWNSVILLE

1.      The plaintiff moves to Quash and/or modify the subpoenas of Ambulatory

Surgery Center of Brownsville pursuant to Federal Rule of Civil Procedure 45(c)(3)(A).


2.      The subpoena request records as reflected in **Exhibit A** .  Any subpoenaed

records between Brooks' attorney and the physician would necessarily be trial

preparation materials and/or client privileged.


3.      The subpoena does not properly designate documents in accordance with Federal

Rule of Civil Procedure 45(a)(1)(C).  The subpoena requires disclosure of "all nor

privileged documents in ASC's credentialing file and personnel files concerning Brooks"

in paragraph 3.  The request for such "documents" is an attempt to obtain records not

relevant to this case in an attempt to "ruin" the plaintiff as the defendant has attempted to

do in the past.  The defendant has attempted to ruin the plaintiff by having a professional

woman who has never been arrested before, arrested, brought to jail and indicted.  The

indictment against Brooks was dismissed.

4.    The documents requested are not relevant to this case. Paragraph 3 requests "All non privileged documents in ASC's credentialing file and personnel file" concerning Brooks.

Paragraph 4 requests, "All non-privileged documents concerning any original and renewal application, including any supporting documents, submitted by Brooks for privileges at ASC."

Paragraph 6 requests any non-privileged documents concerning any expiration, suspension, revocation or termination of Brooks' privileges at ASC. The documents are non specific nor relevant to this case and constitute a fishing expedition in an attempt to embarrass and humiliate the plaintiff.

5.    Paragraph 7 requests: All documents concerning Brooks or the Brooks Entities between and among ASC, on the one hand, and Brooks, Brooks's counsel, or the Brooks Entities' counsel, on the other hand the documents are privileged by the attorney-client privilege.

6.    No attempts nor conferences were made with plaintiff to determine whether or not these documents were agreed upon. The plaintiff asserts these subpoenas constitute a pattern of bad faith against the plaintiff both in terms of discovery and omissions. The plaintiff calls to the attention that the defendant has already had the professional plaintiff who was never arrested in her life with a felony and that the felony was dismissed. The defendant is engaged in an obvious pattern of attempting to destroy this plaintiff's life merely because she paid for an insurance policy and became disabled.

7.    The requested generic documents are an attempt to circumvent permissible discovery under Federal Rule of Civil Procedure 26(b).

8.    The motion should be granted for the following reasons:

    1)    Attorney Client Privilege;

    2)    Physician Patient Privilege;

    3)    Right to privacy under U.S. Constitution and/or Texas Constitution;

    4)    The documents request are not relevant to the suit and are not calculated to lead to discoverable information;

    5)    The request is a pattern of abuse attempting to embarrass and intimidate the plaintiff which began with a false grand jury indictment which was dismissed.

The documents requested are an attempt to permissible discovery under Federal Rule of Civil Procedure 26(b).

9.    **PRAYER**, the plaintiff prays for the following:

1)    The subpoena shall be quashed;

2)    The subpoena be modified to specify relevant issues regarding this lawsuit such as whether or not the claimant is disabled under the terms of the policy from her occupation as a podiatrist;

3)    The subpoena be modified to reasonably specify the books and documents requested;

4)    The subpoena be reasonably modified to specify dates for one or two years

preceding the date of disability to the present;

5)    That any documents regarding any communication between Brooks and her attorney be protected and eliminated in the request for the subpoena's;

6)    The subpoena be limited to Discovery documents permissible under Federal Rule of Civil Procedure 26(b).

7)    All requested documents be reasonably specified such other and further relief to which the plaintiff may be entitled.

## CERTIFICATE OF SERVICE AND
## CERTIFICATE OF CONSULTATION

Plaintiff's counsel served this motion by certified mail on Andrew Whitaker on

April 18th , 2002.  By via telefax plaintiff's counsel notified Mr. Andrew Whitaker on

April 18th , 2002 of the filing of this motion.

Respectfully submitted,

Mark A. Di Carlo
722 Elizabeth St.
Corpus Christi, Texas 78404
(361) 888-6968
(361) 888-6981 Fax
State Bar No.: 05812510
Southern District I.D. No. 6839

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

KAREN BROOKS                          §
                                      §
VS.                                   §          CIVIL ACTION NO. B-01-052
                                      §
UNUM PROVIDENT CORPORATION            §
AND UNUM LIFE INSURANCE               §
COMPANY OF AMERICA                    §

MOTION AND NOTICE TO QUASH SUBPOENAS DEUCES TECUM OF:
PAUL REVERE LIFE INSURANCE

1.       The plaintiff moves to Quash and/or modify the subpoenas of Paul Revere Life

Insurance Company pursuant to Federal Rule of Civil Procedure 45(c)(3)(A).


2.       The subpoena request records as indicated in **Exhibit A**.


3.       The subpoena does not properly designate documents in accordance with Federal

Rule of Civil Procedure 45(a)(1)(C). The subpoena in paragraphs 1, 2, 3, and 4 merely

requests all documents.


4.       The documents are not relevant to this case nor are documents specifically

requested which may be relevant to this case.


5.       The defendant is attempting to abuse the plaintiff through the requests of

numerous subpoenas duces tecum. The defendant has already presented information of

the plaintiff, a professional podiatrist, in an attempt to have Brooks indicted. The indictment was dismissed. This request along with the subpoena duces tecum's is an attempt to destroy the plaintiff's life mearly because she took out a disability policy from the defendant paid for the policy and became disabled.


6.      No attempts nor conferences were made with plaintiff to determine whether or not these documents were agreed upon. The plaintiff asserts these subpoenas constitute a pattern of bad faith against the plaintiff both in terms of discovery and omissions. The plaintiff calls to the attention that the defendant has already had the professional plaintiff who was never arrested in her life with a felony and that the felony was dismissed. The defendant is engaged in an obvious pattern of attempting to destroy this plaintiff's life merely because she paid for an insurance policy and became disabled.


7.      The requested generic documents are an attempt to circumvent permissible discovery under Federal Rule of Civil Procedure 26(b). The request were apparently prepared by a paralegal and not the attorney of record.


8.      The motion should be granted for the following reasons:

       1)      Attorney Client Privilege;

       2)      Physician Patient Privilege;

       3)      Right to privacy under U.S. Constitution and/or Texas Constitution;

       4)      The documents request are not relevant to the suit and are not calculated to lead to discoverable information;

5)    The request is a pattern of abuse attempting to embarrass and intimidate the plaintiff which began with a false grand jury indictment.

The documents requested are an attempt to permissible discovery under Federal Rule of Civil Procedure 26(b).

9.    **PRAYER**, the plaintiff prays for the following:

1)    The subpoena shall be quashed;

2)    The subpoena's be modified to specify relevant issues regarding this lawsuit such as whether or not the claimant is disabled under the terms of the policy from her occupation as a podiatrist;

3)    The subpoena's be modified to reasonably specify the books and documents requested;

4)    The subpoena's be reasonably modified to specify dates for one or two years preceding the date of disability to the present;

5)    That any documents regarding any communication between Brooks and her attorney be protected and eliminated in the request for the subpoena's;

6)    The subpoenas' be limited to *Discovery* documents permissible under Federal Rule of Civil Procedure 26(b).

7)    All requested documents be reasonably specified such other and further relief to which the plaintiff may be entitled.

## CERTIFICATE OF SERVICE AND
## CERTIFICATE OF CONSULTATION

Plaintiff's counsel served this motion by certified mail on Andrew Whitaker on

April __18__, 2002.  By via telefax plaintiff's counsel notified Mr. Andrew Whitaker on

April __18__, 2002 of the filing of this motion.

Respectfully submitted,

Mark A. Di-Carlo
722 Elizabeth St.
Corpus Christi, Texas 78404
(361) 888-6968
(361) 888-6981 Fax
State Bar No.: 05812510
Southern District I.D. No. 6839

## ALPHABETICAL INDEX

| | |
|---|---|
| [Age Limit . . . . . . . . . . . . . . . . . . . . . 9 | [Non-Disabling In. ➔ Benefit . . . . . . . . . . . . 7 |
| Assignment, Change of Beneficiary . . . . . . . . . . . 9 | Notice of Claim . . . . . . . . . . . . . . . . . . . 8 |
| Claim Forms . . . . . . . . . . . . . . . . . . . 8 | Payment of Claim . . . . . . . . . . . . . . . . 3 |
| Conformity with State Statutes . . . . . . . . . . . . 9 | Physical Examination . . . . . . . . . . . . . . . 8 |
| Continuous Periods of Disability . . . . . . . . . . . 7 | Proof of Loss . . . . . . . . . . . . . . . . . . . 8 |
| Definitions . . . . . . . . . . . . . . . . . . . 2 | Rehabilitation . . . . . . . . . . . . . . . . . . . 7 |
| Exceptions and Reductions . . . . . . . . . . . . . . 7 | Reinstatement . . . . . . . . . . . . . . . . . . . 8 |
| Extension of Benefits . . . . . . . . . . . . . . . . 7 | Renewal Conditions . . . . . . . . . . . . . . . . 1 |
| Grace Period . . . . . . . . . . . . . . . . . . 8 | Residual Disability Benefits . . . . . . . . . . . . . 5 |
| Legal Actions . . . . . . . . . . . . . . . . . . 8 | Survivor Insurance Benefit . . . . . . . . . . . . . 7 |
| Maximum Benefit Period . . . . . . . . . . . . . . 4 | Time Limit on Certain Defenses . . . . . . . . . 8 |
| Minimum Benefits for Specific Fractures | Time of Payment of Claims . . . . . . . . . . . . 8 |
| and Dislocations . . . . . . . . . . . . . . . . . 6] | Waiver of Premium . . . . . . . . . . . . . . . 7] |

## DEFINITIONS

**Actively Engaged** means working 20 hours or more per week in the duties of Your Occupation.

**Association** means The American Podiatric Medical Association.

**Beneficiary** means the person named in the application. If no person is named in the application or the Beneficiary is not living, then, Beneficiary shall mean the estate.

**Complications of Pregnancy** means: 1) Conditions requiring hospital confinement (when the pregnancy is not terminated), whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy or are caused by pregnancy. Examples are acute nephritis, nephrosis, cardiac decompensation, missed abortion and similar medical and surgical conditions of comparable severity. False labor, occasional spotting, physician prescribed rest during the period of pregnancy, morning sickness, hyperemesis, gravidarum, pre-eclampsia and similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication of pregnancy are not considered Complications. 2) Non-elective caesarean section. 3) Ectopic pregnancy which is terminated. 4) Spontaneous termination of pregnancy which occurs during a gestation in which viable birth is not possible.

**CPI-U** means the Consumer Price Index for All Urban Consumers. It is published by the Bureau of Labor Statistics of the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, We may with the approval of the Commissioner use another national published index that We determine is comparable in scope and purpose to the CPI-U. CPI-U will then mean that index.

**Current Monthly Income** means the Monthly Income from the Occupation during each month of Residual Disability for which claim is made.

**First Index Month** means the calendar month 3 months before the start of a continuous period of Total and/or Residual Disability.

**Index Month** means the calendar month 3 months before the Review Date.

**Injury** means a loss or disability which is a direct result of bodily injury caused by an accident which occurs while the insurance is in force and is independent of all other causes. The loss or disability must commence within 365 days of the accident; otherwise, it will be considered as arising from a Sickness.

**Insured** means a Member or Student Member of the Association

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income caused solely by Residual Disability.

**Member** means a member of the Association who is in full time practice at least 20 hours per week.

**Monthly Benefit** is the amount shown in the application. For disabilities of less than a month, We pay 1/30th of the monthly benefit for each day of disability.

**Monthly Income** means monthly income from salary, wages, bonuses, commissions, fees or other remuneration earned for services performed by the Insured, in the Occupation, after deduction of normal and customary business expenses but before deduction of any income taxes. It does not include dividends, rents, royalties, annuities or other forms of unearned income, or any income the Insured receives not derived directly from the Occupation.

**Occupation** means the occupation described in the application and the occupation in which the Insured is regularly engaged at the time the Insured became disabled. If the occupation is limited to a recognized specialty within the scope of the degree or license, We will deem the specialty to be the Occupation.

**Percent Loss means**

$$\text{Loss of Monthly Income} \times 100\%$$
$$\text{Prior Monthly Income}$$



If the Percent is greater than 80%, We will deem it to be 100%.

UNUM 0003

for Monthly Income means the _ _race Monthly Income from the Occupation to the 24 months immediately prior to the period of Total disability. The 24 months will  calculated so as not to include any period of  al or Residual Disability.

**Qualifying Period** is the continuous period of Total and/or Residual Disability equal to the greater of the Waiting Period and 30 days, which must precede payment of the Residual Disability Benefit.

**Residual Disability means** the inability due to Injury or Sickness to perform:

1. one or more of the substantial and material duties of the Occupation; or

2. the substantial and material duties of the Occupation for as much time as is normally required to perform them.

the Insured must be receiving regular medical care from a duly licensed physician other than the Insured, and Total Disability benefits must not be payable under this Policy. Residual Disability will be deemed not to exist if the Percent Loss is less than 20%.
**Residual Disability Benefit means:**

Percent Loss x Monthly Benefit

**Review Date** means each anniversary of the start of a continuous period of Total and/or Residual Disability.

**Sickness** means a sickness or disease which causes loss or disability commencing while the insurance is in force.

**Student Member** means a full-time student less than age 50 enrolled in an Accredited School of Podiatric Medicine.

**Total Disability** means: (1) the inability to perform the substantial and material duties of Your Occupation due to an Injury or Sickness; and (2) You receive regular medical care from a duly licensed physician other than the Insured. If You are performing the duties of any occupation, You will no longer be considered totally disabled. You will be presumed to be totally disabled after the Waiting Period if Injury or Sickness results in the total and irrecoverable loss of one of the following, which cannot be restored or corrected by medical or surgical treatment:

(1) speech, or hearing in both ears;

(2) the sight of both eyes;

(3) the use of both hands, or both feet, or of one hand and one foot.

**Waiting Period for Accident or Sickness** means the number of consecutive days at the start of a period of continuous disability for which benefits are not payable.

**We, Our, Us** means the Commercial Life Insurance Company.

**You and Your** means the Insured.

UNUM 0004

# RESIDUAL DISABILITY BENEFITS

**Benefits**

We will pay You the Residual Disability Benefit starting on the first day after the Qualifying Period if You are residually disabled and Your combined periods of Total and Residual Disability are continuous.

For periods of Residual Disability less than a month, We will pay 1/30th of the Residual Disability Benefit for each day.

The period of payments will not exceed Your 65th birthday. Also, the combined period for which Total and Residual Disability Benefits are payable will not exceed the applicable Maximum Benefit Period for Total Disability.

**Cost of Living Indexing**

For Residual Disability Benefits which accrue on or after each Review Date, We will multiply Your Prior Monthly Income by the Cost of Living Factor (COL Factor) determined on the most recent Review Date. The result will be used in place of Your Prior Monthly Income to figure Your loss of Monthly Income and Percent loss.

The COL Factor will be determined on each Review Date. It is the lesser of:

      1. The CPI-U for the latest Index Month divided by the CPI-U for the First Index Month, or

      2. 1.00 increase by 6% compounded annually from the First to the latest Index Month.

If this would give a value less than 1.00, the COL Factor will be deemed to be 1.00.

**Proof**

We reserve the right to require proof, satisfactory to Us, of Your Current and Prior Monthly Income.

UNUM 0006

## CERTIFICATE PROVISIONS

**Time Limit On Certain Defenses:** (a) If You made a misstatement, except one which was fraudulent, on the application for Your Certificate, We may not use it to void the Certificate or the deny a claim for loss incurred or disability that starts after 2 years from the effective date of the Certificate. (b) No claim for loss incurred or disability that starts after the effective date of the Certificate will be reduced or denied because a Sickness or physical condition not excluded by name or specific description before the date of loss had existed before the effective date of the Certificate.

**Grace Period:** If You do not pay a Renewal Premium when it is due, You still have a 31 Day Grace Period to pay. During the Grace Period the Certificate will stay in force. You will not have a Grace Period if We delivered or mailed to You at least 60 days before the Renewal Date a notice of Our intent not to renew the Certificate. If We mail You the written notice, We will use the last address which is shown in Our records.

**Reinstatement:** If the Renewal Premium is not paid before the Grace Period ends, the Certificate will lapse. Later acceptance of the premium by Us or by an agent authorized to accept payment, without requiring an application for reinstatement, will reinstate the Certificate.
If We or Our agent requires an application for reinstatement and issues a conditional receipt for any premium which may be paid, the Certificate will be reinstated upon: (1) the 45th day after the date of such conditional receipt, unless We have previously notified the Insured in writing of Our disapproval of his or her application; or (2) the date We approve the Insured's application, if earlier.

The reinstatement Certificate will cover only loss that results from an Injury sustained after the date of reinstatement or loss due to Sickness that starts more than 10 days after such date. In all other respects the Insured's rights and Ours will remain the same, subject to any provisions noted on or attached to the reinstated Certificate.

Any premiums We accept for reinstatement will be applied to a period for which premiums have not been paid. No premium will be applied to any period more than 60 days before the date of reinstatement.

**Notice Of Claim:** Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to Us at Our Office in Piscataway, NJ or to Our agent. Notice must include Your name and the Certificate number.

**Claim Forms:** When We receive the notice of claim, We will send forms for filing proof of loss. If these forms are not given within 15 days, You may meet the proof of loss requirement by sending Us a written statement of the nature and extent of the loss within the time limit stated in the Proof of Loss section

**Proof Of Loss:** Written proof of loss for benefits which are payable periodically must be given within 90 days after the termination of the period for which We are liable; in case of claim for any other loss, written proof must be given within 90 days after the date of loss. If it is not reasonably possible to give written proof in the time required, We shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless You lacked legal capacity.

**Time Of Payment Of Claims:** Payments for loss for which We pay periodically will be made each month subject to due written proof of loss. Payment for any other loss will be paid immediately upon receipt of due written proof of loss.

**Payment Of Claim:** Loss of Life benefits are payable in accordance with the Beneficiary designation in effect at the time of payment If none is then in effect, the benefits will be paid to Your estate. Any accrued benefits unpaid at death may be paid, at Our option either to Your Beneficiary or estate. All other benefits will be paid to You. If benefits are payable to your estate or to a Beneficiary who cannot execute a valid release, We may pay benefits up to $1,000 to someone related to You or Your Beneficiary by blood o marriage whom We consider to be entitled to the benefit. We will be discharged to the extent of any such payment made in good faith.

**Physical Examination And Autopsy:** We have the right to physically examine You as often as reasonably needed while a claim pending. We may also require an autopsy in the case of death, where it is not forbidden by law. We will bear all of the costs to this.

**Legal Actions:** No legal action may be brought to recover on a Policy within 60 days after written proof of loss has been given required by this Certificate. No such action may be brought after 3 years (in Kansas and Tennessee, five years; in South Carolir and Wisconsin, six years) from the time written proof of loss is required to be given.