45

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JUL 3 1 2002**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| KAREN BROOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. B-01-052 |
| | § | |
| UNUMPROVIDENT CORPORATION | § | |
| and UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR LITIGATION-ENDING SANCTIONS

Defendants UnumProvident Corporation ("UnumProvident") and Unum Life Insurance Company of America ("Unum Life") (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 26 and 37 and the Court's inherent powers, file this motion for litigation-ending sanctions against Plaintiff Karen Brooks ("Brooks") for her willful misconduct during the discovery process and state:

## I. CERTIFICATE OF CONFERENCE

In a series of letters between July 25, 2002 and July 26, 2002, true and correct copies of which are attached hereto as Exhibits B-F, Defendants conferred with Mark Di Carlo, counsel for Brooks, regarding the relief requested in this motion. Mr. Di Carlo did not agree to any of the relief requested herein. Since agreement could not be reached, this motion is presented to the Court for determination.

**DEFENDANTS' MOTION FOR LITIGATION-ENDING SANCTIONS - Page 1**

## II. **NATURE OF THE ACTION**

This is a suit for benefits under a master policy issued to the American Podiatric Medical Association. Less than a year after obtaining coverage, Brooks fell in her bathtub and purportedly sustained injuries preventing her from performing her occupational duties as a podiatrist. Unum Life began paying $6,000 per month in disability benefits to Brooks while it investigated her claim. During its investigation, Unum Life obtained (among other information) surgical logs from one of the hospitals at which Brooks had privileges indicating that she performed more surgeries in the period after her fall than she had before her fall. Brooks was unable to offer a satisfactory explanation for the information contained in these logs, and Unum Life stopped paying benefits to her. In Plaintiff's Complaint (the "Complaint"), Brooks asserts claims against Defendants for (1) breach of contract, (2) violations of the Texas Insurance Code, (3) violations of the DTPA, (4) bad faith, and (5) fraud. Defendants deny all liability to Brooks and have asserted a counterclaim to recover the $48,000 in benefits that were paid to her.

## III. **PROCEDURAL HISTORY**[1]

### A.    **The Court Enters Sanctions Against Brooks.**

As set forth more fully in the numerous discovery-related motions and responses filed by Defendants to date (Docket Nos. 16, 19, 21, 25-26, and 31), Brooks has repeatedly

---

[1]Unless otherwise indicated, all emphases are supplied by counsel.

**DEFENDANTS' MOTION FOR LITIGATION-ENDING SANCTIONS - Page 2**

frustrated Defendants' legitimate discovery efforts at every turn. On May 28, 2002, the Court

held a hearing on the pending motions in this case, made its displeasure with Brooks' actions

abundantly clear, and entered the Order (Docket No. 36), in which it denied most (if not all)

of the relief that Brooks was seeking, granted Defendants the majority of the relief that they

were seeking, and awarded Defendants over $4,000 for the attorneys' fees that they had

incurred as a result of Brooks' wrongful conduct. The Order did not, however, award any

attorneys' fees for Defendants' Motion to Compel and Supporting Brief (Docket No. 21) and

did not establish a deadline for Brooks to provide the additional discovery and pay the fee

award. By letter dated June 4, 2001,[2] Defendants requested clarification from the Court's case

manager regarding these issues, and on June 6, 2002, the Court entered its Amended Order

(Docket No. 38), which unambiguously required Brooks to provide the additional discovery

and pay the fee award to Defendants by July 15, 2002.

**B.      The Court Denies Brooks' Request for Rehearing.**

On June 10, 2002, Brooks filed Plaintiff's Objection to Defendants' Letter to the Court

Dated June 4, 2001, Plaintiff's Motion for Rehearing, and Plaintiff's Motion for Referral of

Discovery Matters to Magistrate Judge (the "Motion for Rehearing") (Docket No. 40), in which

she challenged the propriety of Defendants' letter to the case manager, sought rehearing of all

of the matters addressed at the May 28, 2002 hearing, and requested that all future discovery

disputes be referred to the Magistrate Judge. On June 18, 2002, Defendants filed their

---

[2]This letter should have been dated June 4, 2002.

**DEFENDANTS' MOTION FOR LITIGATION-ENDING SANCTIONS - Page 3**

response (Docket No. 41) to the Motion for Rehearing and submitted their proposed Order (1) Overruling Plaintiff's Objection to Defendants' Letter to the Court Dated June 4, 2001, (2) Denying Plaintiff's Motion for Rehearing, and (3) Denying Plaintiff's Motion for Referral of Discovery Matters to Magistrate Judge, which the Court entered (in the form submitted by Defendants) on July 15, 2002 (Docket No. 43).

## C.    Brooks Violates the Orders.

In light of the Court's stern warnings at the May 28, 2002 hearing and subsequent entry of the Order and the Amended Order (collectively, the "Orders"), Defendants fully expected Brooks to do everything possible to comply with the Orders and avoid the entry of further sanctions. Defendants' expectations, however, were not met. Rather, following the entry of the Orders, and in flagrant disregard of the Court and its authority, Brooks has not (1) provided Defendants with any amended or supplemental responses to the discovery requests that were the subject of Defendants' Motion to Compel and Supporting Brief (Docket No. 21), (2) produced any additional documents to Defendants (other than her 2000 and 2001 appointment books and selected credit card and bank statements), or (3) paid the sanctions award.[3]

Consequently, Defendants are still without the following information and documents that the Court has ordered Brooks to produce:

_____

[3]Defendants had originally noticed Brooks' deposition for June 24, 2002. Due to Brooks' failure to comply with her discovery obligations, Defendants were forced to re-schedule this deposition for July 30, 2002, by which time they expected to have received (1) the documents that the Court had ordered Brooks to produce and (2) the documents sought in Defendants' Second Set of Requests for Production (which were served on June 11, 2002). On July 29, 2002, Defendants filed Defendants' Second Motion to Compel and Supporting Brief (Docket No. 44), which addresses Brooks' wrongful refusal to fully respond to Defendants' Second Set of Requests for Production.

**DEFENDANTS' MOTION FOR LITIGATION-ENDING SANCTIONS - Page 4**

- detailed information regarding people with knowledge of relevant facts and Brooks' testifying experts (Interrogatories No. 1-2 and Request No. 14);

- complete information and documents regarding Brooks' claim for attorney's fees (Interrogatory No. 6 and Request No. 21);

- complete information and documents regarding Brooks' medical condition (Interrogatories No. 7 and 9 and Requests No. 11-12);

- complete information regarding Brooks' performance of podiatric surgeries (Interrogatory No. 11);

- copies of the documents in Brooks' possession, custody, or control that she has withheld because she believes that Defendants may already have copies (Requests No. 1-3, 5-7, 9, 11-72, 74-77, 80, and 82-88);

- documents regarding Brooks' other insurance coverage (Requests No. 7-10 and 34-38);

- documents, statements, and notes concerning various topics that are at issue in this action (Requests No. 13-17);

- Defendants' statements under Rule 26(b)(3) (Requests No. 18-19);

- documents regarding Brooks' alleged damages (Request No. 20);

- documents regarding the income and expenses of Brooks and her professional association (Requests No. 22-31);

- documents regarding Brooks' communications with the Texas Department of Insurance and its criminal fraud complaint against her (Requests No. 41-42);

- the documents identified by Brooks in her initial disclosures (Request No. 47); and

- documents concerning various allegations in the Complaint (Requests No. 50-79).

## IV. SUMMARY OF THE ARGUMENT

Brooks' conduct, both during the claims process and in this action, has been reprehensible. Brooks appears willing to do and say anything that she thinks she can get away with, and her actions to date confirm that she will acknowledge the truth about her activities only when she is confronted with evidence that Defendants are aware of the falsity of her representations. The information and documents that the Court has ordered Brooks to produce regarding her pre- and post-fall activities concern issues that are at the heart of this action, yet she has every incentive to withhold information that she knows will (if disclosed) be fatal to her claims. By virtue of her violation of the Orders and her refusal to otherwise comply with her discovery obligations, Defendants are entitled to an order striking Brooks' pleadings and entering judgment against her on both her claims and Defendants' counterclaims.

## V. ARGUMENT

### A.    The Court Has the Authority to Enter Litigation-Ending Sanctions.

Brooks is currently in violation of the Orders, and the Court thus has the discretion (if not the obligation) to assess appropriate sanctions against her. Under the plain language of Rule 37(b)(2), "[i]f a party ... fails to obey an order to provide or permit discovery," the Court has the authority to enter:

> (A)    An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B)   An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C)   An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

Fed. R. Civ. P. 37(b)(2).

In turn, Rule 26(g) requires that discovery responses and objections be signed, which constitutes a certification that the response or objection is consistent with the Federal Rules and is "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 26(g)(2). This rule further provides:

If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Fed. R. Civ. P. 26(g)(3).

In addition, the Court also has the "inherent power 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" Woodson v. Surgitek, Inc., 57 F.3d 1406, 1417 (5th Cir. 1995) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630 (1962)). This inherent power authorizes the entry of litigation-ending sanctions in instances of bad faith or willful abuse of the litigation process. Id.

Importantly, the Court is not constrained to impose the least onerous sanction available; instead, it may exercise its discretion to choose the most appropriate sanction under the circumstances.  See Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir. 1999).  In exercising this discretion, the Court may consider not only Brooks' conduct, but also the deterrent effect that a sanctions award would have on others.  As the Supreme Court has made clear, "the most severe in the spectrum of sanctions provided by statute must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976).

In determining whether to assess litigation-ending sanctions, the Court should consider (1) whether the misconduct resulted from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; (2) whether the misconduct is attributable to the client instead of the attorney; (3) whether the opposing party is substantially prejudiced by the misconduct; and (4) whether a less drastic sanction would substantially achieve the desired deterrent.  See FDIC v. Conner, 20 F.3d 1376, 1380-81 (5th Cir. 1994).  Application of these factors confirms that Defendants are entitled to the litigation-ending sanctions that they seek.

## B.    Litigation-Ending Sanctions Are Warranted.

1.    Brooks' Misconduct Results from Willfulness or Bad Faith.  Initially, it is clear that Brooks' misconduct results from willfulness or bad faith and is accompanied by a clear

record of delay or contumacious conduct. In the Orders, the Court (among other relief) granted Defendants' Motion to Compel and Supporting Brief (Docket No. 21) and ordered Brooks to pay the fee award and provide the compelled discovery no later than July 15, 2002. To date, however, Brooks has not paid the fee award, provided Defendants with any amended or supplemental discovery responses, or produced the majority of the documents in question. Brooks' violation of the Orders, standing alone, rises to the requisite level of bad faith. See Green v. John Chatillon & Sons, 188 F.R.D. 422, 424 (M.D.N.C.) ("Noncompliance with discovery orders can serve as a basis for a finding of bad faith."), aff'd, 165 F.3d 18 (4th Cir. 1998); see also Fuqua v. Horizon/CMS Healthcare Corp., 199 F.R.D. 200, 205 (N.D. Tex. 2000) (noting that a party's failure to review various boxes for responsive documents "was not substantially justified and can only be considered to have been designed to cause unnecessary delay and increase the cost of litigation by secreting potentially relevant and damning documents from Plaintiffs, thus forcing them to attempt to obtain evidence in support of their claims through other means").

In some respects, Brooks' violation of the Orders, when viewed in the context of her other conduct, should come as no surprise. From the inception of this case, Brooks has repeatedly violated her discovery obligations, actively impaired Defendants' efforts to obtain records from third parties, and required Defendants to expend an inordinate amount of time and expense addressing her wrongful conduct. By way of example, on May 7, 2002, counsel for Defendants received an unsolicited telephone call from Lucy Cascos ("Cascos"), who identified herself as the former office manager of Karen E. Brooks, D.P.M., P.A. (the "PA"),

DEFENDANTS' MOTION FOR LITIGATION-ENDING SANCTIONS - Page 9

the professional association through which Brooks conducted her medical practice. As set forth more fully in the Declaration of Lucille Cascos (the "Cascos Declaration"), a true and correct copy of which is attached hereto as Exhibit A:

- in early 2002, Brooks, both individually and through her staff, contacted numerous individuals with records regarding her and instructed such individuals not to send out any records in response to any subpoena that they may receive;

- in early 2002, Brooks, both individually and through her staff, contacted an overnight delivery company, falsely stated that they were employed by one of Brooks' medical providers, requested that subpoenaed records that were to be sent to Defendants' counsel be returned to such doctor's office, obtained the return of such records, and sent cookies to such doctor's staff for their help in obtaining the return of these records; and

- Brooks has taken numerous steps, such as beginning to use a cane and driving some distance to go out dancing, to continue to give the impression that she is disabled.

The Cascos Declaration thus contains further evidence of Brooks' willfulness and bad faith.

2.    The Misconduct Is Attributable to Brooks.    Similarly, the misconduct now complained of by Defendants is attributable to Brooks rather than her counsel. As set forth above, Brooks has personally and repeatedly instructed third parties to not comply with Defendants' subpoenas and made misrepresentations to a third-party delivery service to obtain the return of the records of one of her physicians. In addition, even though she personally attended the May 28, 2002 hearing (and thus heard the Court's oral rulings and its concerns regarding her conduct), Brooks has neither provided the majority of the information and documents in dispute nor paid the sanctions award.

3.  <u>Defendants Have Been Substantially Prejudiced</u>. Moreover, Defendants have been substantially prejudiced by Brooks' misconduct. By way of example, Defendants have paid Brooks $48,000 in benefits to which she was not entitled and which they would not have paid had they known the truth about her activities. Brooks' failure to provide Defendants with the information and documents set forth above has required Defendants to incur substantial time and expense in obtaining (admittedly incomplete) information about such activities from third parties when it should have received complete information at little or no expense directly from Brooks. Defendants have also been forced to delay Brooks' deposition on at least two occasions due to their inability to obtain the necessary information and documents from her (Exhibit G). The information and documents sought by Defendants are vital to their defense, and Brooks' failure to disclose such items cannot be condoned.

4.  <u>Less Drastic Sanctions Will Not Achieve the Desired Deterrent</u>. Finally, less drastic sanctions will not substantially achieve the desired deterrent. Much of the information that Brooks has been ordered (but has to date declined) to produce goes to the heart of this action. Giving Brooks additional time or somehow absolving her violation of the Orders would effectively reward her failure to disclose information that she knows is fatal to her claims. The conduct of Brooks warrants the strongest available sanction, not only as a lesson to her, but also as a lesson to others who would flagrantly violate the Court's orders.[4] <u>See</u>

---

[4]Indeed, other courts have found little difficulty in entering litigation-ending sanctions for comparable conduct. See Martin v. DaimlerChrysler Corp., 251 F.3d 691, 694-95 (8th Cir. 2001) (affirming the district court's dismissal of the plaintiff's Title VII claims where she failed to disclose other lawsuits and a health care professional who had treated her); Bonaventure v. Butler, 593 F.2d 625, 626 (5th Cir. 1979) ("Deliberate, repeated refusals to comply with discovery orders have been held to justify the use of this ultimate sanction.").

<u>**DEFENDANTS' MOTION FOR LITIGATION-ENDING SANCTIONS**</u> - Page 11

Carey, 186 F.3d at 1021 (affirming the district court's striking of the defendants' pleadings and observing that the defendants' efforts "to deny and conceal evidence, and to provide false and misleading testimony, seriously threatened the integrity of the trial as well as the judicial process in general").  As one judge recently observed:

> Finally, the Court concludes that a less severe sanction simply would not be sufficient. Significant monetary sanctions have already been imposed against Horizon for its conduct during discovery, and they have been obviously been unsuccessful in deterring Horizon's misconduct.  Furthermore, anything less than striking Horizon's pleading will likely require both Plaintiffs and the Court to expend countless hours determining whether Horizon has produced all discoverable documents.  And, the Court is mindful of the fact that it is not concerned with just a few unrevealed and unreviewed documents, but rather a multitude of them.  Where, as here, a party simply fails to review until the eleventh hour thousands of documents that might be responsive to outstanding discovery requests and orders granting motions to compel, despite the fact that significant monetary sanctions have already been imposed against that party for its previous misconduct during discovery, the Court concludes that litigation-ending sanctions are the only effective remedy.

Fuqua, 199 F.R.D. at 206.  The same analysis is appropriate here.


**C.   Defendants Are Entitled to Recover Their Expenses, Including Reasonable Attorney's Fees, for Making This Motion and Obtaining the Information and Documents that Brooks Has Not Produced.**

In addition to the relief requested above, Defendants are also entitled to recover their expenses, including reasonable attorney's fees, incurred in the making of this motion.  See Conner, 20 F.3d at 1380 ("For the violation of a discovery order, a district court can, among other things, order the dismissal of a claim and the payment of the opposing party's expenses, including attorney's fees."); see also Fed. R. Civ. P. 26(g)(3) and 37(b)(2). Defendants are also entitled to reimbursement for the attorney's fees and expenses that they have incurred in

DEFENDANTS' MOTION FOR LITIGATION-ENDING SANCTIONS - Page 12

obtaining the information and documents that Brooks has been ordered to provide but has not yet produced.

## V. <u>CONCLUSION</u>

Defendants thus request that Brooks' pleadings be stricken and that a default judgment be entered against her on all issues (including the issue of her liability to Defendants for their actual damages). Defendants further request that, at the trial on the issue of their damages, Brooks not be allowed to present any witnesses or documentary evidence. Defendants further request that they recover their expenses, including reasonable attorney's fees, incurred in the making of this motion and obtaining the information and documents that Brooks has been ordered to provide but has not yet produced.

Respectfully submitted,

By: _____

Andrew C. Whitaker
State Bar No. 21274600
S.D. No. 14309
Attorney-In-Charge

OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271

FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

## CERTIFICATE OF CONFERENCE

By letter dated July 25, 2002 (Exhibit B), Defendants provided Mark Di Carlo, counsel for Brooks, with a draft of this motion to determine whether he agreed with or opposed the relief sought herein. By letter dated July 25, 2002 (Exhibit C), Mr. Di Carlo requested almost four business days (until the end of the day on July 30, 2002) "to address your motion and the contents of the motion." By letter dated July 25, 2002 (Exhibit D), Defendants' counsel noted additional examples of Brooks' wrongdoing but nonetheless agreed to give Mr. Di Carlo another day. By letter dated July 26, 2002 (Exhibit E), Mr. Di Carlo requested a copy of the Court's signature page to the Amended Order, which he purportedly did not receive. By letter dated July 26, 2002 (Exhibit F), Defendants' counsel provided Mr. Di Carlo with a copy of both pages of the Amended Order, pointed out the reasons why he should have known of the Amended Order's terms, and inquired when Brooks planned to comply with the Orders. Since agreement could not be reached, this motion is presented to the Court for determination.

_Andrew C Whitaker_

Andrew C. Whitaker

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent by Federal Express to Mr. Mark A. Di Carlo, La Solana Building, 722 Elizabeth Street, Corpus Christi, Texas 78704, on this 30th day of July, 2002.

_Andrew C Whitaker_

Andrew C. Whitaker

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

KAREN BROOKS,                          §
                                       §
        Plaintiff,                     §
                                       §
v.                                     §        C.A. No. B-01-052
                                       §
UNUMPROVIDENT CORPORATION              §
and UNUM LIFE INSURANCE                §
COMPANY OF AMERICA,                    §
                                       §
        Defendants.                    §

## DECLARATION OF LUCILLE CASCOS

     1.     My name is Lucille Cascos. I have personal knowledge of the facts stated

below, and they are all true and correct. From March 2001 to April 4, 2002, I was employed

as the office manager for Karen E. Brooks, D.P.M., P.A. (the "PA"). I handled various

administrative duties, including payroll, billing, hiring, scheduling, and insurance matters.

     2.     While I worked for the PA, I became aware that Karen Brooks, D.P.M. ("Dr.

Brooks") had made a claim for disability benefits with Unum Life Insurance Company of

America ("Unum Life") and that a lawsuit had been filed about this claim. I saw her do many

things to prevent the records of third parties from being given to Unum Life in connection with

that lawsuit. For example, in mid-February 2002, I received a telephone call from Susan

Ander, M.D., who told me that she was both a friend of and had provided treatment to Dr.

Brooks and had recently received a subpoena requesting records regarding Dr. Brooks. I told

DECLARATION OF LUCILLE CASCOS - Page 1



Dr. Brooks about this, and she told me to call Dr. Ander and tell her not to send out any records in response to the subpoena.

3.  Dr. Brooks then handed Griselda Alaniz ("Alaniz"), who was another one of the PA's employees, and me a list of individuals and told us to tell them not to send out any records regarding Dr. Brooks in response to any subpoenas that they might receive. Dr. Brooks further told us to tell these individuals that her attorneys were working on "paperwork" to prevent the disclosure of these records.

4.  I began contacting the individuals on the list that Dr. Brooks gave me. On the afternoon of February 19, 2002, I spoke with Nelda Solis, who works for John Wells, M.D. at Valley Pain Center. Ms. Solis told me that she had sent a package earlier that day by Airborne Express to Unum Life's counsel containing Dr. Wells' records regarding Dr. Brooks in response to the subpoena. Dr. Brooks was standing right next to me, and she took the receiver from me and asked Ms. Solis to give her the tracking number for the Airborne Express package that Ms. Solis had sent. After obtaining the tracking number from Ms. Solis, Dr. Brooks told me to call Airborne Express, pretend that I was Ms. Solis, and request that the package be returned to Dr. Wells' office. Although I was uncomfortable with Dr. Brooks' request, I called Airborne Express and spoke with one of its representatives. At Dr. Brooks' instruction, I told the representative that I was Ms. Solis. Dr. Brooks also instructed me to tell the Airborne Express representative that I needed the package to be returned because I had forgotten to include some important documents. Before I could comply with Dr. Brooks' instruction, the Airborne Express representative began asking me questions, such as the address

from which the package had been sent, that I was unable to answer. I then handed the receiver to Dr. Brooks and told her that "I'm not going down for you," or words to that effect. Dr. Brooks then hit me on the left arm with the receiver.

5.      Dr. Brooks then told the Airborne Express representative that she was Ms. Solis and needed to have the package returned because she had failed to include some important documents. Dr. Brooks also provided the Airborne Express representative with the address to which to return the package. Dr. Brooks then told me that she had convinced Airborne Express to return the package and requested that I order a cookie tray to be delivered to Ms. Solis as thanks for her assistance. I ordered the cookie tray, which Dr. Brooks picked up and delivered to Ms. Solis.

6.      At Dr. Brooks' instruction, I telecopied the motion to quash that was filed by her counsel to four or more of the individuals identified on the list that Dr. Brooks gave me.

7.      In mid-February 2002, Dr. Brooks told me that she had just met with her attorney, who told her that she was "too upbeat" and was not going to win the sympathy of any jury. The next day, Dr. Brooks showed up at work with a cane.

8.      On one or more occasions, I invited Dr. Brooks to join me and my husband at a nightclub located in Brownsville. Dr. Brooks told me she did not want to join us because she was afraid of "blowing her case" if she was seen dancing. Dr. Brooks also told me that she went to a club in Pharr when she wanted to go dancing.

9.      At the time that I was hired, Dr. Brooks told me that she would have her office open and see patients on a part-time basis but would move to full-time once her disability

**DECLARATION OF LUCILLE CASCOS - Page 3**

lawsuit was settled. Throughout the entire time that I worked for Dr. Brooks, she continued

to see patients in her office and perform surgeries, both at the office and in outpatient clinics

and hospitals.

     I declare under penalty of perjury that the foregoing is true and correct.

     EXECUTED on this 21st day of May, 2002.

Lucille Cascos

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitake@figdav.com

July 25, 2002

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas  78404

Re:     C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and*
        *UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

Following is a draft of Defendants' Motion for Litigation-Ending Sanctions.  Please review this draft and advise whether you agree with or oppose the relief sought in this motion.  Please be advised that if we do not hear from you by 4:00 p.m. today, we will assume that you oppose this motion and will so advise the Court.

Sincerely,

Andrew C. Whitaker

ACW/krp
Enclosure

EXHIBIT B

# Mark A. Di Carlo

### Attorney at Law
La Solana Building
722 Elizabeth St.
Corpus Christi, Texas 78404
(361) 888-6968
FAX (361) 888-6981

July 25, 2002

**VIA TELEFAX (214) 939-2090**
Mr. Andrew C. Whitaker
FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796

      Re:    *C.A. No. B-01-052; Karen Brooks v. UmumProvident Corporation and UNUM Life Insurance Company of America*

Dear Mr. Whitaker:

I got back from court in Cause No. 02-1538-1 at about 11:30 A.M. and received a "Defendant's Motion for Litigation-Ending Sanctions." See attached **Exhibit A .**

I have not yet had an opportunity to review your letter and Motion to Compel you faxed over yesterday, July 24, 2002 at about 5:00 p.m., at about the time my office closes. See, **Exhibit B.**

I object to your faxing motions without adequate time to review or address them. The obvious purpose of you doing this is in order to prevent me from reviewing your motions and addressing your motions. You are attempting to circumvent the rules regarding conferring with opposing counsel regarding motions.

In addition, I am not in insurance defense attorney. My practice requires me to talk to current and prospective clients which interrupt my work and I cannot do things in a two or three hour periods. I may have new clients call. Presently, I was in the middle of preparing a summary judgment brief in the case of Marta Huerta v. Jo Anne Barnhart for the Corpus Christi Division of the Southern District which is due on August 8, 2002. I will need until Tuesday at 5:00 P.M. to address your motion and the contents of the

EXHIBIT _C_

motion.

Also, can you please tell me why you did not supply most of the requested documents in the Sean Sullivan deposition which we took in Austin on July 12, 2002. You posed no objections to the requested documents. I will therefore request that I receive all the requested documents by Monday at 5:00 P.M. or that you reply regarding why and on what grounds you are opposed to my motion to compel and request for sanctions.

Sincerely,

Mark A. Di Carlo

# EXHIBIT "A"

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitaker@fdglav.com

July 25, 2002

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas  78404

Re:    C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and
       UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

Following is a draft of Defendants' Motion for Litigation-Ending Sanctions. Please review this
draft and advise whether you agree with or oppose the relief sought in this motion.  Please be
advised that if we do not hear from you by 4:00 p.m. today, we will assume that you oppose
this motion and will so advise the Court.

Sincerely,

Andrew C. Whitaker

ACW/krp
Enclosure

# EXHIBIT "B"

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number                                              Writer's E-Mail Address

(214) 939-2076                                                           awhitaker@figdav.com

July 24, 2002

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas 78404

Re:    C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and
        UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

Following is a draft of Defendants' Second Motion to Compel and Supporting Brief. Please
review this draft and advise whether you agree with or oppose the relief sought in this motion.
Please be advised that if we do not hear from you by 2:00 p.m. on July 25, 2002, we will
assume that you oppose this motion and will so advise the Court.

Sincerely,

Andrew C. Whitaker

Andrew C. Whitaker

ACW/krp
Enclosure

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitake@figdav.com

July 25, 2002

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas 78404

Re:    C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and*
       *UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

We are in receipt of your letters dated July 25, 2002 regarding Defendants' Second Motion to Compel and Supporting Brief (the "Motion to Compel") and Defendants' Motion for Litigation-Ending Sanctions (the "Motion for Sanctions"). Initially, we emphatically disagree that we "are attempting to circumvent the rules regarding conferring with opposing counsel regarding motions." We provided you with almost a full day of notice with respect to the Motion to Compel and over six hours of notice on the Motion for Sanctions, which far exceeds the notice that you have provided us with respect to the motions that you have recently filed on behalf of Dr. Brooks:

| Motion | Conference | Served |
|---|---|---|
| Motion and Notice to Quash Subpoenas Deuces Tecum of: Susan Ander, M.D.; Helson Pacheco, M.D.; Madhaven Pisharodi, M.D., P.A.; William Valverde, M.D.; Brownsville Medical Center; First Rio Valley Medical Center; HCA Valley Regional Medical Center; Texas Back Institute; Valley Pain Center; David K. Drefke, PC.; John Williams P.C., CPA; and Zamora & Terrones, CPA | By telecopy at 11:12 a.m. on 2/15/02 requesting a response by noon on 2/15/02 | 2/15/02 |



Mr. Mark A. Di Carlo
July 25, 2002
Page 2

| Motion | Conference | Served |
|---|---|---|
| Motion and Notice to Quash Subpoenas Deuces Tecum of: McAllen Medical Center, Dolly Vinsant Memorial Hospital, Healthsouth-Brownsville Surgicare, HCA Valley Regional Medical Center, and, Brownsville Medical Center | No conference whatsoever | 2/20/02 |
| Plaintiff's Motion to Compel Responses to Request for Production | By telecopy at 12:45 p.m. on 5/21/02 | 5/21/02 |
| Plaintiff's Motion to Compel Defendant's Answers to Interrogatories | By telecopy at 2:49 p.m. on 5/24/02 | 5/24/02 |

Simply put, the notice that we have provided to you far exceeds the notice that you have provided to us.

Moreover, we are at a loss to understand your alleged need for additional time. By way of example, in the Motion to Compel, we are seeking to challenge discovery responses that were served only one week ago and that contain (1) numerous objections which the Court has found in similar circumstances to be meritless and (2) the repeated assertion (which we believe to be patently false) that Dr. Brooks does not have any responsive documents. If Dr. Brooks were truly willing to comply with her discovery obligations, she should have provided Defendants with the requested documents without requiring them to prepare the Motion to Compel.

In any event, if we thought that there was a possibility that Dr. Brooks would voluntarily provide all of the relief sought in both the Motion to Compel and the Motion for Sanctions, we would be willing to provide you with additional time. However, in light of (1) the inordinate amount of difficulty that we have encountered to date in obtaining discovery and (2) the fact that we were required to incur the time and expense associated with preparing these motions, we are unwilling to further delay the resolution of these matters. Please be advised that if you do not agree, by 3:00 p.m. tomorrow, with all of the relief that we are requesting, including the payment of the attorney's fees that we have incurred in preparing these motions, we will file the Motion to Compel and the Motion for Sanctions with the Court.

Finally, your concerns regarding the production of documents by Sean Sullivan are meritless. As you are undoubtedly aware, Mr. Sullivan produced documents at his deposition and unambiguously

Mr. Mark A. Di Carlo
July 25, 2002
Page 3

testified that he did not have any of the other documents that you requested.  In the future, please refrain from attempting to justify the wrongdoing of you and your client by improperly alleging nonexistent wrongdoing by others.

Sincerely,

Andrew C Whitaker

Andrew C. Whitaker

ACW/krp

# Mark A. Di Carlo

### Attorney at Law
La Solana Building
722 Elizabeth St.
Corpus Christi, Texas 78404
(361) 888-6968
FAX (361) 888-6981

July 26, 2002

**VIA TELEFAX (214) 939-2090**
**CERTIFIED MAIL, RRR**
Mr. Andrew C. Whitaker
FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796

> Re:    *C.A. No. B-01-052; Karen Brooks v. UnumProvident Corporation and UNUM Life Insurance Company of America*

Dear Mr. Whitaker:

I began to review your "Defendant's Motion for Litigation-Ending Sanction" today at about 11:30 a.m. I received the following two pages on June 6, 2002. This is confirmed by my fax identification sheet and the cover letter received by the United States District Court. See A, B, C.

Was there an additional page attached to the order which was faxed to you and which was not faxed to me? If there was please forward so I might advise my client of the present circumstances.

I am going to have to request, again, additional time in this matter.

Sincerely,

Mark A. Di Carlo

EXHIBIT_E_

38

United States District Court
Southern District of Texas
ENTERED

JUN 0 5 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

KAREN BROOKS,　　　　　　　§
　　　　　Plaintiff,　　　　　　§
　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　§　　　　Civil Action B-01-052
　　　　　　　　　　　　　　　§
UNUMPROVIDENT CORPORATION and §
UNUM LIFE INSURANCE COMPANY　§
OF AMERICA　　　　　　　　　§
　　　　　Defendants.　　　　　§

**AMENDED ORDER**

BE IT REMEMBERED that on June _____5_____,2002, the Court **AMENDED** its Order of May 28, 2002 [Dkt. No. 36] awarding attorneys' fees and compelling discovery in order to clarify the amounts awarded and to set deadlines by which attorneys' fees must be paid and the compelled discovery must be provided.

In its earlier order, the Court denied Plaintiff's Motions to Quash [Dkt. Nos. 22, 23, 27, 28 & 29]; granted Defendants' Motion to Compel [Dkt. No. 21]; denied Defendants' Motion for Attorneys' Fees [Dkt. No. 19]; denied Plaintiff's Motion for Attorneys' Fees [Dkt. No. 20]; granted Defendants' Motion to Compel [Dkt. No. 16]; and granted Defendants' Motions for Attorneys Fees relating to the Motions to Quash [Dkt. Nos. 25, 26 & 31] in the amount of $4137.00 based on 19.7 hours worked at a rate of $210 per hour. At the hearing, the Court also granted attorneys' fees associated with the Motion to Compel [Dkt. No. 21] in the amount of $1,470.00 based on 7 hours worked at a rate of $210 per hour. **SO ORDERED.**



# UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF TEXAS

MICHAEL N. MILBY
CLERK OF COURT
P O BOX 61010
HOUSTON, TEXAS 77208

www.txs.uscourts.gov

06/06/02

To:   Mark Anthony Di Carlo (aty)

Re:   Notice of Entry of Order or Judgment

---

Enclosed Order or Judgment entered in:

case number:   1:01-cv-00052

instrument number:   38

If after three attempts this fax fails, then we will print this notice and mail it to you. For questions, please call (713) 250-5768.

Number of pages including cover sheet:   2

Printer/Fax/Copier/Scanner

Fax History Report for
Mark A. Di Carlo
512-888-6981
Jun-6-02 11:43am

Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Jun 6 | 11:42am | Received | 713-250-5434 USDC | 1:28 | 2 | OK |

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitake@figdav.com

July 26, 2002

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas 78404

Re:     C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and
        UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

We are in receipt of your three letters dated July 26, 2002 regarding the Motion to Compel and the Motion for Sanctions. Perhaps we could address these (and other) matters more expeditiously if you would simply take my telephone calls. Oh well.

Please be advised that, in light of your comments in one of your letters of today regarding the Motion to Compel, we have finalized such motion and sent it to both the Court and you by overnight delivery.

With respect to your latest letter, following is a copy of both pages of the Amended Order, which we received from the Clerk's office. As you will recall, the Order entered May 30, 2002 (Docket No. 36) did not address some of the attorneys' fees that were seemingly awarded at the hearing and did not contain a deadline for Dr. Brooks to provide the additional discovery and pay the sanctions award. Accordingly, by letter dated June 4, 2002, we complained of these deficiencies, and in response, the Court promptly entered the Amended Order. When we initially received only the first page of the Amended Order, we noted that it (1) included the additional attorneys' fees that we had requested but (2) did not include a signature page for Judge Tagle. We promptly called the Clerk's office and obtained a copy of the entire Amended Order. In light of your admitted receipt of the first page of the Amended Order, why did you not do the same?

In addition, you were on notice of the relief set forth in the Amended Order through your receipt of Defendants' Response to (1) Plaintiff's Objection to Defendants' Letter to the Court Dated June 4, 2001, (2) Plaintiff's Motion for Rehearing, and (3) Plaintiff's Motion for Referral of Discovery Matters to Magistrate Judge, which provides in pertinent part:



Mr. Mark A. Di Carlo
July 26, 2002
Page 2

> Initially, Brooks' challenges in the Objection to the propriety of the letter dated June
> 4, 2001 from Defendants' counsel to the Court's case manager all fail. According to
> Brooks, this letter "presents a number of issues which are unclear" and "appears to
> request relief from the Court not granted previously regarding issues not discussed
> with the counsel for the Plaintiff." <u>As set forth in such letter, Defendants were
> requesting the Court to clarify the Order entered May 30, 2002 (Docket No. 36),
> which (1) did not address some of the attorneys' fees that were seemingly awarded
> at the hearing and (2) did not contain a deadline for Brooks to provide the additional
> discovery and pay the sanctions award.</u> Notwithstanding Brooks' claims to the
> contrary, Defendants had previously requested the relief sought in this letter through
> the motions that they had filed and the proposed orders that they had submitted. In
> their letter, Defendants offered to resolve these matters through either a conference
> call or an amended order and to prepare a formal motion if the Court deemed it
> necessary. <u>On June 5, 2002, the Court entered the Amended Order (Docket No. 38),
> which provided the precise clarification sought by Defendants in their counsel's
> letter.</u> Brooks' challenges to this letter thus fail, and the Objection should be
> overruled.

(Emphasis added.)

All told, we have no idea what documents you have received from the Court. What we do know,
however, is that through your receipt of the first page of the Amended Order, you should have been
able (as were we) to recognize that there should be a signature page to the Amended Order and
obtain a complete copy of such order from the Clerk.

In addition, both you and your client were aware, through your attendance at the hearing on May 28,
2002, that the Court had granted Defendants' Motion to Compel and Supporting Brief and entered
sanctions against Dr. Brooks. Two months have now elapsed since that hearing, yet we have not
received from you any amended or supplemental discovery responses, the overwhelming majority
of the documents in dispute, or the sanctions check. Did you and Dr. Brooks ever plan to comply
with the Court's orders and pay the sanctions award? If so, by when?

Sincerely,

Andrew C. Whitaker

ACW/krp
Enclosure

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number

(214) 939-2076

Writer's E-Mail Address

awhitake@figdav.com

July 29, 2002

**VIA TELECOPY**
Mr. Mark A. Di Carlo
La Solana Building
722 Elizabeth Street
Corpus Christi, Texas  78404

Re:   C.A. No. B-01-052; *Karen Brooks v. UnumProvident Corporation and
       UNUM Life Insurance Company of America*

Dear Mr. Di Carlo:

By letter dated June 20, 2002, we provided you with a copy of the Amended Notice to Take
Deposition of Plaintiff Karen Brooks, which scheduled her deposition by agreement for 9:00
a.m. on Tuesday, July 30, 2002 in your offices.  At the time we noticed this deposition, we
expected to have received, well in advance of July 30, (1) the information and documents that
the Court had ordered Dr. Brooks to produce and (2) the documents sought in Defendants'
Second Set of Requests for Production.  As evidenced by our recent filing of Defendants'
Second Motion to Compel and Supporting Brief and forthcoming filing of Defendants' Motion
for Litigation-Ending Sanctions, Dr. Brooks has continued her pattern and practice of refusing
to comply with her discovery obligations.  In light of Dr. Brooks' refusal to provide us with the
information and documents to which we are entitled, we have no choice but to postpone her
deposition yet again.  In the event that the Court does not grant our request for litigation-ending
sanctions, we will request Judge Tagle to order Dr. Brooks to appear for deposition between
one and two weeks after the production of all of the information and documents in dispute.

Please advise if you have any questions.

Sincerely,

Andrew C. Whitaker

ACW/krp

EXHIBIT   G