47

United States District Court
Southern District of Texas
FILED

AUG 0 9 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-01-052 |
| | § | |
| UNUMPROVIDENT CORPORATION | § | |
| AND UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA | § | |

**PLAINTIFF'S OBJECTIONS AND RESPONSE TO DEFENDANTS "RETURN
OF PRIVILEGED DOCUMENT AND PROTECTIVE ORDER"**

1.      The defendant asserts that the letter to Monaghan was sent to plaintiff by accident.  Plaintiff has no factual knowledge that the letter to Monaghan was sent by accident.  The letter to Monaghan had a "fax cover sheet" addressed to Di Carlo.  See Fax cover sheet, **Exhibit A**.  Di Carlo believed that the letter was faxed to Di Carlo as an attempt to reduce the settlement value of the case at mediation.  The issue only came to the fore because Di Carlo believed that the letter contained a phrase regarding Dr. Brooks ex-employee stealing documents.

2.      Plaintiff objects to the filing of the "confidential letter"  with the court.  The filing of the letter and correspondence from plaintiff's counsel gives rise to the issue that the defendant has waived the confidentiality of the contents of the letter.

3.      The plaintiff objects to the filing of Di Carlo's letter dated August 6, 2002.  The letter places Di Carlo in the position of not being able to return Whitaker's letter to UNUM due to ethical and attorney client issues.  Di Carlo's August 6th letter indicates

that a good faith negotiation or attempts to confer regarding the letter was never made by the defendant but was made by the plaintiff.

4.      Defense counsel's filing of Di Carlo's August 6, 2002 letter and its paraphrasing of the Whitaker's letter to Monaghan waives the objections to the contents of the letter because the most crucial portion of the contents of the letter has been "published" for the record: that the defense counsel known of criminal acts committed against the plaintiff and failed to notify the court, the plaintiff, or the police.

5.      Rule 1.05 of the Texas Bar Rules cover "confidentiality of information." A true and correct copy is attached as **Exhibit B** Rule 1.05(f) states: "A lawyer should reveal confidential information when required to do so by Rule 3.03(a)(2), 3.03(b) or by Rule 4.01(b).

6.      Rule 4.01(b) states a lawyer shall not knowingly fail to disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client. Rule 4.01(b).

7.      Rule 3.03(a)(2) states that a lawyer shall not knowingly fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act.

8.      The letter to Monaghan which the defendant has supplied to the court and the paraphrasing of the letter establishes that Mr. Whitaker was: 1) Possibly a party to a criminal act; 2) Failed to disclose to this court the criminal act. Mr. Whitaker is in

Newfolder2/Plaintiff's Objection to Protective Order-Brooks/8/8/02

violation of Rule 1.05 and Rule 4.01(b) of the Texas Bar Rules.

9.      The defendant's motion also establishes that Mr. Whitaker filed an affidavit with

the court asking for a remedy based on an affidavit of a woman who was on parole and/or

was incarcerated for embezzlement and     who had committed a criminal and/or

fraudulent act against Dr. Brooks.

10.     The defendant asserts that Di Carlo violated ethical duties and attaches two

articles from the American Bar Association.   First, Di Carlo is not a member of the

American Bar Association.   Second, these articles do not address criminal and/or

fraudulent conduct within the confidential materials.

11.     Defense Counsel Whitaker filed this motion without adequate conference with

the plaintiff.  Plaintiff's counsel's office was faxing the attached letter dated August 7,

2002 to Mr. Doug Butler when he received the Defendant's Motion for Protective Order

filed with the court.  See **Exhibit C** a letter faxed to Doug Butler.  Whitaker filed this

motion without even answering Di Carlo's questions regarding possible theft by Cascos.

12. Mr. Whitaker's protective order motion contained  a sealed copy of the Monaghan

letter and includes admission that "Cascos" was in a penitentiary in the middle 90's for

embezzlement and admission that he knew a "trove" of documents were taken or copied

from Ms. Brooks office.   In addition, Mr. Whitaker admits that he knew of the

embezzlement charge in his motion and still filed an affidavit with this court regarding

her and still failed to notify the court of defense counsel of the act of her taking or copying Dr. Brooks' documents.        Instead, Mr. Whitaker  attempted to threaten undersigned counsel to conceal  evidence of what appears to be a crime consistent with the former acts of Cascos.

13.    It is incredulous  that Mr. Whitaker requests relief that the plaintiff's counsel  was not to tell my client a doctor that documents were stolen and/or not to provide her written evidence from the court.

14.  Undersigned counsel was not aware that the amended order of this court contained deadlines because the second page of the order was not faxed to him.  Undersigned counsel did not believe that a date was set by the court for compliance and only became aware recently.  Undersigned counsel intends to comply with all court orders.  Plaintiff's counsel has also been burdened by numerous motions filed by the defendant .

15.  The  record reflects the following discovery abuses by the defendant:

1)  The defendant has practically totally failed to answer requests for production - the plaintiff's motion to compel is pending.  The defendant was given the additional advantage of admonishments regarding discovery disputes at the initial hearing and still failed to comply in any manner.

2)  The defendant  has practically totally failed to answer the interrogatories - the plaintiff's motion to compel is still pending.  The defendant was given the additional advantage of admonishments regarding discovery disputes at the initial hearing.  The

Newfolder2/Plaintiff's Objection to Protective Order-Brooks/8/8/02  ,

defendant was given the additional advantage of admonishments regarding discovery disputes at the initial hearing and still failed to comply in any manner.

3) The defendant has cancelled Karen Brooks deposition on two occasions for no valid reason. The plaintiff had intended to turn over every discovery document in his possession, other than attorney client, and to provide authorizations to the defendant at the deposition of Dr. Brooks on July 30, at 9:00 A.M.

4) The defendant requested documents from Sean Sullivan, an investigator from UNUM, at his deposition on July 12, 2002. The defendant did not object to the requests and yet did not provide most of the requested documents. The defendant has stated in writing that the does not intend to provide such documents despite their failure to object or provide the requested documents.

The plaintiff has not had an opportunity to bring most of these matters before the court.

The plaintiff prays for the following:

The court deny the Defendant's Request for Return of Privileged Document and Protective Order.

The plaintiff prays the court grant attorney fees to the plaintiff for the research and filing of the motion: 8 hours of work at $120.00 per hour for a total of $960.00.

The plaintiff prays the court conduct an inquiry regarding Mr. Whitaker's knowledge of the theft or copying of a "trove" of documents.

## CERTIFICATE OF SERVICE AND
## CERTIFICATE OF CONSULTATION

These matters have been discussed with Mr. Butler and Mr. Whitaker both in writing and by telephone and have not been resolved. Plaintiff's counsel served this motion on Andrew Whitaker by via telefax and by certified mail on this 8th day of August, 2002.

Respectfully submitted,

Mark A. Di Carlo
722 Elizabeth St.
Corpus Christi, Texas 78404
(361) 888-6968
(361) 888-6981 Fax
State Bar No.: 05812510
Southern District I.D. No. 6839

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-01-052 |
| | § | |
| UNUM PROVIDENT CORPORATION | § | |
| AND UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA | § | |

## ORDER

The foregoing Plaintiff's Objection and Response to Defendant's "Return of

Privileged Document and Protective Order" came to be considered on the _____ day of

_____, 2002 and it appears to the court that it should be GRANTED/DENIED.


_____
Judge Presiding


Newfolder2/Plaintiff's Objection to Protective Order-Brooks/8/8/02

# EXHIBIT "A"

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000

Writer's Direct Dial Number
214-939-2076

Telecopiers. 214-939-2090
214-939-2091

## FAX INFORMATION SHEET

August 1, 2002

**TO:**            **Mr. Mark A. Di Carlo**

**COMPANY:**

**FAX NUMBER:**      (361) 888-6981

**PHONE NUMBER:**    (361) 888-6968

FROM:      Andrew C. Whitaker

NUMBER OF PAGES: _5_ (including transmittal page)

CLIENT/MATTER NO: 76/07555/0258

### WARNING:  PRIVILEGED AND CONFIDENTIAL MATERIAL

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS CONFIDENTIAL, PRIVILEGED, AND EXEMPT FROM DISCLOSURE TO THIRD PERSONS AND IS INTENDED SOLELY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE RECIPIENT OR READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY RETENTION. DISSEMINATION, DISTRIBUTION, COPYING, OR UNAUTHORIZED USE OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY TELEPHONE (214-939-2000), AND ALSO RETURN THE FACSIMILE AND ANY COPIES THEREOF TO THE SENDER AT THE ABOVE ADDRESS VIA THE U.S POSTAL SERVICE. ALL POSTAL EXPENSES WILL BE PAID BY SENDER. THANK YOU.

# EXHIBIT "B"

RULES
Rule 1.04

or services
ugustson v.
.AN-Chile),

ecover for
red where
onment of
v Linea
ile), C.A.5

ey s cause
rights and
l fee split,
d attorney,
as cocoun-
t was void,
public poli-,
e the only
summary
int of sum-
Kittleman

tween two
not dis-
:ment ille-
client was
of attorney
f contract.
1996) 941
rit denied,
for writ of

en a law
lawyer as
ing termi-
it for any
nployee or
al services
his former
his subse-
iployer, as
e percent-
yer would
ine during
ner Texas
DR 2-107
ile) Eth-

, division

tween at-
restigative
ional dis-
lid solely
ofessional
ist 1993)
writ de-

## RULES OF PROFESSIONAL CONDUCT

**Rule 1.05**

**T. 2, Subt. G, App. A**
**Art. 10, § 9**

**7. Referral agreements**

Court applied standard relating to referral fee set forth in disciplinary rules in effect at time referral fee agreement was executed rather than new Disciplinary Rules of Professional Conduct in effect at time of appeal. Polland & Cook v. Lehmann (App. 1 Dist. 1992) 832 S.W.2d 729, rehearing denied, writ denied, rehearing of writ of error overruled.

Party asserting violation of disciplinary rule concerning referral agreements between attorneys has burden of negating exception to mandatory disclosure requirement that can arise when there is no disclosure of client confidences to forwarding attorney and no financial impact on client. Bond v. Crill (App. 5 Dist. 1995) 906 S.W.2d 103.

Disclosure of referral agreement to client would not be required absent showing that client confidences were disclosed to receiving attorney or that the agreement had financial impact on client. Bond v Crill (App. 5 Dist. 1995) 906 S.W.2d 103.

**8. Referral fees**

Agreed judgment in attorney disciplinary proceeding, prohibiting attorney from accepting new employment but allowing him to recover referral fees, did not conflict with former DR 2-107 (see, now, this rule) proscribing division of attorney's fees with nonpartner or nonassociate except under stated circumstances; former DR 2-107 does not require that referring attorney be employed by the client in order to collect a referral fee. Musslewhite v. State Bar of Texas (App. 14 Dist. 1990) 786 S.W.2d 437, writ denied, rehearing of writ of error overruled, certiorari denied 111 S.Ct. 2891, 501 U.S. 1251, 115 L.Ed.2d 1056.

Referral fees are not contrary to public policy, even when referring attorney performs no actual services. Chachere v. Drake (App. 13 Dist. 1994) 941 S.W.2d 193, rehearing overruled, writ denied, petition for rehearing of application for writ of error 130(d) filed.

**9. Collection of fee**

A lawyer may not sell accounts receivable to a third party factoring company unless each client involved has previously given consent, after consultation with the lawyer, to the disclosure of confidential information incident to such sale of accounts receivable. Ethics Committee Opinion 464.

**10. Finance charges**

Attorney who is engaged by a personal injuries client on contingent fee basis which complies with this rule may properly borrow money from a lending institution for case expenses for client and charge or pass on to client the actual out-of-pocket interest or finance charges of the institution if attorney's interest, if any, in the institution is not controlling to the extent that the institution makes loans only to attorney's clients, no conflict of interest prohibited by Rule 1.06 exists, relationship between attorney and lending institution is not used to secure or continue client's employment of attorney, no communication or advertising of attorney's services exists in violation of Rule 7.01, the interest charges are fair and lawful, and there are no violations of Rules 1.08 or 8.04. Ethics Committee Opinion 465.

**11. Representation of spouse**

If attorney husband can ethically represent his wife, there is no ethical reason to prohibit his receiving attorney's fees if otherwise legally entitled to them. Ethics Committee Opinion 468.

**12. Sufficiency of evidence**

More than mere scintilla of evidence supported finding that attorney violated rule requiring contingency fee arrangements to be in writing and to state whether litigation expenses were to be deducted before or after calculation of contingent fee; client testified that attorney never provided written contingency fee agreement despite her request for one, that attorney dismissed client's later question about fee arrangement with statement that he would talk about it later, and that attorney stated he should get entire amount of settlement as fee, and unsigned written fee arrangement did not indicate who would pay for expenses. Wade v. Commission for Lawyer Discipline (App. 1 Dist. 1997) 961 S.W.2d 366.

## Rule 1.05. Confidentiality of Information

(a) "Confidential information" includes both "privileged information" and "unprivileged client information." "Privileged information" refers to the information of a client protected by the lawyer-client privilege of Rule 503 of the Texas Rules of Evidence or of Rule 503 of the Texas Rules of Criminal Evidence or by the principles of attorney-client privilege governed by Rule 501 of the Federal Rules of Evidence for United States Courts and Magistrates. "Unprivi-

T. 2, Subt. G, App. A
Art. 10, § 9

STATE BAR RULES
Rule 1.05

leged client information" means all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client.

(b) Except as permitted by paragraphs (c) and (d), or as required by paragraphs (e) and (f), a lawyer shall not knowingly:

(1) Reveal confidential information of a client or a former client to:

(i) a person that the client has instructed is not to receive the information; or

(ii) anyone else, other than the client, the client's representatives, or the members, associates, or employees of the lawyer's law firm.

(2) Use confidential information of a client to the disadvantage of the client unless the client consents after consultation.

(3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.

(4) Use privileged information of a client for the advantage of the lawyer or of a third person, unless the client consents after consultation.

(c) A lawyer may reveal confidential information:

(1) When the lawyer has been expressly authorized to do so in order to carry out the representation.

(2) When the client consents after consultation.

(3) To the client, the client's representatives, or the members, associates, and employees of the lawyer's firm, except when otherwise instructed by the client.

(4) When the lawyer has reason to believe it is necessary to do so in order to comply with a court order, a Texas Disciplinary Rules of Professional Conduct, or other law.

(5) To the extent reasonably necessary to enforce a claim or establish a defense on behalf of the lawyer in a controversy between the lawyer and the client.

(6) To establish a defense to a criminal charge, civil claim or disciplinary complaint against the lawyer or the lawyer's associates based upon conduct involving the client or the representation of the client.

(7) When the lawyer has reason to believe it is necessary to do so in order to prevent the client from committing a criminal or fraudulent act.

(8) To the extent revelation reasonably appears necessary to rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services had been used.

(d) A lawyer also may reveal unprivileged client information:

(1) When impliedly authorized to do so in order to carry out the representation.

RULES OF PROFESSIONAL CONDUCT                    T. 2, Subt. G, App. A
Rule 1.05                                                          Art. 10, § 9

(2) When the lawyer has reason to believe it is necessary to do so in order to:

   (i) carry out the representation effectively;

   (ii) defend the lawyer or the lawyer's employees or associates against a claim of wrongful conduct;

   (iii) respond to allegations in any proceeding concerning the lawyer's representation of the client; or

   (iv) prove the services rendered to a client, or the reasonable value thereof, or both, in an action against another person or organization responsible for the payment of the fee for services rendered to the client.

(e) When a lawyer has confidential information clearly establishing that a client is likely to commit a criminal or fraudulent act that is likely to result in death or substantial bodily harm to a person, the lawyer shall reveal confidential information to the extent revelation reasonably appears necessary to prevent the client from committing the criminal or fraudulent act.

(f) A lawyer shall reveal confidential information when required to do so by Rule 3.03(a)(2), 3.03(b), or by Rule 4.01(b).

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.  Amended by order of Oct. 23, 1991.

## Comment:

### Confidentiality Generally

1  Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidential information of one who has employed or sought to employ the lawyer  Free discussion should prevail between lawyer and client in order for the lawyer to be fully informed and for the client to obtain the full benefit of the legal system.  The ethical obligation of the lawyer to protect the confidential information of the client not only facilitates the proper representation of the client but also encourages potential clients to seek early legal assistance

2  Subject to the mandatory disclosure requirements of paragraphs (e) and (f) the lawyer generally should be required to maintain confidentiality of information acquired by the lawyer during the course of or by reason of the representation of the client.  This principle involves an ethical obligation not to use the information to the detriment of the client or for the benefit of the lawyer or a third person.  In regard to an evaluation of a matter affecting a client for use by a third person, see Rule 2.02.

3  The principle of confidentiality is given effect not only in the Texas Disciplinary Rules of Professional Conduct but also in the law of evidence regarding the attorney-client privilege and in the law of agency. The attorney-client privilege, developed through many decades,

provides the client a right to prevent certain confidential communications from being revealed by compulsion of law.  Several sound exceptions to confidentiality have been developed in the evidence law of privilege.  Exceptions exist in evidence law where the services of the lawyer were sought or used by a client in planning or committing a crime or fraud as well as where issues have arisen as to breach of duty by the lawyer or by the client to the other.

4.  Rule 1.05 reinforces the principles of evidence law relating to the attorney-client privilege.  Rule 1.05 also furnishes considerable protection to other information falling outside the scope of the privilege.  Rule 1.05 extends ethical protection generally to unprivileged information relating to the client or furnished by the client during the course of or by reason of the representation of the client.  In this respect Rule 1.05 accords with general fiduciary principles of agency.

5  The requirement of confidentiality applies to government lawyers who may disagree with the policy goals that their representation is designed to advance.

### Disclosure for Benefit of Client

6.  A lawyer may be expressly authorized to make disclosures to carry out the representation and generally is recognized as having implied-in-fact authority to make disclosures about a client when appropriate in carrying out

89

T. 2, Subt. G, App. A
Art. 10, § 9

STATE BAR RULE
Rule

such delays is justifiable. For example, in order to represent the legitimate interests of the client effectively, a diligent lawyer representing a party named as a defendant in a complex civil or criminal action may need more time to prepare a proper response than allowed by applicable rules of practice or procedure. Similar considerations may pertain in preparing responses to extensive discovery requests. Seeking reasonable delays in such circumstances is both the right and the duty of a lawyer.

5. On the other hand, a client may seek to have a lawyer delay a proceeding primarily for the purpose of harassing or maliciously injuring another. Under this Rule, a lawyer is obliged not to take such an action. See also Rule 3.01. It is not a justification that similar conduct is often tolerated by the bench and the bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay undertaken for the purpose of harassing or malicious injuring. The fact that a client realizes a financial or other benefit from such otherwise unreasonable delay does not make that delay reasonable.

**Unreasonable Costs and Other Burdens of Litigation**

6. Like delay, increases in the costs or other burdens of litigation may be viewed as serving a wide range of interests of the client. Many of these interests are entirely legitimate and merit the most stringent protection. Litigation by its very nature often is costly and burdensome. This Rule does not subject a lawyer to discipline for taking any actions not otherwise prohibited by these Rules in order to fully and effectively protect the legitimate interests of a client that are at stake in litigation.

7. Not all conduct that increases the costs or other burdens of litigation, however, can be justified in this manner. One example of such impermissible conduct is a lawyer who counsels or assists a client in seeking a multiplication of the costs or other burdens of litigation as its primary purpose, because the client perceives himself as more readily able to bear those burdens than is the opponent, and so hopes to gain an advantage in resolving the matter unrelated to the merits of the client's position.

**Law Review and Journal Commentaries**

Professional responsibility and the litigator: A comprehensive guide to Texas Disciplinary Rules 3.01 through 4.04. Barbara Hanson Nellermoe and Fidel Rodriguez, Jr, 28 St. Mary's L.J. 443 (1997).

## Rule 3.03. Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act;

(3) in an ex parte proceeding, fail to disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be known by that entity for it to make an informed decision;

(4) fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(5) offer or use evidence that the lawyer knows to be false.

(b) If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall make a good faith effort to persuade the client to authorize the lawyer to correct or withdraw the false evidence. If such efforts are unsuccessful, the lawyer shall take reasonable remedial measures, including disclosure of the true facts.

(c) The duties stated in paragraphs (a) and (b) continue until remedial measures are no longer reasonably possible.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

STATE BAR RULES
Rule 3.09

### Law Review and Journal Commentaries

Professional responsibility and the litigator: A comprehensive guide to Texas Disciplinary Rules 3.01 through 4.04. Barbara Hanson Nel- lermoe and Fidel Rodriguez, Jr., 28 St. Mary's L.J. 443 (1997).

## Rule 3.10. Advocate in Nonadjudicative Proceedings

A lawyer representing a client before a legislative or administrative body in a nonadjudicative proceeding shall disclose that the appearance is in a represen- tative capacity and shall conform to the provisions of Rules 3.04(a) through (d), 3.05(a), and 4.01.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

### Comment:

1. In appearing before bodies such as legis- latures, municipal councils, and executive and administrative agencies acting in a rule-making or policy-making capacity, lawyers present facts, formulate issues and advance argument in the matters under consideration. The decision- making body, like a court, should be able to rely on the integrity of the submissions made to it. A lawyer appearing before such a body should deal with the tribunal honestly and in conformi- ty with applicable rules of procedure. A lawyer is required to disclose whether a particular ap- pearance is in a representative capacity. Al- though not required to do so by Rule 3.10, a lawyer should reveal the identities of the law- yer's clients, unless privileged or otherwise pro- tected, so that the decision-making body can weigh the lawyer's presentation more accurate- ly. See Rule 4.01, Comment 1

2. Lawyers have no exclusive right to appear before nonadjudicative bodies, as they do before a court. The requirements of this Rule there- fore may subject lawyers to regulations inappli- cable to advocates who are not lawyers.

3. As to the representation of a client in a negotiation or other bilateral transaction with a governmental agency, see Rules 4.01 through 4.04.

### Law Review and Journal Commentaries

Professional responsibility and the litigator: A comprehensive guide to Texas Disciplinary Rules 3.01 through 4.04. Barbara Hanson Nel- lermoe and Fidel Rodriguez, Jr., 28 St. Mary's L.J. 443 (1997).

## IV. Non-Client Relationships

## Rule 4.01. Truthfulness in Statements to Others

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of material fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client.

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

### Comment:

**False Statements of Fact**

1. Paragraph (a) of this Rule refers to state- ments of *material* fact. Whether a particular statement should be regarded as one of *material* fact can depend on the circumstances. For example, certain types of statements ordinarily are not taken as statements of material fact because they are viewed as matters of opinion

# EXHIBIT "C"

# MARK A. DI CARLO
## ATTORNEY AT LAW

La Solana Building
722 Elizabeth Street
Corpus Christi, Texas 78404
(361)888-6968
Fax (361)888-6981

August 7, 2002

Mr. Duane Butler
FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202

Re:    *C.A. No. B-01-052; Karen Brooks v. UnumProvident Corporation and
UNUM Life Insurance Company of America*

Dear Mr. Butler:

The record reflects I have previously asked that Mr. Whitaker withdraw from this case because of his unprofessional conduct. The Figari firm chose not to respond and despite, as I recall my <u>copying</u> a named partner I instead received a response from Mr. Whitaker that he would continue on the case.

Mr. Whitakers was silent when queried in writing whether he knew Ms. Cascos was on parole when he filed an affidavit with the United States District Court about Dr. Brooks and has been silent through the date of this fax regarding his knowledge at the time he field this affidavit. This question was posed to Mr. Whitaker because it was clear from the form of the affidavit, that he was aware that Ms. Cascos was on parole and was not competent to make the affidavit.

In addition, I discovered by a letter faxed to me and addressed to Mr. Monagahan, that Mr. Whitaker knew of the theft or copying of a "trove" of documents from Dr. Brooks office and he acknowledged in writing that I discovered this through an apparent mistake by Mr. Whitaker.

Mr. Whitaker then compounded his complicity by threatening me in writing that he would take immediate court action if I do not agree to divest myself of evidence of the possible crime and do not agree to keep it quiet. The letter, which Mr. Whitaker avers was a mistake, communicates what appears to be clear illegal conduct of his own and/or UNUM's counsel and/or UNUM. I am again requesting that Mr. Whitaker recuse himself immediately from participation in this case in any manner.

I am moreover, troubled by the facts regarding the theft of these documents. Suffice to say I discovered a witness on 8/6/02 at about 6:00 p.m. and it does not appear in any manner that this was the mere case of a disgruntled employee who copied documents while employed and contacted UNUM.

I am asking your firm to notify me in writing of how and when Ms. Cascos contacted UNUM, who she spoke to, and to reveal any evidence of this matter to my office by 5:00 P.M. today. I will have to file a motion with the court to investigate Mr. Whitaker, your firm, Mr. Whitaker's recusal, and UNUM if I do not hear from you by 5:00 P.M. today.

Sincerely,

Mark A. Di Carlo

# Fax Cover Sheet

Mark A. Di Carlo
Attorney At Law
722 Elizabeth St.
Corpus Christi, TX. 78404
(361) 888-6968
(361) 888-6981 (Fax)

| Send to:  Duane Butler | From:  Mark A. Di Carlo |
|---|---|
| Fax Number: (214)939-2090 | Date:  August 7, 2002 |
| Subject:  Karen Brooks v. UNUMProvident | Cause No.: B-01-052 |
|  |  |

Original will follow VIA:

❑ Regular Mail
❑ Overnight Delivery
❑ Hand Delivery
❑ CMRRR

Total pages, including cover: 3
Comments:

**CONFIDENTIALITY NOTE**the documents accompanying this transmission contain information from the Law Office of Mark A. Di Carlo which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are not the intended recipient, you are hereby notified that nay disclosure, copying or distribution of this document, or the taking of any action in reliance on the contents of this telecopied information, is strictly prohibited and the documents should be returned to this office immediately. In regard, if you have received this telecopy in error please notify us by telephone immediately so that we can arrange for the return of the documents to us at no cost to you.

HP OfficeJet
Personal Printer/Fax/Copier/Scanner

Fax History Report for
Mark A. Di Carlo
512-888-6981
Aug-7-02 10:22am

## Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Aug 7 | 10:21am | Sent | 12149392090 | 1:14 | 3 | OK |