*48*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**AUG 1 4 2002**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| KAREN BROOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. B-01-052 |
| | § | |
| UNUMPROVIDENT CORPORATION | § | |
| and UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR RETURN OF PRIVILEGED DOCUMENT AND PROTECTIVE ORDER

Defendants UnumProvident Corporation and Unum Life Insurance Company of America (collectively, "Defendants")[1] file this reply to Plaintiff's Objections and Response to Defendants' "Return of Privileged Document and Protective Order" (the "Response") and state:

## THE RESPONSE

In the Response, Brooks continues her litigation-long practice of attempting to deflect the Court's attention from the matters at issue before the Court. That is, even though the primary issue in the Motion is whether Di Carlo and Brooks should return to Defendants a privileged communication that was inadvertently sent to Di Carlo, Brooks devotes much of the

---

[1] Defined terms in Defendants' Emergency Motion for Return of Privileged Document and Protective Order (the "Motion") (Docket No. 46) will be given their same meaning herein.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR RETURN OF PRIVILEGED DOCUMENT AND PROTECTIVE ORDER - Page 1**

Response to other matters that have nothing whatsoever to do with that issue. Moreover, Brooks does not dispute that (1) Di Carlo did not promptly advise Defendants that he had received the Monaghan Letter or offer to return it; instead, he sought to obtain a tactical advantage from his receipt of it; (2) the Monaghan Letter is subject to the attorney-client privilege and the attorney work product exemption; and (3) the ABA has concluded, and numerous courts have found, that an attorney receiving a privileged communication of the other party should promptly notify the other party and return such communication if requested. For the reasons set forth in the Motion and below, Defendants are entitled to the return of the Monaghan Letter and the other relief that they have sought in the Motion.

## ARGUMENT

**The Monaghan Letter Is Privileged.** Initially, Brooks fails to adequately controvert that the Monaghan Letter is subject to both the attorney-client privilege and the attorney work product exemption. As the Whitaker Declaration and the Monaghan Letter make clear, Whitaker intended that such letter be sent only to Monaghan and Butler and intended that it _not_ be sent to Di Carlo. The transmission of the Monaghan Letter to Di Carlo was unquestionably inadvertent. Moreover, Brooks' assertion that the Monaghan Letter "was faxed to Di Carlo as an attempt to reduce the settlement value of the case at mediation" (Response, ¶ 1) makes no sense. If (as Brooks now contends) the Monaghan Letter reveals allegedly criminal and unethical conduct on Whitaker's part, why would he reveal such conduct by sending a privileged communication to her counsel?

**DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR RETURN OF PRIVILEGED DOCUMENT AND PROTECTIVE ORDER - Page 2**

**Defendants Did Not Waive the Confidentiality of the Monaghan Letter by Filing It Under Seal.** Moreover, Defendants did not waive the confidentiality of the Monaghan Letter by filing under seal with the Court or allegedly publishing "the most crucial portion of the contents" of such letter (Response, ¶ 4). Defendants filed the Monaghan Letter in a sealed envelope that stated:

**THIS DOCUMENT IS BEING FILED UNDER SEAL**

**THIS ENVELOPE IS NOT TO BE OPENED BY, NOR ARE THE CONTENTS THEREOF TO BE DISPLAYED OR REVEALED TO, ANY PERSON OTHER THAN THE COURT AND ITS STAFF**

With the exception of the copy inadvertently sent to Di Carlo on August 1, 2002, Defendants have sent <u>all</u> of the other copies of the Monaghan Letter in a <u>sealed</u> envelope containing the above legend. Moreover, the primary goal of the Motion is to obtain the return of the Monaghan Letter, and Defendants certainly do not want to take any steps to frustrate that goal. By giving the Court the opportunity to review the Monaghan Letter and determine its privileged nature, Defendants did not intend to take, and did not take, any steps to waive the confidentiality of such letter.

According to Brooks, "the most crucial portion of the contents" of the Monaghan Letter is that Whitaker allegedly knew "of criminal acts committed against [Brooks] and failed to notify the court, the plaintiff, or the police." (Response, ¶ 4.) The portion of the Monaghan Letter on which Brooks relies, however, consists of one sentence in a letter that is over three

pages long. Rather than "publish" the Monaghan Letter, Defendants have taken numerous steps (including filing the Motion) to limit its dissemination.

**Defendants Adequately Conferred With Brooks Prior to Filing the Motion.**
Brooks' challenges to the adequacy of Defendants' conferences with Di Carlo prior to the filing of the Motion (Response, ¶¶ 3, 11) also fail. On August 5, 2002, which was the same day that they first learned of the inadvertent transmission of the Monaghan Letter to Di Carlo, Defendants' counsel called Di Carlo's office in an effort to confer with him. That call was not returned, so they sent Di Carlo a letter requesting the return of the letter and advising him that they would file a motion to obtain that relief if he did not voluntarily comply with their request. In his letter dated August 6, 2002, Di Carlo made it abundantly clear that he would not voluntarily return the Monaghan Letter to Defendants, and he has not complied with their request to this day. In fact, Brooks requests in the Response that the Motion be denied. Moreover, as set forth in the Motion (and not disputed by Brooks), one of the issues that the Court should consider in addressing the relief requested by Defendants is "the amount of time taken to remedy the error." See Motion at 7. Time was thus of the essence in filing the Motion. In any event, if Brooks and Di Carlo voluntarily provide Defendants with all of the relief sought in the Motion, Defendants will promptly advise the Court that the Motion is moot; otherwise, their efforts to confer have satisfied both the letter and the intent of the Local Rules.

**Whitaker Did Not Engage in Any Criminal or Unethical Conduct.** In addition, Brooks' claims that Whitaker has engaged in unethical and criminal conduct (Response, ¶¶ 4-8)

fail both factually and legally. In this regard, Brooks' reliance on Rules 1.05, 3.03(a)(2), and 4.02(b) of the Texas Disciplinary Rules of Professional Conduct is misplaced for several reasons. Under Rule 1.05(a), "confidential information" includes both "privileged information" and "unprivileged client information"; however, any information that Whitaker obtained regarding Cascos does not fit within such definition. Moreover, Rule 4.01(b) prohibits Whitaker from knowingly failing to disclose a material fact to a third person when disclosure is necessary to avoid making him a party to criminal act or knowingly assisting a client's fraudulent act. Cascos is not Whitaker's client, rendering the last section of this rule inapplicable, and there is (as discussed more fully below) no evidence whatsoever that Whitaker has personally engaged in a criminal act. Finally, Rule 3.03(a)(2) is inapplicable because Whitaker's alleged nondisclosure was not "necessary to avoid assisting a criminal or fraudulent act"; rather, all of the conduct of Cascos of which Brooks now complains occurred before Cascos spoke with Whitaker, he did not request her to take any documents, and he has neither requested nor obtained copies of any documents from her. Indeed, Brooks does not (and, in all probability, cannot) cite any authority imposing upon a lawyer such as Whitaker an effectively unlimited obligation to report any potentially wrongful conduct of which he may learn.[2]

---

[2]Tellingly, Brooks does not allege that Whitaker violated Rule 3.03(b), which would call for him to undertake a good-faith effort to correct or withdraw false evidence. Notwithstanding numerous opportunities to do so, Brooks still has not controverted the contents of the Cascos Declaration.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION**
**FOR RETURN OF PRIVILEGED DOCUMENT AND PROTECTIVE ORDER - Page 5**

Moreover, Brooks wholly fails to address <u>In re Meador</u>, 968 S.W.2d 346, 354 (Tex. 1998) (orig. proceeding), in which the Texas Supreme Court held that the trial court did not abuse its discretion in refusing to disqualify an attorney who had used privileged documents that his client had secretly removed from the defendants' offices. If the admitted use of purloined documents is not actionable, then the mere knowledge of their <u>possible</u> existence is not actionable, either.

In addition, Whitaker is not personally guilty of any criminal conduct. Brooks does not cite any provision of the Texas Penal Code which Whitaker could conceivably have violated by speaking with Cascos <u>after</u> her employment with the PA had ended. Whitaker has not stolen anything from Brooks, and one does not become an accomplice merely through knowledge of the crime or failure to disclose its commission. <u>Stevens v. State</u>, 820 S.W.2d 930, 934 (Tex. App.--Fort Worth 1991, pet. ref'd); <u>Durst v. State</u>, 675 S.W.2d 527, 528 (Tex. App.--Houston [14th Dist.] 1983, pet. ref'd).

**<u>Cascos Is Competent to Testify</u>.** Finally, the authorities cited in the Motion confirm that, notwithstanding Brooks' hollow complaints to the contrary (Response, ¶¶ 9, 12), Cascos is competent to testify, regardless of whether she has been convicted of some crime. <u>See</u> Motion at 10-11 and the authorities cited therein. Numerous Texas cases have reached the same conclusion. <u>See</u> <u>Palomo v. State</u>, 925 S.W.2d 329, 334-35 (Tex. App.--Corpus Christi 1996, no pet.) (concluding that a defendant has the right to call a convicted co-defendant as a witness); <u>Great Global Assur. Co. v. Keltex Properties, Inc.</u>, 904 S.W.2d 771, 774 (Tex. App.--

Corpus Christi 1995, no writ) (citing Tex. R. Evid. 601 and noting that an affiant was not incompetent even though he had been held in civil contempt and a civil warrant had been issued for his arrest); <u>Parrish v. Brooks</u>, 856 S.W.2d 522, 528 (Tex. App.--Texarkana 1993, writ denied) (observing that "[w]e find no authority holding that a convicted felon cannot be a competent witness"); <u>Pool v. Sneed</u>, 173 S.W.2d 768, 780 (Tex. Civ. App.--Amarillo 1943, writ ref'd w.o.m.).

## <u>CONCLUSION</u>

Defendants thus request that the Court enter an order:

(1)     requiring Di Carlo and Brooks to return the Monaghan Letter and all copies thereof to Defendants' counsel;

(2)     barring Di Carlo and Brooks from any further use of the Monaghan Letter or any information gained as a result of its inadvertent disclosure;

(3)     requiring Di Carlo, within two weeks of the entry of such order, to certify that (a) he has undertaken a diligent, good faith search to identify all persons to whom the Monaghan Letter was made available, either in original, duplicate, or summary form, or who otherwise had become aware of its contents, and (b) he has given a copy of such order to all such persons and instructed them to deliver all copies of the Monaghan Letter and any additional documents containing direct or indirect reference to such letter to Di Carlo, who shall file all such materials under seal with the Court;

(4)     requiring Di Carlo, within two weeks of the entry of such order, to file under seal with the Court (a) a list of all persons whose identities were learned as a result of the search to be undertaken in accordance with such order, with such list to state the person's identity, relationship to Brooks or Di Carlo, and the date(s) of and purpose(s) for disclosure of the Monaghan Letter to such person, and (b) a description of the steps taken to ensure that no improper use of the information learned as a result of the inadvertent disclosure of the Monaghan Letter can or will be made during the course of this litigation;

(5)     requiring all persons to whom a copy of such order is delivered to refrain from disclosure or use of the information that they have gained as a result of the disclosure to them of the Monaghan Letter or the information contained therein; and

(6)     awarding Defendants all such other relief to which they are entitled.

See Transportation Equipment Sales Corp. v. BMY Wheeled Vehicles, 930 F. Supp. 1187, 1188 (N.D. Ohio 1996) (awarding comparable relief).

Respectfully submitted,

By: _____
      Andrew C. Whitaker
      State Bar No. 21274600
      S.D. No. 14309
      Attorney-In-Charge

OF COUNSEL:
Doug K. Butler
State Bar No. 03516050
S.D. No. 9271

FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANTS
UNUMPROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent by Federal Express to Mr. Mark A. Di Carlo, La Solana Building, 722 Elizabeth Street, Corpus Christi, Texas 78704, on this 13th day of August, 2002.

_____
Andrew C. Whitaker

**DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR RETURN OF PRIVILEGED DOCUMENT AND PROTECTIVE ORDER - Page 9**