United States District Court
Southern District of Texas
FILED

AUG 1 4 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KAREN BROOKS | § § | |
| VS. | § § | CIVIL ACTION NO. B-01-052 |
| UNUM PROVIDENT CORPORATION AND UNUM LIFE INSURANCE COMPANY OF AMERICA | § § § § | |

## AFFIDAVIT OF KAREN BROOKS IN SUPPORT OF MOTION TO RECUSE HONORABLE JUDGE HILDA TAGLE PURSUANT TO 28 U.S.C. § 144

My name is Karen Brooks. I am over 18 years of age and I am of sound mind and capable of making this affidavit. I have personal knowledge of the facts stated below and they are true and correct.

1. The Affidavit of Ms. Cascos my former employee filed in this case is not true in the following respects: Paragraph 7 is untrue. Paragraph 8 is untrue. Paragraph 9 is untrue regarding the fact that I ever stated I would "move to full time" once my disability lawsuit was settled.

2. My lawyer and I were not allowed in the courtroom at the hearing on May 28, 2002. Then it was averred by Judge Tagle that we were late. See attached, **Exhibit A**, the affidavit I already filed in this court.

3. My lawyer faxed me the letter Mr. Whitaker had faxed to him on August 2, 2002 and which Mr. Whitaker now states is "confidential". Mr. Di Carlo has copied or faxed me important motions and documents throughout this case unlike my former attorney Mr. Cowen in the previous lawsuit. A copy of this "confidential" letter is attached hereto as **Exhibit B**

4. My lawyer said that he was faxed this letter one time purposefully with a fax cover sheet addressed to him and another time it was forwarded to him in a sealed envelope by mail. I understand by my attorney that Mr. Whitaker now says he wants the letter back. I am asserting that letter faxed and mailed to my attorney is privileged. I need the document to pursue appropriate ethical and/or criminal complaints against Cascos and other parties and to protect the confidentiality of my patients.

5. I have been forced to pay numerous attorneys fees in this case for a lawsuit which I believe has been defended by UNUM without a legal basis.

6. I have been criminally indicted by UNUM for what I believe were false

reasons. The indictment was dismissed. My lawyer has been unsuccessful in obtaining the documents from the defendants regarding what I believe was my malicious prosecution by them. I had to pay $15,000.00 to Mr. Edmund Cyganiewicz to defend the criminal action.

7. This company has practically ruined me. I have also been forced to pay $4,773.00 in order to file this lawsuit allegedly based on the allegedly inappropriate actions by my former attorney. I have an order which I am allegedly in noncompliance with for the payment of attorneys fees of $4137.00, and to supply discovery because my lawyer had not received the complete faxed order. Mr. Di Carlo told me that he was faxed the order from the court regarding discovery without the second page with compliance deadlines on May 30, 2002 regarding rulings against my case. Therefore, I have been ordered to pay $4,773.00 plus $4,137.00. In addition, due to UNUM's indicting me, I had to pay $15,000.00 to my lawyer. I attribute the exacerbation of my health problems, including emotional problems and severe clinical depression to UNUM's treatment of me beginning in the middle of the first lawsuit and during the proceedings of these suits. I used to be a high functional person prior to my accident. I purchased disability insurance in 1990 from New York Life just so I would not be in the position financially and emotionally that I am currently in.

8. Mr. Di Carlo has notified me that he feels the letters to the court by Mr. Whitaker raising new matters not addressed at the hearing on May 28, 2002

deprived me of my rights to due process and that he filed objections.

9. I do not believe my former employee Ms. Cascos would embezzle records without encouragement from UNUM and steal or copy "troves" of documents regarding my patients. My patients confidential records including billing records and/or names and /or medical records are now apparently out in the community. I have discovered several documents missing from my office. I feel UNUM keeps pushing for discovery because I do not have all the documents requested. For example, the daily sheets are missing which is the listing of all the patients that were seen in the corporation and the amount they have paid. I believe it is a reasonable assumption that UNUM or Cascos has them because I practiced in a building by myself. My lawyers told me that Whitaker admitted by motion that my employee Cascos was an embezzler and served time in prison in the mid 1990's. We have not deposed Ms. Cascos as of yet.

10. I believe the court is biased or prejudiced for some unknown reason either against my case or me. The Affidavit by Cascos' is basically false and I have a witness that places Ms. Cascos in my office after she quit working for the corporation. I believe it was then that the documents were stolen and/or taken in some manner. I have a legitimate case which I believe is and was being handled competently and yet I have been assessed $8,970.00 in attorneys fees; had to pay $15,000.00 for a criminal defense; and had to pay Mark Di Carlo an additional retainer. My entire inheritance has been spent.

11. I believe this big and powerful company is taking advantage of me and my limited financial resources and I need the help and protection of the United States District Court. It appears UNUM and their attorneys knows that Judge Tagle will not look favorably upon any of my motions or requests no matter what their merit.

12. I would not know about documents being stolen or copied from my office by Ms. Cascos unless the allegedly inadvertent fax was not faxed to my lawyer Di Carlo. I am very concerned about my patients personal information being divulged. I doubt that any motion my attorney files with Judge Hilda Tagle would be granted because of her attitude with me and my case both in court and out of court.

13. The Honorable Judge Tagle may be biased against me due to the false affidavit filed by Cascos against me before the first hearing or her dealings with my previous attorney, Mr. Michael Cowen. I was not kept informed about what was done in the first case.

14. Mark A. Di Carlo has told me that he has never had to pay attorneys fees for any lawsuit he filed in a United States District Court Civil or Criminal Case.

15. I hired Mark A. Di Carlo because he was successful at a trial against

UNUM in a suit in a prior United States District Court.

16. I've had disability insurance for years, since 1990. My injuries to my back by X-Ray are established. My attorney told me that Sean Sullivan admitted at the deposition that Mr. Sullivan did not speak to the persons who were allegedly in the operating room on the date of the operations and, therefore, I do not believe their decision to terminate my disability benefits based on the number of operations I performed following the accident was in good faith. In addition Mr. Whitaker admits in the letter he now refers to as "confidential" that UNUM never even attempted to see if I was entitled to residual disability benefits. In other words UNUM never even attempted to see if I were 50% to 60% disabled and I could obtain partial benefits.

17. Mr. Di Carlo and I discussed filing a motion to recuse Judge Tagle when we were barred from the courtroom on May 28, 2002. Mr. Di Carlo did not know the orders of the motions and Mr. Whitaker did and Mr. Whitaker was permitted in the courtroom and we were not. Mr. Di Carlo instead filed a motion for rehearing and objected to the letters filed by opposing counsel, after the hearing. Mark Di Carlo's motion was denied without a hearing. Then Judge Tagle ordered that I pay additional attorneys fees which I understood had already been ruled out at the hearing on May 28, 2002.

18. I believe the actions of the judge have affectively prevented me from

pursuing this case. I thought in the United States a person who was a United States Citizen was entitled to a trial and to access of the court. I do not feel that I have been treated fairly by the Honorable Judge Tagle and I do not believe I will be treated fairly in the future. My lawyer and I attempted to do everything we could to prevent from filing this affidavit and moving for Judge Tagle's recusal.

19. I feel that because I have been indicted and because in all likelihood confidential patient records were stolen from my office either at the urging of Mr. Whitaker and/or to provide alleged evidence against me to the firm, Figari Davenport & Graves that my career in Brownsville as a podiatrist is ruined.

20. Regarding the other paragraphs in the Cascos affidavit regarding my contacting my medical providers. Many of these medical providers contacted me and told me that they had been contacted prior to the subpoena of my medical records to get the medical records ready and to send them to Figari Davenport and Graves. I do not know if this is proper or not. I had discussed this with my attorney Mark A. Di Carlo and he discussed that these requests were an attempt to embarrass me and to find an excuse not to pay insurance benefits after they had been denied specifically because I was allegedly performing operations. Mr. Mark Di Carlo was of the opinion that attempting to obtain all my medical records for an unlimited period of time regarding all health

matters, of every nature, was not something that the other side should legitimately obtain. However, I attempted to prevent these records from being prematurely being sent out so my counsel would have an opportunity to attempt to object to UNUM obtaining my private and irrelevant medical records prior to the court order. I believe that under Federal Law my medical providers do not have to honor a subpoena duces tecum without a court order. The medical providers have to honor a court order based upon "the Health Information Patient Protection Act" passed in 1996. I have some familiarity with the law in this area because I am a medical provider myself. I was simply, attempting to withdraw my consent of the release of my medical records pending court order as I understood was my right under federal law. I did nothing improper and anything I did was performed with the permission of my medical providers and their staffs. Ms. Cascos was not my personal friend and had not even been my employee very long, therefore, her comments are primarily speculation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed On Aug 14, 2002            _Karen E. Brooks, DPM_
                                    Karen Brooks

# EXHIBIT "A"

## AFFIDAVIT AND DECLARATION OF KAREN BROOKS

BEFORE ME, the undersigned authority, personally appeared Karen Brooks, who, being my me duly sworn, deposed as follows:

My name is Karen Brooks. I am over 18 years of age, I am of sound mind and capable of making this affidavit.

I arrived at the district courtroom for a hearing in my case and was sitting outside the courtroom at about 2:00 p.m. when Mr. Di Carlo arrived and we spoke briefly. When Mr. Di Carlo and his secretary and I attempted to enter the court room at about 2:05 p.m. a man stopped us in uniform who stated that there was a hearing going on and that we could not enter the courtroom. Mr. Di Carlo stated that he had a hearing scheduled for 2:30 p.m. Mr. Di Carlo made a reference to me of the fact that it must be some sort of closed hearing or that it was an unusual procedure. I sat outside of the courtroom door on a bench with Mr. Di Carlo and his secretary until we were called into the courtroom at about 2:30 p.m.

I declare under penalty of perjury that the contents of this affidavit are true and correct.

6/5/02
Date

_____
Affiant

# EXHIBIT "B"

Case 1:01-cv-00052   Document 50   Filed in TXSD on 05/24/2002   Page 11 of 15

# FIGARI DAVENPORT & GRAVES

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
214-939-2000
Fax 214-939-2090

Writer's Direct Dial Number
(214) 939-2070

Writer's E-Mail Address
awhitake@figdav.com

August 1, 2002

**VIA TELECOPY**
Mr Matthew J. Monaghan
UnumProvident Corporation
Legal Department - M194
2211 Congress Street
Portland, Maine 04122

Re:   C.A. No B-01-052; *Karen Brooks v. UnumProvident Corporation and UNUM Life Insurance Company of America*

Dear Matt:

By letter dated May 3, 2000, we provided you with our initial analysis of Unum Life's handling of Brooks' claim. In some respects, our analysis is unchanged. First, our primary concern remains the fact that Brooks' diagnosis of degenerative disc disease is not in question. Unum Life's outside consultant opined that Brooks would likely be disabled for a year, Dr. Day concluded that she had a reduced capacity to work as a podiatrist, and recently obtained medical records indicate that she has not undergone surgery and that conservative treatment (such as epidural steroid injections and physical therapy) has not resolved her problems Second, we continue to have concerns about the fact that Unum Life never addressed Brooks' entitlement to residual disability benefits.

Since our initial letter, another concern of sorts has arisen. During the claim process, Sean Sullivan reported Brooks to the Texas Department of Insurance (the "TDI") for possible fraud. After a lengthy delay, the TDI made a referral to the Cameron County District Attorney, which apparently thought enough of the allegations to obtain an indictment of Brooks. Within a few months, however, the DA voluntarily dismissed the case due to concerns about his ability to prove her fraud. Brooks will undoubtedly profess her innocence and accuse Unum Life of conducting a witch hunt against her.

Moreover, the company has (admittedly and unfortunately) already incurred substantial attorneys' fees. In some respects, we have little to show for such expenses, as we have not yet deposed either Brooks or her primary treating physician, which are typically the first depositions that we take upon the completion of written discovery.

Aug-13-02 04:34p Mark B. Di Carlo 512-888-6981 P.13
Case 1:01-cv-00052 Document 50 Filed in TXSD on 08/14/2002 Page 13 of 15

09:18am From-Figari Davenport & Graves,LLP 214 939 2090 T-495 P 003/005 F-121

Mr. Matthew J. Monaghan
August 1, 2002
Page 2

On the other hand, the overwhelming majority of these fees have resulted from the misconduct of Brooks and her counsel, and we have met with a great deal of success before Judge Tagle. As you will recall, in the Original Action, the Court dismissed Brooks' RICO claim with prejudice, ordered briefing on the import of Brooks' post-fall performance of surgeries, and dismissed the Original Action, without prejudice, at Brooks' request due to her fear that she would be forced to invoke the Fifth Amendment. (Recently obtained records from Brooks' psychiatrist indicate that Brooks may well have filed a grievance against her lawyer in the Original Action.)

Brooks then retained her current counsel, Mark Di Carlo ("Di Carlo"), who filed this action on the day before the expiration of the two-year limitations period. At our request, Judge Tagle required Brooks, as a precondition to proceeding with this action, to pay Defendants almost $5,000 for their costs in the Original Action. Over the ensuing months, we have fought, for the most part successfully, numerous discovery battles with Di Carlo, and Brooks is currently in violation of an order requiring her to pay Defendants an additional $5,000 and provide numerous categories of information and documents. We have recently filed a second motion to compel as well as a motion for litigation-ending sanctions, and we have an outside chance that Judge Tagle will dismiss Brooks' claims with prejudice for her misconduct.

Moreover, in May 2002, we received an unsolicited telephone call from Lucy Cascos ("Cascos"), who formerly worked as the office manager for Brooks' professional association. Cascos provided us with a declaration detailing Brooks' misconduct during discovery, continued performance of her occupational duties, and efforts to appear more disabled than she actually is. In addition, Cascos purportedly has a treasure trove of documents that she took with her but which we have not (for obvious reasons) requested to review. Tellingly, Brooks has not to date challenged Cascos' credibility in any way.

In all, the claim decision still appears quite defensible. Brooks clearly misrepresented her inability to do surgeries, as she repeatedly told the claim people that she was not working at all when in fact she was performing surgeries. Her ability to operate would seem to evidence her ability to perform the tasks associated with the less-demanding office practice. To date, we have been precluded from obtaining Brooks' office records, which would presumably demonstrate the extent to which she saw patients in the office and the income that she generated from her office and surgical activities. This is particularly important given the likelihood that her back condition impaired her to some extent and likely affected her productivity. Measuring the extent of her residual disability will be extremely difficult. Normally, Brooks would simply demonstrate a loss of income through her financials, and we might challenge whether the loss was due to the injury. Here, however, her claim is

Mr Matthew J. Monaghan
August 1, 2002
Page 3

complicated by Cascos' testimony that Brooks intentionally embellished her condition to obtain benefits

Consequently, although we still feel very optimistic about the case, we find it difficult to get more particular in our assessment because of the lack of deposition testimony. Nonetheless, the case has inherent settlement value due to the risks of litigation for an insurer in Brownsville, Texas. Brooks claims that she was injured on May 16, 1998 and stopped working on June 1. Unum Life paid eight months of benefits (which, of course, we seek to recover) She was born on October 8, 1959, meaning that she turns 65 in October 2024. (The question remains whether she has a lifetime benefit rider.) Moreover, talking about a benefit valuation to age 65 seems absurd given her condition and probable recovery, and her claim is more likely residual than total.

That being said, we note that total disability benefits (at $6,000 per month) from February 1999 through August 2002 would total $252,000. From that point to her 65th birthday (another 266 months), the present value of future total disability benefits, using a discount rate of 5%, would be $963,547  At least that gives us some idea of the numbers they will present in their repudiation claim.

We strongly doubt Brooks will settle for less than $100,000, and it seems unlikely that she would do so for less than $200,000. As such, barring surprise, it will likely take more than $200,000 to settle this case. Settlement in that range would probably be reasonable and prudent  Valuing the case much above that at this juncture is difficult. Given the current posture of the case, however, Brooks may be willing (at her attorney's urging) to settle the case in that range

Over the past few weeks, Doug (in a rare appearance as the "good cop") has attempted to establish a rapport with Di Carlo. At Sullivan's recent deposition, in which Di Carlo scored few (if any) points, Doug began discussing the possibility of mediation, and Di Carlo has become increasingly receptive to that approach  Of course, Di Carlo is in many respects between the proverbial rock and a hard place, as the clock is now ticking on his deadline to respond to a motion seeking the dismissal of Brooks' claims with prejudice and which is based in large part on his own wrongdoing. Although Di Carlo has made it clear to Doug that he wants to avoid incurring the time and expense associated with further discovery battles if at all possible, he has stated that Brooks' expectations are pretty high  Moreover, Brooks told Cascos that she thought this was a "$1 million case." We have thus asked Di Carlo to make an opening settlement demand to encourage us to mediate  If they are unwilling or the offer is

Mr. Matthew J. Monaghan
August 1, 2002
Page 4

extreme, we may want to re-think going to mediation. We suggest awaiting Di Carlo's response before committing to mediation.

Please call Doug and me to discuss our next step.

With best regards, I am

                              Very truly yours,

                              Andrew C. Whitaker

ACW/krp

cc:   Mr. Doug K. Butler