IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

DEC 0 6 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| **KAREN BROOKS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action B-01-052 |
| v. | § | |
| | § | |
| **UNUM PROVIDENT CORPORATION and UNUM LIFE INSURANCE COMPANY OF AMERICA** | § | |
| | § | |
| Defendants. | § | |

**ORDER**

BE IT REMEMBERED that on December 5, 2002, the Court **ORDERED** Plaintiff's Counsel, Mark DiCarlo, to **SHOW CAUSE** why he should not be sanctioned under Rule 11(c)(1)(B) for the filing of frivolous motions and mischaracterization of the events that occurred at the May 28, 2002, motions hearing.

Although the above referenced case was dismissed with prejudice pursuant to a stipulated notice of settlement on October 16, 2002 [Dkt. No. 60], the Court *sua sponte* reviews the following motions and allegations contained therein for the purpose of determining whether Rule 11 sanctions should be imposed: Plaintiff's Motion to Recuse Honorable Judge Hilda Tagle [Dkt. No. 51]; Plaintiff's Motion to Recuse Mr. Andrew Whitaker and/or Mr. Doug Butler and/or Figari Davenport and Graves [Dkt. No. 51]; Plaintiff's Motion to Rehear All discovery Matters [Dkt. No. 51]; and Plaintiff's Motion for Protective Order Against UNUM [Dkt. No. 51]. The Court FINDS these referenced motions were frivolous when filed, had no basis in fact or law, and unnecessarily occupied the time and resources of the Parties and the Court. The final inducement for this show cause order, however, concerns Counsel's mischaracterization of the events that occurred at the May 28, 2002, motions hearing

and Counsel's allegation of bias on the part of the Court. This allegation specifically underpins Counsel's Motion for Recusal and Motion to Rehear All Discovery Matters, which raises serious issues of misconduct that the Court cannot dismiss without further investigation at a show cause hearing.

I.    Plaintiff's Motion to Recuse Hon. Hilda Tagle

Pursuant to 28 U.S.C. §§ 455 and 144, Plaintiff moved to recuse Judge Tagle "because of her factual knowledge of evidentiary facts of this case as supplied to her by opposing counsel in a confidential letter and because she has exhibited bias and prejudice in this case as are documented by the orders of the Court and the attachments" [Dkt. No. 51].

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . .

28 U.S.C. § 455.

In addition, Section 455 states, "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. Because the standard for both statutes is that of reasonableness, the Court examines them together.

An affidavit filed in support of a motion to recuse is legally sufficient only if the facts are material, stated with particularity, and are such that, if true, a reasonable person would be convinced that bias exists. The facts also must show the bias is personal, rather than judicial in nature. See United States v. Merkt, 794 F.2d 950 (5th Cir. 1986); United States v. Serrano, 607 F.2d 1145 (5th Cir. 1979); Hepperle v. Johnston, 590 F.2d 609 (5th Cir. 1979). An affidavit of bias or prejudice must identify and carefully delineate the time, place, persons, occasions and circumstances

supporting the belief that the trial judge is prejudiced. <u>United States v. Partin</u> 312 F. Supp. 1355 (E.D. La. 1970).

The litigant, Ms. Brooks, states in her affidavit that she feels the Court is "biased or prejudiced for some unknown reason either against my case or me" [Dkt. No. 51, Ex. H]. As an example of such prejudice, Plaintiff claims that at the motions hearing held on May 28, 2002, she and her attorney were "shut out" of the courtroom at approximately 2:05 p.m. by "a man . . . in uniform" [Dkt. No. 51, Ex. H]. According to Ms. Brooks, they waited outside the courtroom until 2:30 p.m, the scheduled time of the hearing, before they were called into the courtroom. The Court notes that no instruction was given off the record that would prohibit anyone's access to the courtroom. The minutes indicate the hearing began at 2:35 p.m, when the case was called [Dkt. No. 35].

The hearing began as follows:

| | |
|---|---|
| THE COURT: | I'm calling the next case, 01-cv-52, Karen Brooks versus UNUM Provident Corporation. |
| MR WHITAKER: | Good afternoon, Your Honor. |
| THE COURT: | Would you please announce your name for the record and whom you represent? |
| MR WHITAKER: | My name is Andrew Whitaker, Your Honor, and I represent the defendants, UNUM Provident Life Insurance Company of America. |
| THE COURT: | Have you been in contact with Mr. Di Carlo? |
| MR WHITAKER: | I think I saw his client out there just a few moments ago. |
| THE COURT: | Can you call Mr. Mark Di Carlo's name to see if he's in the hallway? |
| COURT SECURITY OFFICER: | Yes, your honor. |
| MR WHITAKER: | I haven't spoken to him in the last few days, your honor. |
| THE COURT: | Good afternoon. |
| MR. DI CARLO: | Good afternoon. |
| THE COURT: | The Court has already called this case. |

3

| | |
|---|---|
| MR. DI CARLO: | I'm sorry, we were in the hall. Yes, Your Honor. |
| THE COURT: | All right, I guess– well, I've called this case and I just want to confirm, are there only defense motions pending . . . . |

[Dkt. No. 37 at 3].

A few moments later, after listening to an argument by Mr. Whitaker, the following exchange took place between the Court and Mr. Di Carlo:

| | |
|---|---|
| THE COURT: | All right then, Mr. Di Carlo? |
| MR. DI CARLO: | Yes, Your Honor. |
| THE COURT: | You're gonna have to argue your motions to compel and to quash. |
| MR. DI CARLO: | Yes, Your Honor. And I'm sorry, my secretary apparently went to the women's room at the time that we were called. Your Honor, regarding the motion to quash . . . . |

[Dkt. No. 37 at 3].

The Court did not solicit any apology, admonish Plaintiff's attorney, or make reference throughout the entire proceeding to any tardiness on the part of Plaintiff or her attorney. Nor did the Court engage in any substantive conversation with opposing counsel, or otherwise begin the proceeding without Plaintiff's presence in the courtroom. The Court only stated, upon the entry of Plaintiff and her attorney into the courtroom, the case had already been called. According to the transcript [Dkt. No 37], Mr. Di Carlo volitionally apologized for not being in the courtroom at the time the case was called, stating, "we were in the hall," and "my secretary apparently went to the women's room at the time that we were called" [Dkt. No. 37 at 3]. In conclusion, the Court unequivocally FINDS there is no evidence in the record to support Plaintiff's contentions that she and her counsel were at any time refused entry into the courtroom or that the Court exhibited bias of any kind against her.

Ms. Brooks also asserts in her affidavit that she was "forced to pay numerous attorneys' fees in this case for a lawsuit which [she] believes has been defended by UNUM without a legal basis" [Dkt. No. 51, Ex. H]. Ms. Brooks is referring to the Court's order requiring her to pay attorneys' fees for failure to comply with discovery [Dkt. Nos.

36 & 38]. At the May 28, 2002, motions hearing, Plaintiff's attorney presented arguments concerning his failure to produce requested documents, and the Court granted Defendants' Motion to Compel [Dkt No. 36 & 38]. The Court also granted Defendants' request for attorneys' fees, the award of which was imposed as a sanction for Plaintiff's failure to comply with discovery. The fact that Ms. Brooks is unhappy with the result of this hearing does not show the result was in any way unwarranted. The Court FINDS there is no evidence that imposing a sanction of attorneys' fees supports a finding of bias on the part of the Court.

Ms. Brooks also mentions in her affidavit the criminal case, which UNUM brought against her and subsequently dismissed. Aside from discussing her perceived unfairness at having to defend herself in that suit, she fails to allege any facts that might lead a reasonable person to believe the Court is prejudiced against her as a result of that proceeding.

Finally, Plaintiff asserts the Court possesses information contained in a document defense counsel allegedly mailed inadvertently to Plaintiff's attorney and this knowledge has biased the Court. The referenced document was attached to Defendants' Emergency Motion for Return of Privileged Document [Dkt. No 46]. The Court notes that it did not open or review the document. The Court reviewed only the summary of the document's contents in the Parties' motions. Plaintiff contends that she has had no opportunity to rebut the contentions contained in the document, and therefore the Court has been prejudiced by the Defendants' version of events. The Plaintiff has failed to allege how the Court has been prejudiced by the contents of the document, instead offering only a conclusory statement regarding the Court's supposed prejudiced. Conclusory statements, rumors, and generalities are not legally sufficient. See McClelland v. Gornwaldt, 942 F. Supp. 297 (E.D Tex. 1996). Ms. Brooks's affidavit is legally insufficient to require recusal because, even taking all facts stated as true, a reasonable person would not be convinced that bias exists on the part of the Court. See United States v. Merkt, 794 F.2d 950 (5th Cir. 1986); United States v. Serrano, 607 F.2d 1145 (5th Cir. 1979). The Court FINDS this Motion has no basis in fact or law and needlessly increased the costs of litigation.

II.  Plaintiff's Motion to Recuse Mr. Andrew Whitaker and/or Mr. Doug Butler and/or Figari Davenport and Graves

Plaintiff maintains that attorney Andrew Whitaker is a fact witness in this case. More specifically, Plaintiff alleges Whitaker discovered information, through Ms. Cascos's affidavit, that was based on a document Ms. Cascos allegedly stole from Ms. Brooks's office. Plaintiff argues Whitaker violated ethical rules when he failed to report Ms. Cascos's alleged crime of theft to the Court, and he should be disqualified as a result. Plaintiff also asserts that attorney Doug Butler and the law firm of Figari, Davenport and Graves should be disqualified based on their knowledge of the information contained in Ms. Cascos's affidavit.

The record does not support the above assertions. Ms. Cascos is not represented in this case and is neither Mr. Whitaker's nor Mr. DiCarlo's client, and none of the information Mr. Whitaker allegedly obtained from Ms. Cascos is privileged or confidential under the Texas Disciplinary Rules of Professional Conduct. See Tx. St. RPC Rule 1.05(a).[1] See also Tx. St. RPC Rule 4.02(b).[2] Nor has Mr. Whitaker failed to disclose a material fact to any third party in order to avoid committing or assisting a criminal or fraudulent act; any alleged criminal violation occurred before Ms. Cascos

---

[1] Rule 1.05 (a): "Confidential information" includes both "privileged information" and "unprivileged client information." "Privileged information" refers to the information of a client protected by the lawyer-client privilege of Rule 503 of the Texas Rules of Evidence or of Rule 503 of the Texas Rules of Criminal Evidence or by the principles of attorney-client privilege governed by Rule 501 of the Federal Rules of Evidence for United States Courts and Magistrates. "Unprivileged client information" means all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client.

[2] Rule 4.02 (b): In representing a client a lawyer shall not communicate or cause another to communicate about the subject of representation with a person or organization a lawyer knows to be employed or retained for the purpose of conferring with or advising another lawyer about the subject of the representation, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

gave him her declaration. See Tx. St. RPC Rule 3.03(a)(2).[3] Mr. Whitaker states in his affidavit filed in support of his Motion for Protective Order that he is aware that Ms. Cascos came into possession of certain documents during her employment with Ms. Brooks, but that he never asked Cascos any questions about how Cascos obtained them, and he has not reviewed or requested them from her [Dkt. No. 46, Ex. 3 at 3]. For the above reasons, the Court FINDS Defendants' counsel did not commit ethical violations in this case.

III.   **Plaintiff's Motion to Rehear All Discovery Matters Due to the Incompetent Affidavit and/or Fraudulent/Criminal Acts of Cascos and the Defendant Through Defense Counsel and/or the Bias or Prejudice of the Judge**

Plaintiff argues the Court should rehear discovery matters in this case because: a) the Court is biased and prejudiced, b) Defendants allegedly failed to forward any discovery to Plaintiff and there was alleged inequity in the Court's order directing Plaintiff to pay attorneys' fees, and c) the Court based its discovery orders on an allegedly incompetent affidavit.   These arguments are largely a repeat of arguments made in other motions addressed previously in this order.

   a. Bias or Prejudice of the Court

There is no legally sufficient evidence upon which a reasonable person could find the Court is biased or prejudiced in this case. See Section I, supra. The Court does not address this repetitious argument.

---

[3]   Rule 3.03 (a):  A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal;
(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act;
(3) in an ex parte proceeding, fail to disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be known by that entity for it to make an informed decision;
(4) fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(5) offer or use evidence that the lawyer knows to be false.

b. <u>Defendants' Alleged Failure to Forward Any Discovery to Plaintiff and Inequity of the Court's Previous Order to Pay Attorneys' Fees</u>

Plaintiff makes the above allegations but offers no argument or evidence to support such assertions. The Court will not entertain allegations unsupported by any evidence.

c. <u>Incompetent Affidavit as Basis for Court's Discovery Orders</u>

Plaintiff has shown neither that Cascos is incompetent to testify, nor has she shown that such affidavit was the basis for the Court's discovery orders. Although Defendants do not dispute that Cascos has admitted conviction and incarceration for embezzlement [see Dkt. No. 46 at 3], such conviction does not disqualify her or render her incompetent to testify. <u>Green v. Bock Laundry Mach. Co.</u>, 490 U.S. 504, 511-13 (1989). Instead, her testimony is subject to impeachment. <u>Id</u>.

A review of the record in its entirety demonstrates the Court heard oral arguments, ruled on all motions concerning discovery before any reference was made to the Cascos affidavit, and did not base any of its rulings on the affidavit. Moreover, the record shows [see Dkt. No. 37 at 24] the only reference to the contents of the Cascos declaration, and more specifically, Cascos's statement that Brooks had taken steps to prevent third parties from providing discovery in the case, was made at the very end of the hearing. [See also Dkt. No. 45, Ex. A]. The following excerpt highlights this discussion:

| | |
|---|---|
| MR. WHITAKER: | It is my belief that some of the third parties who got subpoenas were given instructions not to produce any documents, you know, that effort was somehow stopped. I take it that the Court will be entering some sort of written order basically denying the motions to quash and then allowing all of those to go forward? |
| THE COURT: | Yes. |
| MR. WHITAKER: | I'm looking for a mechanism whereby I can let the third parties know the order has been denied, we need to get the documents produced without any re-service or anything like that. |

| | |
|---|---|
| THE COURT: | You'll get an order. |
| MR. WHITAKER: | Thank you, Your Honor. |
| THE COURT: | We're in recess. |

[Dkt. No. 37 at 24- 25].

As the above transcript excerpt makes clear, the Court recessed immediately following a discussion of possible obstruction of third-party subpoenas. For this reason, Plaintiff has not shown that the Court's rulings were in any way based on the Cascos affidavit. Further, the motion in which Defendant introduced the affidavit [Dkt. No 33] was not ripe at the time of the hearing, and the Court did not consider it.

### IV.   Plaintiff's Motion for Protective Order Against UNUM

Plaintiff cites no legal authority to support her contentions and presents only a general allegation that she has been denied her due process rights. Plaintiff asks the Court to guarantee her right to a jury trial under the Seventh Amendment. The Court FINDS that the Motion has no basis in fact or law.

### V.   Conclusion

On May 28, 2002, [Dkt. No. 35], the Court forewarned the Parties that any motions it finds to be frivolous may result in sanctions in the form of attorneys' fees if requested by the opposing Party [Dkt. No 35]. The Court, however, issues this show cause order pursuant to Federal Rule of Civil Procedure 11(c)(1)(B). Rule 11 allows a court to impose sanctions upon an attorney or litigant who files a baseless pleading or motion, one that is "presented for any improper purpose, such as . . . to cause unnecessary delay or needless increase in the cost of litigation" and is not "well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law[.]" Fed. R. Civ. P. 11(b)(1) and (2). See also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990); Childs v. State

9

Farm Mut. Auto. Ins. Co., 29 F.3d 1018, 1024 (5th Cir. 1994).

For the reasons set forth in this opinion, the Court **ORDERS** Plaintiff's counsel, **MARK DI CARLO**, to appear on December 17, 2002, at 9:00 a.m. to **SHOW CAUSE** why he should not be sanctioned under Rule 11(c)(1)(B) for the frivolous filing of motions and mischaracterization of events that took place on May 28, 2002.

DONE this 5th day of December, 2002, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge